UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE & CASUALTY COMPANY,

    Plaintiffs,       Case No. 8:13-cv-1932-EK-TGW

              Hon. Elizabeth A. Kovachevich

              Magistrate Judge Thomas G. Wilson

PHYSICIANS GROUP OF SARASOTA, L.L.C.,
PHYSICIANS GROUP, L.L.C., a foreign Delaware
corporation, GARY KOMPOTHECRAS, DAVID
BALOT, DB MEDICAL CONSULTING, INC.,
W.S. MEDIA, INC., a foreign Delaware corporation,
W.S. MARKETING, INC., and WILLIAM SIGELAKIS,

    Defendants.
_____/

**STATE FARM'S OPPOSITION TO
<u>DEFENDANTS' MOTION FOR PROTECTIVE ORDER</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   THE LEGAL STANDARD FOR PROTECTIVE ORDERS ...........................4

III.  NONE OF THE DEFENDANTS' FIVE SCENARIOS VIOLATE THIS
      COURT'S  DISCOVERY RULES OR ANY OTHER LAWS ..................................4

      A.    State Farm's July 29, 2013 Letter to Physicians Group ("the July 29 (6)(b)   Letter
      Regarding Pre-Suit Claims") [Dkt. 8, Ex. A] .............................................................5

      B.    State Farm's July 30, 2013 Letter to Physicians Group ("the July 30 (6)(b)   Letter
      Regarding Post-Suit Claims") [Dkt. 8, Ex. B] ..........................................................10

      C.    State Farm's July 30, 2013 Letter to the Law Firm of Morgan & Morgan    ("the
      July 30 Policy-Based Letter") [Dkt. 8, Ex. C] ..........................................................11

      D.    State Farm's Purported Attempts To Interview Unidentified Former  Employees
      of Physicians Group Who Supposedly Executed Certain  "Confidentiality Agreements"
      That State Farm Has Requested But The  Defendants Refuse To Disclose [Dkt. 8, Ex.
      D ¶ 10] ......................................................................................................................12

      E.    Attempted Discovery By An Attorney Hired By State Farm To Represent A  State
      Farm Insured Who Is Being Sued In An Unrelated Bodily Injury Suit \Based In Part
      On Treatment And Bills From Physicians Group [Dkt. 8, pp.  4-6, Ex. E].............................16

IV.   STATE FARM IS NOT ATTEMPTING TO "GAIN ADVANTAGE" IN
      STATE COURT LAWSUITS.................................................................................17

      A.    The Issues In The Pre-July 26, 2013 PIP Suits Are Different Than Those In The
      Federal Lawsuit.........................................................................................................18

      B.    The Parties In The Pre-July 26, 2013 PIP Suits Are Different Than Those In The
      Federal Lawsuit.........................................................................................................19

      C.    To Promote The Interests Of The Court, The Parties, Witnesses and The Public,
      And To Serve The Ends Of Justice State Farm Will Not Defend Any Of The Pre-July
      26, 2013 PIP Suits Based Upon Any Of The Theories It Asserts In The Federal
      Lawsuit.......................................................................................................................19

State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company ("State Farm") respond to defendants' Motion for Protective Order ("Motion") [Dkt. 8], which should be denied for the reasons that follow:

## I.      INTRODUCTION

Defendants advertise the Ask Gary Hotline ("Hotline") as a "legitimate independent medical and legal referral service."  In fact, as alleged in State Farm's complaint, the Hotline is an essential piece of a complicated structure that defendants have created to circumvent a comprehensive framework of laws governing the provision of medical services.  The purpose of their scheme is to funnel unwitting callers to Gary Kompothecras' own Physicians Group clinics and law firms that, in at least some instances, agree to similarly steer their clients to those clinics in return for continued referrals from the Hotline.

In their Motion, defendants attempt to sidestep the allegations of the complaint by launching a collateral attack premised upon State Farm's purported "improper discovery."  State Farm's actions do not constitute discovery – let alone improper discovery – and defendants fail to cite any legal authority in support of any position in their Motion because no such authority exists.  As such, the Motion is frivolous and should be denied.

The Motion alleges five scenarios in which State Farm is purportedly conducting "improper discovery" in this case ("the Federal Lawsuit"), allegedly because it seeks information outside the process provided for in the Federal Rules of Civil Procedure and before the Case Management Conference required by this Court's August 1, 2013 Order pursuant to Local Rule 3.05(c)(2)(B).  [Dkt. 8]  The five scenarios are:

(1) a July 29, 2013 State Farm letter to Physicians Group, authorized by Fla. Stat. § 627.736(6)(b), asking it to identify whether certain State Farm insureds who treated at Physicians Group were referred through the Hotline or by their lawyers [Dkt. 8, Ex. A];

1

(2) a July 30, 2013 State Farm letter to Physicians Group, authorized by Fla. Stat. § 627.736(6)(b), asking it to identify whether a particular State Farm insured who treated at Physicians Group was referred through the Hotline or by the insured's lawyer [Dkt. 8, Ex. B];

(3) a July 30, 2013 State Farm letter to law the firm of Morgan & Morgan, asking it to identify whether a particular State Farm insured represented by the law firm was referred to Physicians Group through the Hotline or the law firm, and if the Hotline referred the client to the law firm [Dkt. 8, Ex. C];

(4) State Farm's purported attempts to interview unidentified "former employees" of Physicians Group who supposedly executed "confidentiality agreements" that defendants refuse to disclose [Dkt. 8, Ex. D ¶ 10]; and

(5) Attempted discovery by an attorney hired by State Farm to represent a State Farm insured who is being sued in a bodily injury suit based in part on treatment and bills from Physicians Group [Dkt. 8, pp. 4-6, Ex. E].

