# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION


STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE & CASUALTY COMPANY,

        Plaintiffs,                    Case No. 8:13-cv-1932-17-TGW

                                        Hon. Elizabeth A. Kovachevich

                                        Magistrate Judge Thomas G. Wilson

v.

PHYSICIANS GROUP OF SARASOTA, L.L.C.,
PHYSICIANS GROUP, L.L.C. a foreign Delaware corporation,
GARY KOMPOTHECRAS, DAVID BALOT,
DB MEDICAL CONSULTING, INC.,
W.S. MEDIA, INC. a foreign Delaware corporation,
W.S. MARKETING, INC., and WILLIAM SIGELAKIS,

        Defendants.

_____/

## STATE FARM'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# Table of Contents

I.      INTRODUCTION................................................................................................ 1

II.     STATEMENT OF FACTS ............................................................................. 2

   A.    State Farm's Complaint .................................................................................. 2

III.    LEGAL ANALYSIS ...................................................................................... 4

   A.    Defendants' Scattershot Abstention Arguments Should Be Denied ................................ 4

      1.    Abstention Is Improper Because There Are No "Parallel" State Court Cases Litigating The Same Issues With The Same Parties As This Case ........................................ 4

      2.    This Court Has Rejected Similar Abstention Arguments Under Near Identical Circumstances ........................................................................................... 6

      3.    The *Thibodaux* and *Burford* Abstention Arguments Are Inapplicable ...................... 7

      4.    The *Wilton/Brillhart* Doctrine Does Not Apply Because The Complaint Does Not Seek Solely Declaratory Relief ........................................................................ 10

   B.    State Farm's Fraud Claim Meets All Pleading Requirements ...................................... 13

   C.    The Unjust Enrichment Count States A Claim Against All Defendants........................ 15

   D.    State Farm Has Stated A Cause of Action Under FDUTPA ........................................ 16

   E.    State Farm Has Stated A Claim Under The Self-Referral Act...................................... 18

   F.    The Declaratory Judgment Count Is A Viable Stand-Alone Claim .............................. 19

IV.    CONCLUSION ........................................................................................... 20

## I. INTRODUCTION

Defendants' motion to dismiss ("Motion") should be denied because it provides no legal basis for this Court to abstain from its presumptive jurisdiction over this case, or to dismiss any claims. To support their abstention arguments, defendants incorrectly represent that there are many pending state court lawsuits ("PIP Suits") in which State Farm is litigating the same issues as in this case and that the State of Florida and Florida Bar have "approved" their Ask Gary Hotline ("Hotline") as a medical and legal referral service. They make these inaccurate representations to suggest that the exercise of this Court's jurisdiction would disrupt the state court's jurisdiction over the PIP Suits and the Florida Bar's purported "approval" of the Hotline. Neither of their representations are true, and there is no reason for this Court to abstain.

Defendants also omit any reference to *Allstate Ins. Co. v. Vizcay*, in which this Court rejected virtually the same abstention arguments under very similar circumstances, as well as several other cases from Florida in which federal courts have exercised jurisdiction over suits presenting the same central issue as here—whether claims presented for payment under Fla. Stat. § 627.736 ("PIP Statute") were lawfully rendered and therefore compensable. *See*, *e.g., Vizcay*, 2011 WL 5870016, at *5 (M.D. Fla. Nov. 22, 2011); *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 2013 WL 3989107 at *2 (11th Cir. Aug. 6, 2013); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc*., 2011 WL 6450769, at *6 (M.D. Fla. Dec. 21, 2011); *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc*., 657 F. Supp. 2d 1279, 1290 (M.D. Fla. 2009).

Defendants want this Court to abstain so that they can continue to inundate and attempt to overwhelm the County Courts' resources with massive volumes of small-dollar PIP Suits involving single claims, requiring the County Courts and State Farm to litigate each matter on a piecemeal basis, and to avoid this forum in which all the relevant facts and circumstances of their

1

extremely calculated scheme, which has evolved with seemingly much deliberation over many years, can be litigated and addressed by one Court, in one proceeding, at one time.

Defendants also raise purported pleading deficiencies, all of which are baseless. They first contend that the common law fraud count (Count I) fails to meet Rule 9(b) requirements, but this is wrong because the complaint includes particularized facts about all elements of their fraud, including a detailed appendix regarding specific fraudulent claims. Defendants next claim that the unjust enrichment count (Count II) fails because the non-Physicians Group defendants only received indirect benefits, but this is not a valid objection since indirect benefits can support a claim of unjust enrichment. They also contend that Physicians Group was not unjustly enriched because it provided services, but this ignores that such services were not lawfully rendered and thus not owed any payment at all. Defendants also claim that the FDUPTA count (Count III) fails because State Farm lacks standing under certain underlying statutes, and Physicians Group is otherwise exempt from FDUPTA. These arguments are all contrary to established Florida law. Their contention that State Farm has no private cause of action under the Patient Self-Referral Act (Count IV) is misplaced because State Farm is provided a specific right to receive a refund of defendants' payments in violation of the Act, and defendants' interpretation would violate basic maxims of statutory interpretation by creating a right to a refund without a remedy to enforce it. Finally, defendants' claim that there could be no stand-alone declaratory judgment action here is wrong as a matter of law. Accordingly, their Motion should be denied in its entirety.