None of the five scenarios complained of by defendants constitute an attempt by State Farm to conduct discovery under the Federal Rules of Civil Procedure, and defendants' contentions should be rejected for four reasons:

First, State Farm's July 29 and 30 letters to Physicians Group and Morgan & Morgan are authorized by Fla. Stat. § 627.736(6)(b) and State Farm's contractual rights under its insurance policies to obtain information regarding the compensability of Physicians Group's claims that are not already the subject of any state court lawsuit between Physicians Group and State Farm.

Second, State Farm's attempts to interview former employees of Physicians Group represent permissible efforts by a party to a lawsuit to interview former employees of an adversary who may be witnesses, if appropriate safeguards are in place.

2

Third, any attorney hired by State Farm to represent a State Farm insured against a third party's bodily injury suit must be guided by the best interests of his or her client, the State Farm insured, and if the defendants truly believe that steps taken by any such attorney are inappropriate they should object to them in the courts presiding over such matters.

Finally, the Motion is unnecessary.  Before the Motion was filed, State Farm informed defendants' counsel that, although State Farm is fully entitled to request the information it seeks in the above-referenced July 29 and July 30 letters, State Farm would nonetheless stand down on these letters until the Case Management Conference in this Federal Lawsuit to prevent unnecessary motion practice, like the present Motion.  Furthermore, State Farm even proposed a mutual stand-still agreement for *all* pending PIP claims and state court lawsuits between Physicians Group and State Farm until the Case Management Conference.  Thus, State Farm agreed to postpone actions it was fully entitled to take in order to allow the parties to attempt to clarify through the Case Management Conference their respective rights and obligations regarding the information requested by State Farm.  Furthermore, State Farm offered to meet with defendants' counsel any day or time during the weeks of August 26 or September 2 for a Case Management Conference.  [Ex. 1]  Defendants have ignored State Farm's request for a Case Management Conference to attempt to resolve these issues, and instead have chosen to file this Motion.[1]  Dkt. 8.

State Farm will next address the relevant legal standards and each of the five scenarios raised by defendants' Motion in detail.

---

[1]  As discussed *infra*, State Farm was also attempting to resolve issues with defendants' counsel regarding State Farm's attempts to contact former Physicians Group employees, but defendants chose instead to file this Motion before responding to State Farm's position.

## II.     THE LEGAL STANDARD FOR PROTECTIVE ORDERS

Federal Rule of Civil Procedure 26(c) specifically provides that a party may file a motion for a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense [.]" Fed.R.Civ.P. 26(c); *Ekokotu v. Fed. Exp. Corp.,* 408 F. App'x 331, 335-36 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 420 (U.S. 2011).  The district court may issue a protective order if "good cause" is shown.  *In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 355-56 (11th Cir. 1987).  The burden is on the movant to show the necessity of the protective order, and the movant must meet this burden with a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Ekokotu,* 408 F. App'x at 335-36 (internal citation omitted).  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.  *Trinos v. Quality Staffing Servs. Corp.,* 250 F.R.D. 696, 698 (S.D. Fla. 2008).  In addition to requiring good cause, the district court must "balance the interests of those requesting the order." *Ekokotu,* 408 F. App'x at 336 (internal citation omitted).  Here, as described below, defendants do not come remotely close to meeting these standards.

## III.    NONE OF THE DEFENDANTS' FIVE SCENARIOS VIOLATE THIS COURT'S DISCOVERY RULES OR ANY OTHER LAWS

Defendants devote three pages in their Motion to support their contention that they are entitled to a protective order because State Farm has allegedly attempted to conduct discovery in the Federal Lawsuit in the following five scenarios.[2]  [Dkt. 8, pp. 17-20]  In each scenario,  State

---

[2]  The Motion devotes four and a half pages to discussing a State Farm case in Indiana and in Illinois, as well as a 2007 CNN report about State Farm, that are completely irrelevant to any of the issues in the Federal Lawsuit [Dkt. 8, pp. 7-11], and another six pages to repeating arguments made in its motion to dismiss.  [Dkt. 8, pp. 11-16]

Farm has acted within its rights and none of its actions constitute "discovery" in the Federal Lawsuit.