## II.    STATEMENT OF FACTS

### A.    State Farm's Complaint

This case involves a massive fraud scheme by defendants to obtain from State Farm No-Fault Benefits for services and treatments that were not lawful when they were rendered because

defendants intentionally violated several important criminal, civil and administrative laws to lure unwitting motor vehicle accident victims to receive services and treatments at Physicians Group clinics, including the Patient Brokering Act, (Fla. Stat. § 817.505), the Patient Self-Referral Act (Fla. Stat. § 456.053), the Anti-Kickback Statute (Fla. Stat. § 456.054), and the Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq.*) ("FDUTPA"). (Compl. at ¶ 1.) Because the services and treatments were not lawfully rendered, neither the patients nor State Farm owed Physicians Group's claims or charges for these services. *See* Fla. Stat. § 627.736(5)(b)(1)(b) ("An insurer or insured is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered."). (Id. at ¶ 2.)

The success of defendants' scheme depends on referrals to Physicians Group from a purportedly independent and legitimate medical and legal referral service, the 1-800-ASK-GARY hotline ("the Hotline"). (Compl. at ¶ 3.) Contrary to its pervasive advertising, the Hotline is not an independent and legitimate medical and legal referral service. (Id. at ¶ 4.) In fact, it is secretly owned and controlled by Gary Kompothecras and exists to unlawfully steer all unwitting callers to his own clinics, the Physicians Group clinics, and to personal injury attorneys who pay fees to the Hotline to obtain client referrals and, at least in some instances, secretly agree to refer their clients to the Physicians Group clinics. (Id.) To conceal the unlawful nature of their activities, defendants have created shell companies with nominee owners to purportedly own and operate the Hotline, but they are all working for, or at the direction of, Gary Kompothecras. (Id. at ¶ 5.) Along with Physicians Group and Gary Kompothecras, these shell companies, WS Media and WS Marketing, and their nominee owner, William Sigelakis, are defendants, along with DB Medical Consulting through which David Balot orchestrates the fraud scheme alleged the complaint.

State Farm seeks recovery of Personal Injury Protection ("PIP Benefits") and Medical Payments Coverage ("MPC Benefits") insurance benefits it paid to Physicians Group for services that were not lawfully rendered, and therefore not compensable, under the Florida PIP Statute. State Farm asserts claims under common-law fraud, unjust enrichment, FDUPTA, and the Patient Self-Referral Act for all past payments due to the fraudulent scheme, and also seeks declaratory relief as to all pending and future claims for payment by Physicians Group that are not compensable due to the fraud scheme.

## III. LEGAL ANALYSIS

### A. Defendants' Scattershot Abstention Arguments Should Be Denied

Abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and can only be justified under "exceptional circumstances." *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 813-14 (1976). "[F]ederal courts have a virtually unflagging obligation to exercise their jurisdiction." *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988). Here, there are no such "extraordinary circumstances."

#### 1. Abstention Is Improper Because There Are No "Parallel" State Court Cases Litigating The Same Issues With The Same Parties As This Case

To invoke abstention under *Colorado River,* which, as explained below, is the only abstention doctrine that defendants could potentially invoke, requires the presence of "parallel" or "concurrent" state court litigation. *Jackson-Platts v. Gen. Elec. Capital Corp.,* 11-14379, 2013 WL 4463006 at *10 (11th Cir. Aug. 22, 2013); *Ambrosia Coal & Const. Co. v. Pages Morales,* 368 F.3d 1320, 1330 (11th Cir. 2004). "Federal and state proceedings are 'concurrent' and 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co of Pittsburgh v. Karp,* 108 F.3d 17, 22 (2d. Cir. 1997)

4

Here, there are no "concurrent" or "parallel" state court proceedings. Defendants suggest that there are more than 1,000 PIP Suits involving the same issues and parties as those in this case. This is wrong. The PIP Suits do not involve substantially the same parties or same issues and therefore are not "parallel" proceedings. *See* Ex. 1 (Declaration of Richard Rini). The parties to the PIP Suits are solely Physicians Group and State Farm, while the parties to this federal suit include Gary Kompothecras, David Balot, William Sigelakis, DB Medical Consulting, WS Marketing, and WS Media. Furthermore, the issues in the PIP Suits are different than the issues in this federal suit. *Id.* The sole issue in all, or virtually all, PIP Suits is whether State Farm owes Physicians Group more than it paid, which will turn on a determination regarding the reasonableness of Physicians Group's charges in individual claims. *Id.*; *see also* State Farm's Response to Defendants' Motion for Protective Order, September 3, 2013, pp. 18-19. To avoid any potential concerns regarding comity among the courts or the potential consequences of overlapping lawsuits such as inconsistent rulings, res judicata or collateral estoppel, State Farm will not seek any relief in this federal suit based upon the Physicians Group claims that are at issue in the pending PIP Suits.[1] Furthermore, to avoid any overlap in the issues that will be litigated in these suits, State Farm also will not litigate in the pending PIP Suits the issues raised in this case regarding services being unlawfully rendered because of violations of patient brokering, kickbacks, self-referrals, and unfair and deceptive acts and practices. Thus, there are and will be no "concurrent" or "parallel" state court cases to support abstention.