A.    **State Farm's July 29, 2013 Letter to Physicians Group ("the July 29 (6)(b) Letter Regarding Pre-Suit Claims") [Dkt. 8, Ex. A]**

On July 29, 2013, six days after filing and serving the Federal Lawsuit, State Farm sent a letter to Physicians Group, pursuant to Fla. Stat. § 627.736(6)(b), asking it to identify whether certain State Farm insureds who treated at Physicians Group (approximately 1,500 in number) were referred through the Hotline or by their lawyers [Dkt. 8, Ex. A].  Defendants argue that the July 29 (6)(b) Letter Regarding Pre-Suit Claims constitutes "a discovery violation" in the Federal Lawsuit.  They offer no authority or analysis to explain why State Farm is not entitled, pursuant to Fla. Stat. § 627.736(b), to the requested information.  Instead, they provide the affidavit of defendant David Balot (who is not a lawyer, and who otherwise cites no controlling authority) stating that it is his "understanding" that State Farm is not entitled to the requested information under § 627.736(6)(b).  [Dkt. 8, Ex. D, ¶ 9]

As an initial matter, it is important to provide context for State Farm's July 29 (6)(b) Letter Regarding Pre-Suit Claims to Physicians Group.  The requested information only applies to Physicians Group's claims for treatment rendered to State Farm's insured if:

(1) the claims were presented to State Farm *before* the Federal Lawsuit was filed,

(2) Physicians Group contends that at least some portion of its charges are still owed by State Farm, and

(3) such claims were not at issue in any of the approximately 1,000 PIP Suits that were pending when the Federal Lawsuit was filed, to avoid any appearance that the letter constitutes an attempt to obtain discovery regarding any such suits.

There can be no dispute – whether this lawsuit was filed or not – that State Farm is authorized by § 627.736(6)(b) to request the information from Physicians Group, and that Physicians Group must provide it.  Specifically, § 627.736(6)(b) provides that every clinic that submits charges for No-Fault benefits based upon treatment rendered to an injured party **must**, if requested by an insurer, furnish forthwith "a written report of the . . . treatment, . . . and costs of such treatment . . . and why the items identified by the insurer were **reasonable** in amount . . ." (emphasis added).  Further, under Fla. Stat. § 627.736(5)(b)(1)(b), neither an insurer nor an insured is required to pay a claim or charge for services or treatments that were not lawful when rendered.  If the treatments were not lawful when rendered, the charges could not possibly be reasonable because neither State Farm nor its insureds were required to pay any such charges.  *See Allstate Ins. Co. v. Vizcay*, 2011 WL 5870016, at *5 (M.D. Fla. Nov. 22, 2011) (services that are not lawfully rendered are not compensable under the PIP Statute); *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 2013 WL 3989107 (11th Cir. Aug. 6, 2013) (same); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc*., 2011 WL 6450769, at *6 (M.D. Fla. Dec. 21, 2011) (same); *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc*., 657 F. Supp. 2d 1279, 1290 (M.D. Fla. 2009) (same).

The July 29 Letter Regarding Pre-Suit Claims clearly asks Physicians Group under authority of § 627.736(6)(b) to disclose whether the patients at issue in the specific claims identified in the attachment to the letter were referred to Physicians Group by the Hotline or their lawyers.  State Farm has a right to this information, and Physicians Group has an obligation to provide it, because it goes to the fundamental issue of whether the treatments for which charges were submitted to State Farm were lawful when rendered and were reasonable in amount.

In *Kaminester v. State Farm Mut'l Auto. Ins. Co.*, State Farm issued a § 627.736(6)(b) request for lease information from the claimant based on its contention that the claimant had done nothing more than refer the insured to an MRI provider, and, in so doing, had violated Florida's patient brokering statute, rendering the services non-compensable. *Kaminester,* 775 So.2d 981, 983-84 (2000). The claimant refused to provide the lease information that would reveal the patient brokering scheme because, among other reasons, the lease information sought by the insurer was purportedly "not within the ambit of § 627.736(6)(b)," presumably because it was not specifically enumerated under that section. *Kaminester,* 775 So.2d at 983 (2000). The court rejected the claimant's position. At the outset, the court recognized the general purpose of this statutory provision: "Section 627.736(6) provides for informal discovery from the provider to the PIP insurer without resort to litigation." *Id.* at 984. The court further noted the broad range of information allowed under § 627.736(6)(b) requests, holding that § 627.736(6)(b) is engineered toward an insurer being able to obtain broad "discovery of facts" about an insured's treatment. *Id.* Thus, the court held that lease agreements fell "well within the meaning of the statutory discovery provision [627.736(6)(b)]," even if they were not specifically enumerated. *Id.* at 984-85; *see also Best Line Medical Center, Inc. v. State Farm Mut'l Auto. Ins. Co.,* Case No. 10-033419 (Hillsborough County Ct. September 17, 2011), Slip Op. at p. 4 (Under 6(b) "insurer can look to any indicia of question or challenge to see whether or not there's reason for legitimately questioning whether or not the bill should be due and owing.) (Ex. 2); *Hialeah Medical Corp. v. Mercury Ins. Co.*, 16 Fla. L. Weekly Supp. 958a (Fla. Miami-Dade County Ct. 2009) (holding that 6(b) requests are "designed to enable the insurer to make inquiry of certain facts so it can better investigate its claims . . . [and] may have the power to eliminate litigation as well as eliminate post suit discovery.") (Ex. 3)