---

[1] Accordingly, if defendants' representations in their motion to dismiss that 22 claims on Ex. 1 to State Farm's complaint are claims currently pending in PIP Suits are true, State Farm will not seek any relief for those claims in this action to eliminate any procedural confusion in this case.

### 2. This Court Has Rejected Similar Abstention Arguments Under Near Identical Circumstances

This Court has rejected nearly identical abstention arguments in *Vizcay,* 2011 WL 5870016, at *5 (M.D. Fla. 2011), where Allstate sued Dr. Vizcay and others for fraud, unjust enrichment, negligent misrepresentation, and declaratory relief relating to PIP bills that were allegedly for services that were not lawfully rendered and therefore not compensable under the PIP Statute. *Id. a*t *1. Defendants urged the Court to abstain because some claims in the federal suit were also disputed in pending PIP suits in state courts. *Id.* at *5. This Court refused to abstain, noting that its analysis "begins with the presumption of exercising jurisdiction," and reiterated that "[o]nly the clearest of justifications" may warrant abstention. *Id.* This Court analyzed the six factors for abstention under *Colorado River,* namely: (1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law will be applied; and (6) the adequacy of the state court to protect the parties' rights. But this Court observed that "the balance is 'heavily weighted' in favor of the federal court exercising jurisdiction." *Id.*

Applying those factors, the Court in *Vizcay* declined to abstain, and should do the same here. Although the first factor was inapplicable, the Court concluded that the second factor favored federal jurisdiction because "the federal forum is located in the same state as the state forum." *Id*. This holds here.[2] The third factor also favored federal jurisdiction because: (1) not all defendants were parties to the pending state cases and (2) the remaining defendants had not provided the court sufficient detail to suggest that piecemeal litigation would result. *Id*. The

---

[2] Defendants do not even raise an argument under *Colorado River*, but, as shown here, if they had, it still would not support abstention in this case.

same circumstances apply here because five of the six defendants in this federal suit are not parties to any of the PIP Suits, and due to the complete distinctness of the issues involved in this lawsuit as opposed to the PIP Suits, there will be no piecemeal litigation. In fact, this Court's exercise of jurisdiction would avoid potentially hundreds or thousands of piecemeal litigation matters that may otherwise occur if defendants were to continue to file individual PIP Suits in the County Courts regarding the claims that can otherwise be addressed in this forum in one proceeding at one time. The fourth factor favored federal jurisdiction because defendants had not provided adequate information. Here, defendants could not provide such information because there is no state court that has obtained jurisdiction over any of the claims that will be litigated in this federal forum. The Court held the sixth factor favored federal jurisdiction because "the state court is not hearing the exact same litigation and issues from these parties, and is, therefore, not adequate to resolve the rights of the parties involved in this case." *Id*. This is precisely the situation here. The fifth factor favored abstention because only state law applied, but the Court ruled this was insufficient to warrant abstention.

This Court was correct in exercising jurisdiction in *Vizcay*, and should reach the same result for the same reasons here. As discussed below, other courts have rejected similar abstention arguments in near identical cases. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Schepp*, 616 F. Supp. 2d 340, 345-49 (E.D.N.Y. 2008); *Gov't Employees Ins. Co. v. Uptown Health Care Mgmt., Inc.,* 2013 WL 2138909, at *3-4 (E.D.N.Y. May 16, 2013).

### 3.    The *Thibodaux* and *Burford* Abstention Arguments Are Inapplicable

Defendants argue for abstention under the *Thibodaux* and *Burford* doctrines. (Dkt. 5 at 4-5.) The *Thibodaux* doctrine applies only in narrow circumstances where a federal court is asked to adjudicate challenges to a state action centering on issues "intimately involved" with a State's "sovereign prerogative," *and* the "adjudication of which might be impaired by unsettled

questions of state law." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 717 (1996); *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 27-28 (1959). The Eleventh Circuit has applied the *Thibodaux* doctrine only in the context of land use and eminent domain powers of the State, neither of which is at issue here.[3] Furthermore, because State Farm does not challenge any state action, let alone any state action centering on issues "intimately involved" with "sovereign prerogative" or "unsettled questions of state law," the *Thibodaux* doctrine does not apply.

The *Burford* doctrine is a narrow exception applied only in "exceptional" cases where federal court rulings "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River,* 424 U.S. at 813; *Rindley v. Gallagher,* 929 F.2d 1552, 1556 (11th Cir. 1991). As this Court has noted, the doctrine is aimed at preventing a court from "interfering with the proceedings of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems or substantial public import whose importance transcends the results in the case at bar; and (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *N. Ins. Co. of New York v. David Nelson Const. Co.,* 41 F. Supp. 2d 1332, 1336-37 (M.D. Fla. 1999) (internal citation omitted). But the doctrine "requires more than a desire to avoid disrupting the state regulatory system; (a mere avoidance of disruption rationale) would justify abstention in any instance where a matter was within an administrative body's jurisdiction. *Burford* abstention *requires,* among other considerations, that the regulatory system have as a central purpose

---

[3] *See Fields v. Rockdale Cnty. Georgia*, 785 F.2d 1558, 1561 (11th Cir. 1986)*; Henley v. Herring,* 779 F.2d 1553, 1555 (11th Cir. 1986); *Fountain v. Metro. Atlanta Rapid Transit Auth.,* 678 F.2d 1038, 1039 (11th Cir. 1982).

uniformity to achieve important local interests that would be frustrated by federal court review." *Id.* at 1337-38 (internal citation omitted).