Here, as in *Kaminester,* State Farm seeks information under § 627.736(6)(b) related to the compensability of pending claims that were not the subject of PIP Suits when the Federal Lawsuit was filed, namely whether the insured was referred to Physicians Group via the Hotline or by other means, such as the patient's attorney.  If the patients were unlawfully referred, the corresponding Physicians Group services were not compensable because, as was the case in *Kaminester,* they were the product of unlawful patient brokering (and other violations).  Like the lease information requested by State Farm in *Kaminester*, the referral information requested by State Farm pursuant to § 627.736(6)(b) plainly goes to the broad "discovery of facts" regarding the insured's treatment, and specifically whether Physicians Group's pending claims for each such insured are compensable, which is well within the ambit and purpose of § 627.736(6)(b).

Furthermore, there is no credible argument that the timing of State Farm's July 29 (6)(b) Letter Regarding Pre-Suit Claims is suspect, given the filing of the Federal Lawsuit, because State Farm and its insureds are at risk on the claims for which State Farm is requesting information.  Insurers are required to pay or deny No-Fault claims in Florida within 30 days after being furnished with written notice of the facts of a covered loss and of the amount of same.  *See* Fla. Stat. § 627.736(4)(b)).  Payments shall not be deemed overdue, however, if the insurer has reasonable proof to establish that it is not responsible for payment. *Id.*  Furthermore, insurers may assert, among other things, that charges were in violation of Fla. Stat. § 627.736(5), at any time including after payment has been made, or after the 30 days have expired to pay or deny the claim.  *See* Fla. Stat. § 627.736(4)(b).

Based upon the above, State Farm's July 29 (6)(b) Letter Regarding Pre-Suit Claims is a legitimate exercise of its statutory rights under § 627.736(6)(b) and is not a discovery violation in the Federal Lawsuit.  Defendants have not provided any authority to the contrary or to suggest

that State Farm somehow forfeited its statutory rights under § 627.736(6)(b) to request and obtain information necessary to determine if claims pending when the Federal Lawsuit was filed are non-compensable because the charges are for treatment that was not lawful when it was rendered.

Finally, the Motion is unnecessary, particularly with respect to the July 29 and July 30 letters.  Before the Motion was filed, on August 7, State Farm informed defendants' counsel that, even though State Farm was entitled to seek the information requested in these letters, it nonetheless agreed to stand down on these letters until a Case Management Conference occurred in this Federal Lawsuit.  This would allow the parties to attempt to resolve their respective rights and obligations under § 627.736(6)(b), State Farm's insurance policies, and the federal discovery rules through the Case Management Conference in this case.  Furthermore, State Farm also proposed to defendants' counsel a mutual stand-still agreement for all pending PIP claims submitted by Physicians Group to State Farm (which would obviate the present need for § 627.736(6)(b) requests to process claims) until the parties could also attempt to resolve through the Case Management Conference any issues resulting from Physicians Group's ongoing submission of claims.

To expedite these discussions and resolve any potential disputes, by letter dated August 14, 2013, State Farm offered to meet with defendants' counsel any day or time during the weeks of August 26 or September 2 for a Case Management Conference.  [Ex. 1]  Defendants chose not to respond to State Farm's request for a Case Management Conference date.  Instead, rather than complying with their obligation to participate in and attempt to resolve the issues raised in the Motion through a Case Management Conference, defendants chose to file this Motion.  [Dkt. 8.] Although State Farm believes it has a right to seek the information requested in the July 29 and

July 30 letters, to avoid any more unnecessary disputes, consistent with its earlier offer to defendants' counsel, State Farm will agree to attempt to resolve any issues with respect to these matters through the Case Management Conference and until such time as the Court rules on the Motion.

   **B.     State Farm's July 30, 2013 Letter to Physicians Group ("the July 30 (6)(b) Letter Regarding Post-Suit Claims") [Dkt. 8, Ex. B]**

   Defendants also complain that State Farm engaged in a "discovery violation" based upon a July 30, 2013 State Farm letter to Physicians Group, pursuant to § 627.736(6)(b), asking it to identify whether a particular State Farm insured who treated at Physicians Group was referred through the Hotline or by the insured's lawyers.  [Dkt. 8, Ex. B].  The only difference between this letter and the one addressed in Section A above is that the July 30, 2013 Letter Regarding Post-Suit Claims was sent by State Farm regarding a bill submitted by Physicians Group to State Farm *after* the Federal Lawsuit was filed.  Once again, defendants offer no authority or analysis to suggest State Farm is not entitled, pursuant to Fla. Stat. § 627.736(b), to the requested information, other than the affidavit of defendant David Balot (who is not a lawyer) stating that it is his "understanding" that State Farm is not entitled to the requested information under § 627.736(6)(b).  [Dkt. 8, Ex. D, ¶ 9]  For the reasons discussed above in Section A, State Farm is entitled to the information requested in the July 30 (6)(b) Letter Regarding Post-Suit Claims.  Furthermore, if Physicians Group continues to submit new claims to State Farm, State Farm will have the right, pursuant to Fla. Stat. § 627.736(6)(b), to seek the same information regarding the manner in which the State Farm insureds who are the subject of such claims were referred.  Nevertheless, consistent with its earlier agreement, State Farm will attempt to resolve these issues through the Case Management Conference, and will defer making any further (6)(b)

requests regarding Physicians Group claims submitted after the Federal Lawsuit was filed until the Court rules on the Motion.