Defendants attempt to implicate these doctrines by asserting that the complaint is "an effort to predetermine the policies and laws enacted by the State of Florida and the Florida Bar with respect to the regulation of medical and legal referral services," and that this Court's rulings would purportedly "disrupt Florida's independent governance over medical and lawyer referral services," and create a "disruption of state efforts to establish a coherent policy with respect to this matter of substantial public policy." (Dkt. 5. at 5-6.) Defendants' argument strains credibility. They do not identify *any* administrative action or specific policies or laws enacted by the State of Florida or the Florida Bar governing medical and legal referral services upon which this Court is being asked to rule, or any state efforts to establish a coherent policy that would be disrupted by this Court's rulings. Nor could they, for the simple reason that there are none.

Instead, defendants represent that the Florida Bar has "approved" the Hotline as a medical and lawyer referral service. (Dkt. 5 at 5.) This is patently wrong. Although the Hotline purportedly provides the Florida Bar with a quarterly list of the lawyers participating in the Hotline under Florida Bar Rule 4-7.22(5),[4] the Florida Bar has never "approved" the Hotline. Indeed, the Florida Bar has recognized that it does not have jurisdiction over the Hotline because its jurisdiction is limited to rules governing lawyers, not referral services that are owned by non-lawyers. (Compl. at Ex. 2, Fl. Bar Report July 2012, p. 17.) Despite its lack of jurisdiction over the Hotline, the Florida Bar *prohibits* Florida lawyers, over whom it does have jurisdiction, from accepting referrals from any for-profit lawyer referral service, such as the Hotline, that either "represents" or "implies to the public that the service is endorsed or approved by the Florida

---

[4] This Rule prohibits lawyers from using any referral services that do not provide such lists.

Bar." Florida Bar Rule 4-7.22(8). Thus, no decision by this Court will disrupt the Florida Bar's governance of legal referral services.[5]

The only issues this Court is being asked to address are whether the defendants are liable to State Farm for submitting claims for services that were not lawfully rendered under the PIP Statute, and whether State Farm is entitled to a declaration that it has no obligation to pay any claims for such services that have not yet been fully paid. Florida's federal courts routinely adjudicate these types of cases, without any interference with state sovereignty or state efforts to develop coherent policies. *See, e.g., Vizcay*, 2011 WL 5870016, at *5 (M.D. Fla. Nov. 22, 2011); *Silver Star Health & Rehab*, 2013 WL 3989107 (11th Cir. Aug. 6, 2013); *Altamonte Springs Diagnostic Imaging, Inc*., 2011 WL 6450769, at *6 (M.D. Fla. Dec. 21, 2011); *Ft. Myers Total Rehab Ctr., Inc*., 657 F. Supp. 2d at 1279; *Schepp*, 616 F. Supp. 2d at 346-49.

> ## 4. The *Wilton/Brillhart* Doctrine Does Not Apply Because The Complaint Does Not Seek Solely Declaratory Relief

The *Wilton/Brillhart* doctrine permits federal courts, under limited circumstances, to decline permissive jurisdiction over a federal action that seeks solely declaratory relief, provided that there is another parallel action "pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). The *Wilton/Brillhart* doctrine has no bearing on this case because this case seeks money damages and other relief through fraud and related claims, in addition to declaratory relief, and there are no "parallel" state court proceedings presenting the same issues between the same parties. *See, e.g., State Farm Mutual Auto. Ins. Co. v. Physicians*

---

[5] Defendants attempt to twist the complaint's reference to the July 2012 Florida Bar Report into a unpled challenge to the Florida Bar Rules. However, references to the report are made to show why and how defendants orchestrated their scheme in response to the Florida Bar investigation. *See* Compl. ¶¶ 8-9, 77-80.

*Injury Care Center, Inc.,* Case No. 6:06-cv-1757 (August 21, 2008), Slip Op. at 7 (*Wilton / Brillhart* doctrine inapplicable because both declaratory and coercive relief was requested in complaint) (*See* Ex. 2); *Mega Life & Health Ins. Co. v. Tordion*, 399 F. Supp. 2d 1366, 1370 (S.D. Fla. 2005) (same); *Vizcay*, 2011 WL 5870016, at *5 (ignoring defendants' *Wilton / Brillhart* arguments and applying solely *Colorado River*, when complaint had both declaratory and coercive claims); *Schepp*, 616 F. Supp. 2d at 347 (rejecting *Wilton/Brillhart* arguments).