### C.   State Farm's July 30, 2013 Letter to the Law Firm of Morgan & Morgan ("the July 30 Policy-Based Letter") [Dkt. 8, Ex. C]

Defendants next complain that State Farm engaged in a "discovery violation" based upon a July 30, 2013 State Farm letter to the law firm of Morgan & Morgan—the July 30 Policy-Based Letter – asking it to identify whether a particular State Farm insured represented by the law firm was referred to Physicians Group through the Hotline or the law firm, and if the Hotline referred the client to the law firm.  [Dkt. 8, Ex. C]  The July 30 Policy-Based Letter was sent to Morgan & Morgan because that firm represents a State Farm insured for whom Physicians Group submitted a bill *after* the Federal Lawsuit was filed.  Unlike the statutory basis for the letters discussed in Sections A and B above, State Farm is entitled to the information requested in the July 30 Policy-Based Letter pursuant to its insurance contract with the insured who is represented by Morgan & Morgan and treated at Physicians Group.  In fact, defendants do not cite any authority to suggest otherwise.

Specifically, the State Farm insurance policy imposes on the insured a "duty to cooperate," stating that the "insured must cooperate with us [State Farm] and, when asked, assist us in . . . securing and giving evidence" relating to claims.  [Ex. 4 at 38.]  The information requested by State Farm in the July 30 Policy-Based Letter goes to the core issue of whether the charges of Physicians Group are for treatment that was lawfully rendered and are owed by State Farm or its insured.  *See* Fla. Stat. § 627.736(5)(b)(1)(b) and discussion above.  Therefore, pursuant to the relevant insurance policy, the insured is required to provide the requested information to State Farm.  *See e.g., Schnagel v. State Farm Mut. Auto. Ins. Co.,* 843 So. 2d 1037, 1038 (Fla. 4th DCA 2003) (failure to cooperate may constitute a material breach of

insurance policy); *Laine v. Allstate Ins. Co.,* 355 F. Supp. 2d 1303, 1307 (N.D. Fla. 2005) (noting that cooperation clauses require insured "to produce records or cooperate in an insurer's investigation in other respects"); *Allstate Ins. Co. v. Hamler,* 247 Ga. App. 574, 577, 545 S.E.2d 12, 15 (2001) (explaining that by "fail[ing] to provide material information relevant to the insurer's investigation of her claim," insured breach cooperation clause of insurance contract). Since they are represented, the request has to be made through their attorney.  Again, consistent with its earlier agreement, State Farm will attempt to resolve these issues through the Case Management Conference, and defer making any further policy-based requests regarding Physicians Group claims submitted after the Federal Lawsuit was filed until the Court rules on the Motion.

### D. State Farm's Purported Attempts To Interview Unidentified Former Employees of Physicians Group Who Supposedly Executed Certain "Confidentiality Agreements" That State Farm Has Requested But The Defendants Refuse To Disclose [Dkt. 8, Ex. D ¶ 10]

Defendants next complain that State Farm has "attempted to interview defendants' former employees, who previously executed certain confidentiality agreements with defendants as part of their employment, without addressing these individuals' contractual liabilities for failing to abide by the terms of these agreements."  [Dkt. 8, at p. 2]  Once again, the sole support for this position is the affidavit of defendant David Balot who states that he is "aware that State Farm has attempted to speak with former employees of Physicians Group, and that these employees executed confidentiality agreements in conjunction with their employment."  [Dkt. 8, Ex. D ¶ 10]

Defendants claim that they "attempted to work through these issues with counsel for State Farm" but received an August 14, 2013 letter in which counsel for State Farm supposedly maintained that it intends to continue engaging in this extrajudicial discovery without regard for

the limitations of discovery [in the Federal Lawsuit] or the potential liability of Physicians Group's former employees for violations of their confidentiality agreements."  [Dkt. 8, p. 3] This is completely untrue.

On August 2, 2013, defendants sent State Farm a letter claiming that they would file the Motion unless State Farm stopped sending the letters described in Sections A though C above, and stopped attempting to interview Physicians Group's former employees.  [Ex. 5]  On August 14, 2013, State Farm responded by asking Physicians Group to identify all former employees who allegedly entered into confidentiality agreements and to produce the terms of such agreements so that State Farm could assess their scope.  [Ex. 6]  Absent information or authority to the contrary, and with appropriate safeguards in place, State Farm advised defendants that it believed it has the right to attempt to interview former Physicians Group employees regarding matters pertaining to the Federal Lawsuit.  [Id.]  State Farm agreed to give defendants until the close of business Monday, August 19, 2013 to produce the names of the former employees, the terms of their confidentiality agreements, and any information or authority that would limit or prohibit State Farm from attempting to interview these people about matters pertaining to the Federal Lawsuit.  [Id.]  Defendants chose not to respond to State Farm's request, and instead filed the Motion in which they still fail to identify any former employee who agreed to confidentiality, fail to produce the terms of any such confidentiality agreement, and fail to cite to any authority supporting their position that State Farm should be prohibited from attempting to interview a former employee of Physicians Group.