Defendants ask this Court instead to apply a "heart of the action" analysis. *See* Dkt. 5 at 6 n.3 (citing *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1238 (S.D. Ala. 2006)). Although the Eleventh Circuit has not specifically addressed the application of the *Wilton/Brillhart* doctrine when there are both coercive and declaratory claims, the vast majority of federal circuits have rejected this "heart of the action" analysis and do not apply the doctrine under these circumstances.[6] The Court should do the same here, as it did in *Mega Life* and *Vizcay. Mega Life,* 399 F. Supp. 2d at 1370; *Vizcay*, 2011 WL 5870016, at *5 (applying solely *Colorado River* analysis, not *Wilton / Brillhart* arguments raised in defendants' briefing).

Even if this Court were to apply the *Wilton / Brillhart* doctrine, the factors would not support abstention. First, there is no particularly strong state interest in hearing the issues raised in the declaratory judgment, as evidenced by several federal decisions addressing similar issues which are referenced above. Second, the federal declaratory judgment would settle the controversy between the parties, and serve a useful purpose in clarifying the legal relations at issue in one forum at one time and avoiding any further piecemeal litigation. Third, the federal declaratory judgment is not being used for "procedural fencing," that is, to provide an arena for a

---

[6] *See New England Ins. Co. v. Barnett,* 561 F.3d 392, 395-96 (5th Cir. 2009); *United Nat. Ins. Co. v. R&D Latex Corp.,* 242 F.3d 1102, 1112 (9th Cir. 2001); *U. S. v. City of Las Cruces,* 289 F.3d 1170, 1181-82 (10th Cir. 2002); *Vill. of Westfield v. Welch's,* 170 F.3d 116, 124 n. 5 (2d Cir. 1999); *R.R. St. & Co., Inc. v. Vulcan Materials Co.,* 569 F.3d 711, 715 (7th Cir. 2009).

race for *res judicata* or to achieve a federal hearing in a case otherwise not removable. Indeed, based upon the distinctness among the claims and the issues in the PIP Suits and the federal suit, there will be no *res judicata* issues and the diversity of the parties and amounts in controversy easily satisfy the federal jurisdictional requirements. Fourth, a federal declaratory judgment will not increase friction between federal and state courts because the claims and the issues in the PIP Suits and the declaratory judgment are distinct. Fifth, there is no alternative remedy that would be better than a federal declaratory judgment, because the only alternative would be to continue to inundate the County Courts with hundreds or thousands of PIP Suits, each of which would have to be separately litigated and decided by multiple courts. Sixth, the State Courts are in no better position than this Court to resolve the underlying factual issues that are important to an informed resolution of the case. Finally, although state law will apply to State Farm's claims, this Court should rule as it did in *Vizcay* that this factor is insufficient to warrant abstention.

**5.** **_Rooker-Feldman_ Abstention Is Inapplicable Because State Farm's Claims Have Not Been The Subject Of A Final State Court Judgment**

The *Rooker-Feldman* doctrine states that a litigant cannot appeal a state court judgment in federal court (except to seek review before the Supreme Court). *Nicholson v. Shafe*, 558 F.3d 1266, 1272 (11th Cir. 2009). Defendants concede, as they must, that the *Rooker-Feldman* doctrine only applies where a state-court judgment has been issued prior to the commencement of the federal action. (Dkt. 5. at 12) Defendants have not identified any final judgments that could invoke this doctrine, much less ones on the issues in this case, other than their vague assertion that there are eight state court cases that have a "partial confession of judgment." There is no suggestion that those purported partial confessions of judgments are final judgments, and they have no relevance to this federal suit in any event as State Farm will not seek relief for

any of the claims that are the subject of those judgments.  Therefore, the *Rooker-Feldman*

doctrine does not apply.

      **B.**      **State Farm's Fraud Claim Meets All Pleading Requirements**

Defendants contend that State Farm's fraud claim does not satisfy Rule 9(b) which

requires that "in all averments of fraud . . . the circumstances constituting the fraud . . . shall be

stated with particularity." Fed. R. Civ. P. 9(b).  (Dkt. 5 at 15-18.)  Specifically, defendants

contend that the complaint fails to plead "precisely what statements were made in what

documents or oral representations or what omissions were made," "the time and place of each

such statement and the person responsible for making same," or even "the content of such

statements and the manner in which they misled the plaintiff."  (Id. at 17.)  This is absurd.

The complaint explains in detail the false statements that were made by the defendants,

namely that the claims and charges submitted to State Farm were for services that were lawfully

rendered and were therefore owed.  (Compl. ¶¶ 1-2, 10, 29, 115-16, 122.)  Indeed, the complaint

identifies more than 106 specific claims in which these false statements were made to State

Farm, along with the State Farm claim number, the date of the accident, the date of the first

fraudulent bill submitted to State Farm, the total amount of fraudulent charges submitted to State

Farm in each claim and the total paid by State Farm for each claim.  (Compl. Ex. 3.)