On Tuesday, August 20, 2013, after filing the Motion, defendants responded to State Farm's August 14, 2013 correspondence and represented that "all employees of Physicians Group from at least as early as 2006 through present executed a confidentiality agreement with

their former employer." [Ex. 7.] Contrary to defendants' representations in their August 2, 2013 correspondence, which included only select portions of a confidentiality agreement that now appears to be solely for *physician* employees of Physicians Group, defendants attached three different confidentially agreements, with differing terms and conditions. *See id.* Moreover, defendants still continue to refuse to identify *which* former employees have purportedly signed *which* of the three confidentiality agreements. Instead, defendants purposely seek to create uncertainty and confusion to thwart discovery of their fraud scheme.

Even if *all* former employees executed confidentiality agreements precluding disclosure of any aspect of their work at Physicians Group, State Farm should not be prohibited from contacting these former employees regarding matters that are relevant to the Federal Lawsuit. As an initial matter, counsel for a party may contact former employees of an adversary if certain conditions are met. Specifically, counsel for a party who is investigating factual circumstances pertaining to pending litigation are free to contact former employees who have not maintained any ties with the corporation, who are no longer part of the corporate entity, and who have not sought nor consented to be represented in the matter by the corporation's attorneys. For instance, in *H.B.A. Management, Inc. v. Estate of Schwartz*, 693 So. 2d 541, 542 (Fla. 1997), the Florida Supreme Court held that, "Florida Rule of Professional Conduct 4-4.2 . . . does not prohibit a claimant's attorney from engaging in ex parte communications with former employees of a defendant-employer." Furthermore, a plaintiff's attorney may communicate with former managers and former employees of a defendant corporation without seeking and obtaining consent of corporation's attorney. *Id.* In *H.B.A Management*, the Florida Supreme Court reasoned that under Rule 4-4.2, counsel is not prohibited from contacting former employees who have not maintained any ties with the corporation, who are no longer part of the corporate entity,

14

and who have not sought nor consented to be represented in the matter by the corporation's attorneys. *Id.* at 543. Likewise, in *MCC Mgmt. of Naples, Inc. v. Arnold & Porter, LLP,* the Middle District of Florida relied on *H.B.A. Management* and rejected the Defendant's argument that plaintiffs' counsel violated Rule 4–4.2 by speaking with a former employee. The *MCC Mgmt* court reasoned that an attorney may ethically communicate with a former employee of a corporation on an ex parte basis even though the attorney knows that the corporation is represented by counsel. 207-CV-387-FTM-29SPC, 2009 WL 1514423, at *22 (M.D. Fla. May 29, 2009), *see also H.B.A. Mgmt.* 693 So.2d at 54.

A confidentiality agreement does not alter this conclusion because it cannot be used to adversely interfere with the ability of an entity which was not a party to the agreement to fully investigate the facts in support of pending litigation. *Nestor v. Posner-Gerstenhaber*, 857 So. 2d 953, 955 (Fla. 3d DCA 2003). In *Nestor,* the Third District Court of Appeal held that an employee's confidentiality agreement which prevented disclosure of the employer's "…plans, businesses, finances, assets, liabilities, income, expenses and expenditures, legal matters, visitors, acquaintances, meetings, activities, state of mind, health or health care ... except to the extent required by law," did *not* prevent informal witness interviews without the need for court process. In its holding, the *Nestor* court stated:

> Contractual confidentiality agreements…cannot be used to adversely interfere with the ability of nonparties to pursue discovery in support of their case. *See Smith v. TIB Bank of the Keys,* 687 So. 2d 895, 896 (Fla. 3d DCA 1997); *Scott v. Nelson,* 697 So. 2d 1300, 1301 (Fla. 1st DCA 1997) ("[S]ettlement agreements which suppress evidence violate the greater public policy."). Informal ex parte interviews with former employees are allowed, *see H.B.A. Mgmt., Inc. v. Estate of Schwartz,* 693 So. 2d 541, 544-45 (Fla. 1997), and ex parte interviews with current employees may be allowed as well. *See NAACP v. Florida Dept. Of Corrections,* 122 F.Supp.2d 1335, 1341 (M.D. Fla. 2000).

*Id.* at 955 (Fla. 3d DCA 2003); *see also Newman v. Sun Capital, Inc.*, 2:09-CV-445-FTM-29, 2012 WL 3715150 (M.D. Fla. Aug. 28, 2012), *citing Nestor,* ("even where a private confidentiality agreement is otherwise proper, it will not be enforced where its effect becomes obstructive of the rights of non-parties"); *Smith v. TIB Bank of the Keys,* 687 So. 2d 895, 896 (Fla. 3d DCA 1997) ("confidentiality agreements . . . may not be subsequently employed by a litigant to obscure issues or otherwise thwart an opponent's discovery"); *Scott v. Nelson*, 697 So. 2d 1300, 1301 (Fla. 1st DCA 1997) (citations omitted) ("[S]ettlement agreements which suppress evidence violate the greater public policy.").