Furthermore, the complaint explains why these representations were false, namely because the

services were rendered in violation of the Patient Brokering Act, the Patient Self-Referral Act of

1992, the Anti-Kickback Statute, FDUTPA, and chiropractor advertising laws, and thus were not

compensable.  (Compl. ¶¶ 30-48.) *See, e.g., Altamonte Springs Diagnostic Imaging, Inc.,* 2011

WL 6450769, at *4 (in submitting claims and charges, "Defendants represented that the services

were lawfully rendered").[7] It also describes in great detail the important roles played by each defendant over time in the scheme to submit the fraudulent claims and charges to State Farm. (Compl. ¶¶ 19-29, 49-120.) These allegations plainly satisfy all Rule 9(b) requirements.[8]

State Farm does not contend, as argued by defendants, that State Farm "need not give particularity because information of the alleged fraud is "uniquely within the Defendants' control." (Dkt. 5 at 16) Indeed, State Farm has provided excruciating particularity to support its claims, including details regarding the specific claims summarized in Ex. 3 to the complaint. The complaint does allege that information regarding whether the services rendered by Physicians Group to **_many other_** State Farm insureds since 2005 were similarly rendered in violation of the same laws is "uniquely within defendants' control" and that defendants have taken affirmative steps to thwart State Farm's efforts to obtain that information, including refusing to answer deposition questions and intentionally deleting that information from Physicians Group's electronic records system. (Compl. ¶¶ 118-20.) Most recently, defendants have filed a motion for protective order in this case in a continuing effort to prevent State Farm from obtaining that information. (Dkt. 8) In light of the particulars provided by State Farm in the complaint and the specific claims identified in Ex. 3 to the complaint, State Farm's inability to provide particulars regarding these additional claims should be of no import to the present motion. See _Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd._, 96-2547-CIV-T-17C, 1997

---

[7] _See also State Farm Mut. Auto. Ins. Co. v. Kugler,_ 11-80051, 2011 WL 4389915, at *4 (S.D. Fla. Sept. 21, 2011); _AIU Insurance Co. v. Olmecs Medical Supply, Inc.,_ 2005 WL 3710370, at *12 (E.D.N.Y. Feb. 22, 2005); _State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, PC,_ 2008 WL 4146190, at *12 (E.D.N.Y. Sept. 5, 2008); _State Farm Mutual Auto. Ins. Co. v. Makris,_ 2003 WL 924615, at *7 (E.D. Pa. March 4, 2003).

[8] State Farm's detailed allegations are a far cry from the "shotgun approach" rejected in _U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.,_ 755 F. Supp. 1040, 1052-53 (S.D. Ga. 1990), where the plaintiff pled _no_ particularized facts about the defendant, and instead relied solely on a single document obtained from a different party.

WL 728084, at *3 (M.D. Fla. Oct. 23, 1997) (denying motion to dismiss claim for failure to plead with particularity, although plaintiffs did not identify every fraudulent submission).[9]

## C. The Unjust Enrichment Count States A Claim Against All Defendants

Defendants' first argument is that the unjust enrichment claims fail as to all defendants except Physicians Group because they did not receive *direct* payment from State Farm. (Dkt. 5 at 19). This is wrong. Unjust enrichment requires: (1) a benefit conferred on a defendant who has knowledge of that benefit; (2) defendant accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit. *See Kugler*, 2011 WL 4389915. Where defendants act in concert to unjustly obtain benefits, each can be held to have been unjustly enriched by virtue of the benefit derived from the scheme, even if the benefit was not conferred on them *directly*. *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.,* 427 Fed. App'x. 714, 721 (11th Cir. 2011)*; Kugler*, 2011 WL 4389915 at *12. Indeed this Court has rejected this same argument: "the cause of action for unjust enrichment does not require that Defendants individually receive payments directly from Plaintiffs." *Metrahealth Ins. Co.,* 1997 WL 728084, at *8.

Defendants next argue that the unjust enrichment claim fails as to Physicians Group because it allegedly has given adequate consideration for the benefits conferred. (Dkt. 5 at 19). This argument ignores the obvious: Physicians Group was not entitled to *any* payments for services that were not lawfully rendered. *Altamonte Springs Diagnostic Imaging,* 2011 WL 6450769 at *5 (M.D. Fla. 2011); Fla. Stat. § 627.732(11); Fla. Stat. § 627.736(5)(b)(1)(b). As stated recently by the Eleventh Circuit:

---

[9] Defendants also claim that State Farm lacks standing to bring fraud claims based upon services not being lawfully rendered. Federal courts have repeatedly recognized that insurers have standing to bring such claims. *Silver Star Health & Rehab*, 2013 WL 3989107; *Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *6; *Vizcay*, 2011 WL 5870016, at *5.

> Florida courts have long recognized a cause of action for unjust enrichment to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity . . . . If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment.

*Silverstar,* 2013 WL 3989107 at *3 (citations and quotations omitted).

### D. State Farm Has Stated A Cause of Action Under FDUTPA

Defendants first contend that the FDUTPA claim fails because it is based upon violations of statutes and regulations that do not create private causes of action. This is incorrect. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. A FDUTPA violation can be premised on the violation of another law proscribing unfair or deceptive practices, but it can also be premised on the use of unfair or deceptive practice not already proscribed by law. *See Taviere v. Precision Motor Cars, Inc.,* 8:09-CV-467-T-TBM, 2010 WL 557347 (M.D. Fla. 2010). Standing for FDUTPA is governed by Section 501.211, which *creates* "a private action" for persons who have been injured by unfair and/or deceptive trade practices prohibited by FDUTPA. *See Furmanite Am., Inc. v. T.D. Williamson, Inc.,* 506 F. Supp. 2d 1134, 1145 (M.D. Fla. 2007); *Mack v. Bristol-Myers Squibb Co.,* 673 So. 2d 100, 103 (Fla. 1st DCA 1996). Notably, Section 501.211 governs standing under FDUTPA, regardless of whether the FDUTPA claim is premised on a violation of another law. *Mack,* 673 So. 2d at 105. In all instances, the relevant inquiry is whether the plaintiff is a person who has been injured by the unfair and/or deceptive trade practices. *Id.* Thus, a plaintiff has standing under FDUTPA to bring a claim based on the violation of another statute even if that statute does not itself create a private cause of action for the plaintiff. *Id.*