Thus, under Florida law, there is nothing improper with State Farm contacting former employees of Physicians Group under these circumstances. As with all their arguments in the Motion, defendants provide *no* legal authority to suggest otherwise.  Because their position is directly contrary to legal authority, the Motion should be denied.

**E.      Attempted Discovery By An Attorney Hired By State Farm To Represent A State Farm Insured Who Is Being Sued In An Unrelated Bodily Injury Suit \Based In Part On Treatment And Bills From Physicians Group [Dkt. 8, pp. 4-6, Ex. E].**

Defendants ask this Court to prohibit attorneys hired by State Farm to represent State Farm insureds who are being sued in bodily injury suits based on Physicians Group's bills from seeking any discovery in those bodily injury lawsuits from Physicians Group or any other Federal Lawsuit defendants.   Again, defendants do not cite any authority to support their argument, but refer to several colloquies between a Sarasota County Circuit Court Judge and an attorney hired by State Farm to represent a State Farm insured who is a defendant in a bodily injury lawsuit.   [Dkt. 8, pp. 4-6, Ex. E]   The Sarasota County Circuit Judge told the defense lawyer that "this isn't the State Farm case basically we're trying here?" and that "State Farm shouldn't use this case to get discovery in the other case without counsel being involved."  From

16

the few disjointed transcript references provided by defendants it is impossible to know what issues the parties and court were addressing in that particular bodily injury case, what discovery the court allowed, and what discovery it did not allow.

It is important to note that the lawsuit to which defendants reference is not a lawsuit between Physicians Group and State Farm (*i.e.,* a PIP lawsuit), but rather a third-party bodily injury lawsuit to which neither Physicians Group nor State Farm are parties.  Furthermore, attorneys hired by State Farm to defend State Farm insureds in bodily injury suits must always act in the best interest of their insured clients.  Thus, it would be inappropriate for State Farm to instruct these attorneys not to conduct discovery that the lawyers felt would be in the insured's best interest in these third-party bodily injury suits.  Accordingly, in these types of third-party cases in which neither Physicians Group or State Farm are parties to the action, the procedure employed in that Sarasota County Circuit Court case is exactly the one that should be used to address any allegedly impermissible attempts at discovery in any particular bodily injury lawsuit pending before that court.  If a party or non-party from whom discovery is sought believes it is beyond the scope, they should assert their objections to the court presiding over that case who must then decide whether to allow the discovery or not.

## IV.   STATE FARM IS NOT ATTEMPTING TO "GAIN ADVANTAGE" IN STATE COURT LAWSUITS

Finally, defendants contend that State Farm is engaging in the above-described allegedly "improper discovery" to gain an unfair advantage in this Federal Lawsuit, and in more than 1,000 "related pending state court matters" that were pending when the Federal Lawsuit was filed  ("the Pre-July 26, 2013 PIP Suits").  [Dkt. 8, p. 4]  To support this contention, the Motion again relies solely on defendant David Balot's affidavit, which represents that there are more than 1,000 pending cases (i.e., the Pre-July 26, 2013 PIP Suits) in which State Farm is allegedly

refusing to pay Physicians Group's claims because it "has engaged in a fraudulent billing scheme." [Dkt. 8, Ex. D ¶ 5] Balot's affidavit is misleading in this regard. In fact, State Farm is not aware of any Pre-July 26, 2013 PIP Suit in which State Farm has challenged the claim based upon a fraudulent billing scheme, or on any of the theories asserted by State Farm in this Federal Lawsuit. In fact, as discussed next, the issues and the parties in the Pre-July 26, 2013 PIP Suits are entirely distinct from the parties and the issues in the Federal Lawsuit.

As described in greater detail above, and in an effort to eliminate any potential issues that might exist as a result of the Pre-July 26, 2013 PIP Suits and this Federal Lawsuit, State Farm proposed to defendants' counsel a mutual stand-still agreement for all Pre-July 26, 2013 PIP Suits until the parties could confer through the Case Management Conference in this case. Thus, defendants' claim that State Farm is using the present lawsuit for some unstated tactical advantage in the Pre-July 26, 2013 PIP Suits is contradicted by State Farm's proposed agreement for a mutual stand down on all these Pre-July 26, 2013 PIP Suits. In any event, despite State Farm's best efforts to eliminate unnecessary motion practice, defendants ignored State Farm's request for an expedited Case Management Conference to attempt to resolve these issues, and instead filed this Motion.