Here, State Farm has standing under FDUTPA because it has been injured by the defendants' unfair and deceptive practices. The complaint alleges in great detail the unfair and deceptive acts and practices in which the defendants, acting in concert, have engaged in over many years to cause State Farm to pay for services that were not lawfully rendered and therefore were not owed. (Dkt. 1, ¶¶ 45-48, 49-120, 134-39) These acts and practices are unfair and deceptive in that they clearly offend established public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and violate statutes, rules, and regulations, including the Patient Brokering Act, the Self-Referral Act, the Anti-Kickback Statute, and regulations governing chiropractic advertising.[10] *See e.g.*, *Altamonte Springs Diagnostic Imaging, Inc.* 2011 WL 6450769, at *5-6 (denying motion to dismiss FDUPTA claim based upon services that were not lawfully rendered because they violated licensure laws).[11]

Relying solely on Fla. Stat. 501.212(4)(a), defendants also argue that FDUTPA does not apply to them because their conduct constitutes insurance fraud which, they contend, is regulated by the Florida Division of Insurance Fraud.[12] (Dkt. 5 at 21-22) This argument has been

---

[10] Nor is State Farm's FDUTPA claim limited solely to violations of the patient brokering or other statutes or regulations. FDUPTA can be violated in one of two ways: "(1) a per se violation premised on the violation of another law proscribing unfair or deceptive practice, and (2) adopting an unfair or deceptive practice." *Taviere*, 2010 WL 557347 (M.D. Fla. 2010). While a FDUTPA claim *may* be predicated on specific violations of statutes, such a violation is not a condition precedent to bringing such a claim. *Compare* Fla. Stat. § 501.204(1) *with* Fla. Stat. § 501.203(3)(c); *see also City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008).

[11] Defendants also claim that only Physicians Group and Kompothecras can be liable under FDUTPA because the statutes and regulations cited in the complaint apply only to health care providers. (Dkt. 5 at 22 n.17.) This fails because, as described above, State Farm is seeking relief under FUDPTA, not direct action under these statutes, and a FDUTPA claim holds all defendants accountable for the unlawful, unfair, and deceptive patient brokering scheme.

[12] Defendants claim the FDUPTA count fails because state agencies have not found violations of the chiropractic advertising laws. (Dkt. 5 at 21). In *Silver Star*, the Eleventh Circuit rejected a similar argument because "courts are traditional forums for determining the lawfulness,

squarely rejected by other courts. For instance, in *Kugler*, 2011 WL 4389915 (S.D. Fla. 2011), in denying defendants' motions to dismiss State Farm's FDUPTA claim based on fraudulent claims, the court rejected the very argument defendants make here, explaining:

> This argument loses sight of State Farm's status as the plaintiff alleging a violation of the FDUTPA against various medical providers and certain lay intermediaries based on the defendants' participation in an allegedly fraudulent billing scheme. These defendants and fraudulent billing activities are not regulated by the Office of Insurance regulation, and therefore, the FDUTPA potentially applies to the conduct described in State Farm's complaint.

2011 WL 4389915, at *8; *see also, Physicians Injury Care Ctr., Inc.*, 427 Fed. Appx. at 722-23.

### E.    State Farm Has Stated A Claim Under The Self-Referral Act

The Self-Referral Act (the "Act") prohibits health care providers, such as defendant Gary Kompothecras and Physicians Group, from submitting any claim for payment for any services rendered pursuant to an unlawful referral, and requires providers who collect any amount so billed to "refund such amount on a timely basis." *See* Fla. Stat. § 456.053(5)(c) and (d).  Where a statute establishes a duty to a class of persons, rather than the public at large, it creates, as a corollary, a private cause of action for that class of persons to ensure that the duty is carried out. *See Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1196 (Fla. 4th DCA 2006) (concluding that Fla. Stat. § 641.513(5) creates a private right of action for health care providers); *Somberg v. Florida Convalescent Centers, Inc.*, 779 So. 2d 667, 668 (Fla. 3d DCA 2001) *approved sub nom. Florida Convalescent Centers v. Somberg*, 840 So. 2d 998 (Fla. 2003) (acknowledging a private right of action under the nursing home statute);  *C.N. Guerriere, M.D., P.A. v. Aetna Health, Inc.*, 807CV1441T27MAP, 2007 WL 3521369, at *2 (M.D. Fla. Nov. 15, 2007).  Without a private cause of action, payors such as State Farm that are entitled to timely refunds from providers such

---

compensability, and enforceability of claims," and the lack of any finding of a licensure violation by a state agency is not dispositive of a FDUPTA claim.  *Silver Star*, 2011 WL 4389915 at *2.