A.     **The Issues In The Pre-July 26, 2013 PIP Suits Are Different Than Those In The Federal Lawsuit**

As referenced above, in virtually all, if not all, the Pre-July 26, 2013 PIP Suits filed by Physicians Group against State Farm, the sole issues pertain to the payment methodology employed by State Farm in paying Physicians Group's bills and the reasonableness of Physicians Group's charges. *See* Ex. 8 (Declaration of Richard Rini). Specifically, these Pre-July 26, 2013 PIP Suits, at least the great majority of which are pending in Sarasota County Courts or Small Claims Courts, involve treatment to a single patient and the disputed amounts range from a few

hundred to a few thousand dollars.  *See id.*  The sole issue in all, or virtually all, PIP Suits is whether State Farm owes Physicians Group more than it paid, which will turn on a determination regarding the reasonableness of Physicians Group's charges in individual claims.  State Farm is not aware of any Pre-July 26, 2013 PIP Suit, and defendants have not identified one, in which any issue raised in this Federal Lawsuit (e.g., patient brokering, kickbacks, self-referrals, and unfair and deceptive acts and practices) have been litigated by State Farm.  *See id.*  Therefore, the issues being litigated in the Pre-July 26, 2013 PIP Suits are entirely distinct from the ones alleged by State Farm in this Federal Lawsuit.  *Id.*

> **B.**     **The Parties In The Pre-July 26, 2013 PIP Suits Are Different Than Those In The Federal Lawsuit**

In addition, the parties in every Pre-July 26, 2013 PIP Suit are different than those in the Federal Lawsuit because the lawsuits address different issues.  The only parties to the Pre-July 26, 2013 PIP Suits are Physicians Group and either State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.  The additional and distinct parties to the Federal Lawsuit are Gary Kompothecras, David Balot, William Sigelakis, DB Medical Consulting, WS Marketing, and WS Media.

> **C.**     **To Promote The Interests Of The Court, The Parties, Witnesses and The Public, And To Serve The Ends Of Justice State Farm Will Not Defend Any Of The Pre-July 26, 2013 PIP Suits Based Upon Any Of The Theories It Asserts In The Federal Lawsuit**

As discussed above, State Farm intends to litigate solely in this Court the unique issues raised in the Federal Lawsuit, which are whether Physicians Group's charges in claims ***that are not the subject of the Pre-July 26, 2013 PIP Suits*** were and are unlawful, and if so whether State Farm is entitled to recover from one or more defendants the payments made for such charges, as well as a declaratory judgment that any such unpaid charges are not owed.  Solely litigating the unlawfulness of Physicians Group charges and the related issues of liability for all

19

defendants in the Federal Lawsuit will promote judicial economy, avoid the potential for inconsistent rulings by the various County Court judges presiding over the Pre-July 26, 2013 PIP Suits and this Court, and serve the interests of the Courts, the parties, the witnesses and the public by avoiding the need for duplicative discovery, motions and trials regarding the issues raised by State Farm in the Federal Lawsuit.

Moreover, State Farm's approach to litigate distinct issues against distinct parties in this Court will also eliminate issues regarding the res judicata or collateral estoppel effect of any rulings made in this Court on any of the Pre-July 26, 2013 PIP Suits, and vice versa.[3]  *See*, *Dep't of Health & Rehabilitative Servs. v. B.J.M.,* 656 So. 2d 906, 910 (Fla. 1995) (finding that collateral estoppel did not apply because issue was not "*actually litigated*"); *Porter v. Saddlebrook Resorts, Inc.,* 679 So. 2d 1212, 1215 (Fla. 2d DCA 1996) (explaining that "there can be no collateral estoppel effect on issues not litigated"); *Barrington v. Florida Dep't of Health*, 112 F. Supp. 2d 1299, 1305 (M.D. Fla. 2000) ("It is also a settled rule that, when the second suit is between the same parties but based upon a different cause of action from the first, the prior judgment will not serve as an estoppel except as to those issues actually litigated and determined"); *Pipkin v. Wiggins,* 526 So. 2d 1002, 1003 (Fla. 3d DCA 1988) (explaining that res judicata did not bar subsequent action because it was "based on a different cause of action"); *Selim v. Pan Am. Airways Corp.,* 889 So. 2d 149, 153 (Fla. 4th DCA 2004) (explaining that res judicata does not apply unless an overlap between the cause of action).

WHEREFORE, State Farm respectfully requests this Court to deny defendants' Motion for a Protective Order.

---

[3]Accordingly, to the extent that defendants' accurately represent in their Motion to Dismiss that twenty-two claims on Exhibit 3 to State Farm's Complaint are the subject of Pre-July 26, 2013 PIP Suits, State Farm will not seek any relief for those claims in the Federal Lawsuit, which will eliminate any substantive or procedural confusion in this Court as well as the County Courts.

Dated: September 3, 2013

Respectfully submitted,

By:/s/ Ross O. Silverman

ROSS O. SILVERMAN
ross.silverman@kattenlaw.com
(*admitted pro hac vice*)
ERIC T. GORTNER
eric.gortner@kattenlaw.com
(*admitted pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
525 West Monroe Street
Chicago, IL  60661-3693
Telephone:  (312) 902-5200
Facsimile:  (312) 902-1061

—and—

DAVID I. SPECTOR
Fla. Bar No. 086540
david.spector@akerman.com
**AKERMAN SENTERFITT**
222 Lakeview Avenue, Suite 400
West Palm Beach, FL  33401
Telephone:  (561) 653-5000
Facsimile:   (561) 659-6313

Attorneys for Plaintiffs