as Kompothecras and Physicians Group would have no means of enforcing obligations created solely for their protection. Such a result would violate the statutory maxim that statutes must be read to effectuate the rights provided in them. *See Smith v. Piezo Tech. & Prof'l Adm'rs*, 427 So. 2d 182, 184 (Fla. 1983) ("it must be assumed that a provision enacted by the legislature is intended to have some useful purpose").[13]

Defendants also argue that the Self-Referral Act claim fails because the statute prohibits self-referrals by health care providers and defendant WS Media is not one within the meaning of the statute. (Dkt. 5 at 23) This argument attempts to elevate form over substance and should be readily dispatched. The complaint provides overwhelming evidence that WS Media was merely a shell company created by defendants to conceal the truth which is that Gary Kompothecras, a health care provider, made the unlawful self-referrals from his Hotline to his own clinics. (Dkt. ¶¶ 4-5, 19, 22-24, 35-38, 53-68, 71-101) Accordingly, State Farm has not sued WS Media for the unlawful self-referrals. (Dkt. 1, ¶¶ 140-44) Instead, State Farm has appropriately sued the two health care providers who were directly responsible for the unlawful self referrals, Kompothecras and Physicians Group, to enforce the rights created by the Self-Referral Act. (*Id.*)

F. The Declaratory Judgment Count Is A Viable Stand-Alone Claim

Defendants first argue that the declaratory judgment count cannot survive if the other counts fail. (Dkt. 5 at 24.) In this count, State Farm seeks a declaration that any pending and future bills from Physicians Group based on the submissions alleged in the complaint are not compensable under the PIP Statute. This seeks different relief than the other coercive claim counts, like fraud and unjust enrichment, and therefore even if State Farm's fraud claim, for

_____

[13] Defendants' case, *Adventist Health Sys./Sunbelt, Inc. v. Agency For Health Care Admin.,* 955 So. 2d 1173, 1176 (Fla. 1st DCA 2007), is inapplicable because the court held that providers *had* standing to seek declaratory relief regarding the Self-Referral Act because they were "substantially affected," and certainly did not conclude that no private right exists under the Act.

instance, were dismissed, it does not follow that the declaratory judgment count must be dismissed. The reason for this is simple: a declaratory judgment claim need only allege that an "actual controversy" exists regarding State Farm's obligations under the PIP Statute, and State Farm need not prove that it was defrauded to obtain a declaratory judgment that it does not owe any payments under the PIP Statute for pending bills. *See Physicians Injury Care Ctr., Inc.*, 427 Fed. Appx. at 721 (holding that plaintiff need not establish common law fraud to prevail on declaratory relief); *Coregis Ins. Co. v. McCollum*, 955 F. Supp. 120, 124 (M.D. Fla. 1997). The same holds true for the unjust enrichment, FDUPTA, and self-referral counts: these are required elements of proof that are not required for declaratory relief. *Id.*

Defendants next argue that the declaratory judgment count fails because State Farm does not "have a direct cause of action under the cited statutes and regulations." This is also wrong.[14] Florida courts have repeatedly upheld count seeking declarations on obligations under the Florida PIP Statute to pay for unlawfully rendered services. *See Silver Star Health & Rehab*, 2013 WL 3989107, at *3; *Vizcay*, 2011 WL 5870016, at *4-5. In fact, in *Vizcay*, this Court held that the plaintiff insurer could seek a declaration of its obligations under the PIP Statute to pay for services rendered in violation of the Florida's Patient Brokering Statute and the Anti-Kickback Statute – the same statutes that defendants contend prevent State Farm from seeking a declaratory judgment. *See Vizcay*, 2011 WL 5870016, at *4-5.

## IV.    CONCLUSION

For all the foregoing reasons, the Motion to Dismiss should be denied.

---

[14] Defendants' authority is unavailing because it addresses only whether a declaratory judgment count can establish otherwise non-existent federal question jurisdiction. (Dkt. 5 at 24 (citing *Household Bank v. JFS Group*, 320 F.3d 1249, 1260 (11th Cir. 2003); *Skelly Oil Co. vs. Phillips Oil Co.* U.S. 667, 672 (1950)). Here, it is undisputed that the court has diversity jurisdiction and State Farm is not relying on its declaratory judgment count to establish jurisdiction.

Dated: September 3, 2013

Respectfully submitted,

By: */s/ Ross O. Silverman*

    ROSS O. SILVERMAN
    ross.silverman@kattenlaw.com
    (*admitted pro hac vice*)
    ERIC T. GORTNER
    eric.gortner@kattenlaw.com
    (*admitted pro hac vice*)
    **KATTEN MUCHIN ROSENMAN LLP**
    525 West Monroe Street
    Chicago, IL 60661-3693
    Telephone:  (312) 902-5200
    Facsimile:   (312) 902-1061

    --and--

    DAVID I. SPECTOR
    Fla. Bar No. 086540
    david.spector@akerman.com
    **AKERMAN SENTERFITT**
    222 Lakeview Avenue, Suite 400
    West Palm Beach, Florida  33401
    Telephone:  (561) 653-5000
    Facsimile:   (561) 659-6313

    Attorneys for Plaintiffs