**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE & CASUALTY COMPANY,

      Plaintiffs,

v.                         CASE NO: 8:13-cv-01932-EAK-TGW

PHYSICIANS GROUP OF SARASOTA, L.L.C.,
PHYSICIANS GROUP, L.L.C., a foreign Delaware
Corporation, GARY KOMPOTHECRAS, DAVID
BALOT, DB MEDICAL CONSULTING, INC.,
W.S. MEDIA, INC., a foreign Delaware corporation,
W.S. MARKETING, INC., and WILLIAM SIGELAKIS,

      Defendants.

PHYSICIANS GROUP, L.L.C., a foreign Delaware
Corporation,

      Counterclaim Plaintiff

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE & CASUALTY COMPANY,

      Counterclaim Defendants

_____/

**ANSWER, AFFIRMATIVE DEFENSES FOR GARY KOMPOTHECRAS AND**
**PHYSICIANS GROUP, LLC AND COUNTERCLAIM BY PHYSICIANS GROUP, LLC**

     Defendants, Gary Kompothecras ("Kompothecras") and Defendant/Counterclaim-

Plaintiff Physicians Group, LLC[1] ("Physicians Group") (for purposes of this Answer these two

---

[1] State Farm has also named Physicians Group of Sarasota, LLC as a named Defendant. However, this entity no longer exists, as it has merged into Physicians Group, LLC (a Defendant and Counterclaim Plaintiff in this action). As such, there is no legal basis to file an Answer separately

parties shall be referred to collectively as "Defendants") responds to the individually numbered paragraphs of the Complaint (Dkt. 1) filed by Plaintiff/Counterclaim Defendant State Farm.

1.      The allegations set forth in Paragraph 1 are denied as the true purpose for State Farm's contrived allegations set forth in the Complaint is to avoid paying Physicians Group over $10 million owed and to create subterfuge to deflect attention away from State Farm's calculated, methodical and purposeful strategy to underpay medical providers and willfully ignore the clear and unambiguous language of Florida's personal injury protection ("PIP") statutes and the numerous state court decisions that have rejected State Farm's persistent schemes to avoid its payment obligations with the overall intention of discouraging medical providers from providing comprehensive medical care to accident victims, to further increase State Farm's profits.  The transparent rationale for this spurious suit is further seen by the fact that it was filed only twenty-one (21) days after the Florida Supreme Court's decision in *GEICO Gen. Ins. Co. v. Virtual Imaging Serv., Inc.*, 2013 WL 3332385 (July 3, 2013), which exponentially increased the amounts unequivocally owed by State Farm to Physicians Group.

2.      State Farm's false characterizations and allegations set forth in Paragraph 2 are denied.

3.      State Farm's false characterizations and allegations set forth in Paragraph 3 are denied.

4.      State Farm's false characterizations and allegations set forth in Paragraph 4 are denied.

5.      State Farm's false characterizations and allegations set forth in Paragraph 5 are denied.

6.      State Farm's false characterizations and allegations set forth in Paragraph 6 are denied.

7.      State Farm's false characterizations and allegations set forth in Paragraph 7 are denied.

8.      State Farm's false characterizations and allegations set forth in Paragraph 8 are denied.

---

on behalf of Physicians Group of Sarasota, LLC as the Answer, Defenses and Counterclaim filed by its successor entity controls.

9.      State Farm's false characterizations and allegations set forth in Paragraph 9 are denied.

10.     State Farm's false characterizations and allegations set forth in Paragraph 10 are denied.

11.     State Farm's false characterizations and allegations set forth in Paragraph 11 are denied.

12.     State Farm's false characterizations and allegations set forth in Paragraph 12 are denied.

13.     State Farm's false characterizations and allegations set forth in Paragraph 13 are denied.

14.     Admitted only that State Farm purports to bring such an action.  Denied that any relief can be granted to State Farm for its Complaint.

## JURISIDICTION AND VENUE

15.     Admitted only that State Farm purports to bring such an action.  Denied that any relief can be granted to State Farm for its Complaint.

16.     Admitted that venue is proper is this jurisdiction.  Denied that any relief can be granted to State Farm for its Complaint.

## PARTIES

17.     Admitted.

18.     Admitted.

19.     Admitted only that Kompothecras is a resident of Florida, is a licensed chiropractor, is an owner of Physicians Group and owns the 1-800-ASK-GARY trademark.  Otherwise denied.

20.     Admitted that Physicians Group of Sarasota, LLC has merged with Physicians Group, LLC.  Otherwise, State Farm's false characterizations and allegations set forth in Paragraph 20 are denied.

21.     Admitted that Physicians Group, LLC is a Delaware limited liability company that was merged with Physicians Group, of Sarasota LLC.  Otherwise, State Farm's false characterizations and allegations set forth in Paragraph 21 are denied.

22.     Paragraph 22 is not directed to the parties filing this Answer.  Notwithstanding, State Farm's false characterizations and allegations set forth in Paragraph 22 are denied.

23.     Paragraph 23 is not directed to the parties filing this Answer.  Notwithstanding, State Farm's false characterizations and allegations set forth in Paragraph 23 are denied.

24.     Paragraph 24 is not directed to the parties filing this Answer.  Notwithstanding, State Farm's false characterizations and allegations set forth in Paragraph 24 are denied.

25.     Paragraph 25 is not directed to the parties filing this Answer.  Notwithstanding, State Farm's false characterizations and allegations set forth in Paragraph 25 are denied.

26.     Paragraph 26 is not directed to the parties filing this Answer.  Notwithstanding, State Farm's false characterizations and allegations set forth in Paragraph 26 are denied.

## ALLEGATIONS COMMON TO ALL COUNTS

27.     The assertions contained in Paragraph 27 are not capable of answer by merely an admission or denial.  However, Defendants admit that State Farm owes Physicians Group millions of dollars for services rendered under the Florida PIP statute that it has made a practice to refuse payment upon; otherwise denied.

28.      The assertions contained in Paragraph 28 are not capable of answer by merely an admission or denial.  However, Defendants admit that State Farm owes Physicians Group millions of dollars for services rendered under the Florida PIP statute that it has made a practice to refuse payment upon; otherwise denied.

29.     Denied.

30.     The allegations in Paragraph 30 call for a legal conclusion; otherwise denied.

31.     The allegations in Paragraph 31 call for a legal conclusion; otherwise denied.

32.     Denied.

33.     The allegations in Paragraph 33 call for a legal conclusion; otherwise denied.

34.     Denied.

35.     The allegations in Paragraph 35 call for a legal conclusion.   State Farm's false characterizations are otherwise denied.

36.     The allegations in Paragraph 36 call for a legal conclusion.   State Farm's false characterizations are otherwise denied.

37.     The allegations in Paragraph 37 call for a legal conclusion.   State Farm's false characterizations are otherwise denied.

38.     Denied.

39.     The allegations in Paragraph 39 call for a legal conclusion.   State Farm's false characterizations are otherwise denied.

40.     The allegations in Paragraph 40 call for a legal conclusion.   State Farm's false characterizations are otherwise denied.

41.     The allegations in Paragraph 41 call for a legal conclusion.   State Farm's false characterizations are otherwise denied.

42.     The allegations in Paragraph 42 call for a legal conclusion.   State Farm's false characterizations are otherwise denied.

43.     Denied.

44.     Denied.

45.     The allegations in Paragraph 45 call for a legal conclusion.   State Farm's false characterizations are otherwise denied.

46.     The allegations in Paragraph 46 call for a legal conclusion.   State Farm's false characterizations are otherwise denied.

47.     The allegations in Paragraph 47 call for a legal conclusion.   State Farm's false characterizations are otherwise denied.

48.     Denied.

49.     The assertions contained in Paragraph 49 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

50.     The assertions contained in Paragraph 49 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

51.     Admitted only that the Kompothecras has a federally registered trademark for 1-800-ASK-GARY.  State Farm's false characterizations are otherwise denied.

52.     Denied.

53.     Denied.

54.     This allegation is not directed at either Defendant filing this Answer; therefore denied.

55.     The assertions contained in Paragraph 55 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

56.     This allegation is not directed at either Defendant filing this Answer; therefore denied.

57.     This allegation is not directed at either Defendant filing this Answer; therefore denied.

58.     The assertions contained in Paragraph 58 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

59.     Denied.

60.     Denied.

61.     Without knowledge as to what David Balot has said or to whom, as State Farm has purposely failed to provide the context for such alleged statements.   State Farm's false characterizations are otherwise denied.

62.     The assertions contained in Paragraph 62 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

63.     Without knowledge as to what David Balot has said or to whom, as State Farm has purposely failed to provide the context for such alleged statements.  State Farm's false characterizations are otherwise denied.

64.     Without knowledge as to what David Balot has said or to whom, as State Farm has purposely failed to provide the context for such alleged statements.  State Farm's false characterizations are otherwise denied.

65.     Without knowledge as to what David Balot has said or to whom, as State Farm has purposely failed to provide the context for such alleged statements.  State Farm's false characterizations are otherwise denied.

66.     Without knowledge as to what David Balot has said or to whom, as State Farm has purposely failed to provide the context for such alleged statements.  State Farm's false characterizations are otherwise denied.

67.     Denied.

68.     Denied.

69.     Admitted only that Exhibit 11 speaks for itself.  State Farm's false characterizations are otherwise denied.

70.     Denied.

71.     The assertions contained in Paragraph 71 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

72.     The assertions contained in Paragraph 72 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

73.     The assertions contained in Paragraph 73 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

74.     Admitted only that Exhibit 12 speaks for itself.  State Farm's false characterizations are otherwise denied.

75.     The assertions contained in Paragraph 75 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

76.     This allegation is not directed at either Defendant filing this Answer; therefore denied.

77.     State Farm's false characterizations in Paragraph 77 of the document attached to its Complaint as Exhibit 2 are denied and Defendants state that the document speaks for itself but is nonetheless wholly contradicted by final rules requested by the Special Committee.

78.     State Farm's false characterizations in Paragraph 78 of the document attached to its Complaint as Exhibit 2 are denied and Defendants state that the document speaks for itself but is nonetheless wholly contradicted by final rules requested by the Special Committee.

79.     State Farm's false characterizations in Paragraph 79 of the document attached to its Complaint as Exhibit 2 are denied and Defendants state that the document speaks for itself but is nonetheless wholly contradicted by final rules requested by the Special Committee.

80.     State Farm's false characterizations in Paragraph 80 of the document attached to its Complaint as Exhibit 2 are denied and Defendants state that the document speaks for itself but is nonetheless wholly contradicted by final rules requested by the Special Committee.

81.     State Farm's false characterizations in Paragraph 81 of the document attached to its Complaint as Exhibit 2 are denied and Defendants state that the document speaks for itself but is nonetheless wholly contradicted by final rules requested by the Special Committee.

82.     State Farm's false characterizations in Paragraph 82 of the false and defamatory documents attached to its Complaint as Exhibits 12 and 15 are denied and Defendants state that the documents otherwise speak themselves.

83.     State Farm's false characterizations in Paragraph 83 of the false and defamatory documents attached to its Complaint are denied and Defendants state that the documents otherwise speak themselves although wholly contradicted by Ms. Smith's sworn testimony.

84.     State Farm's false characterizations in Paragraph 84 of the false and defamatory documents attached to its Complaint are denied and Defendants state that the documents otherwise speak themselves although wholly contradicted by Ms. Smith's sworn testimony.

85.     State Farm's false characterizations in Paragraph 85 of the false and defamatory documents attached to its Complaint are denied and Defendants state that the documents otherwise speak themselves although wholly contradicted by Ms. Smith's sworn testimony.

86.     State Farm's false characterizations in Paragraph 86 of the false and defamatory documents attached to its Complaint are denied and Defendants state that the documents otherwise speak themselves although wholly contradicted by Ms. Smith's sworn testimony.

87.     State Farm's false characterizations in Paragraph 87 of the false and defamatory documents attached to its Complaint are denied and Defendants state that the documents otherwise speak themselves although wholly contradicted by Ms. Smith's sworn testimony.

88.     State Farm's false characterizations in Paragraph 88 of the document attached to its Complaint as Exhibit 2 are denied and Defendants state that the document speaks for itself but is nonetheless wholly contradicted the sworn testimony provided by the Jeffery Lauffer ("Lauffer") the former "chiropractor and MRI technician" described in this paragraph who also attempted to extort Defendants out of $3 million.

89.    Physicians Group admits it filed suit against the extortionist Lauffer and his co-conspirator in the extortion attempt attorney Peter Brudny.

90.    State Farm's false characterizations in Paragraph 89 of the document attached to its Complaint as Exhibit 2 are denied and Defendants state that the document speaks for itself but is nonetheless wholly contradicted by final rules requested by the Special Committee.

91.    State Farm's false characterizations in Paragraph 91 of the document attached to its Complaint as Exhibit 2 are denied and Defendants state that the document speaks for itself but is nonetheless wholly contradicted by final rules requested by the Special Committee.

92.    The assertions contained in Paragraph 92 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

93.    The assertions contained in Paragraph 93 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

94.    Admitted only that Exhibit 10 speaks for itself.  State Farm's false characterizations are otherwise denied.

95.    The assertions contained in Paragraph 95 are not capable of answer by merely an admission or denial.  State Farm's false characterizations are otherwise denied.

96.    This allegation is not directed at either Defendant filing this Answer; therefore denied.

97.    State Farm's false characterizations in Paragraph 97 of the document attached to its Complaint as Exhibit 2 are denied and Defendants state that the document speaks for itself but is nonetheless wholly contradicted by final rules requested by the Special Committee.

98.    State Farm's false characterizations in Paragraph 98 of the document attached to its Complaint as Exhibit 18 are denied and Defendants state that the document speaks for itself.

99.    This allegation is not directed at either Defendant filing this Answer; therefore denied.

100.    This allegation is not directed at either Defendant filing this Answer; therefore denied.

101.    Denied.

102.    State Farm's false characterizations in Paragraph 102 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

103.     State Farm's false characterizations in Paragraph 103 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

104.    State Farm's false characterizations in Paragraph 104 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

105.    State Farm's false characterizations in Paragraph 105 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

106.    State Farm's false characterizations in Paragraph 106 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

107.    State Farm's false characterizations in Paragraph 107 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

108.    State Farm's false characterizations in Paragraph 108 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

109.    State Farm's false characterizations in Paragraph 109 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

110.    State Farm's false characterizations in Paragraph 110 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

111.    State Farm's false characterizations in Paragraph 111 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

112.    State Farm's false characterizations in Paragraph 112 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

113.    State Farm's false characterizations in Paragraph 113 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

114.    State Farm's false characterizations in Paragraph 114 of the document attached to its Complaint as Exhibit 1 are denied and Defendants state that the document speaks for itself.

115.    Admitted that Physicians Group has submitted valid medical bills to State Farm under No-Fault insurance policies that State Farm has wrongfully withheld payment for as part of their pattern of abusive and illegal claims practices; otherwise denied.

116.    Admitted that Physicians Group has submitted valid medical bills to State Farm under No-Fault insurance policies that State Farm has wrongfully withheld payment for as part of their pattern of abusive and illegal claims practices; otherwise denied.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

## CLAIMS FOR RELIEF

### First Cause of Action
### (Common Law Fraud/Fraudulent Misrepresentation)

121.    Defendants incorporate their responses to all preceding paragraphs as if fully restated herein.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied.

127.    Denied.

## Second Cause of Action
### (Unjust Enrichment)

128.    Defendants incorporate their responses to all preceding paragraphs as if fully restated herein.

129.    Without knowledge therefore denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

## Third Cause of Action
### (Violation of the Florida Deceptive and Unfair Trade Practices Act)

134.    Defendants incorporate their responses to all preceding paragraphs as if fully restated herein.

135.    Denied.

136.    Denied.

137.    Denied.

138.    Denied.

139.    Denied.

## Fourth Cause of Action
### (Violation of *Fla. Stat.* § 456.053)

140.    Defendants incorporate their responses to all preceding paragraphs as if fully restated herein.

141.    Admitted only that Exhibit 3 speaks for itself.  State Farm's false characterizations of the same are denied.

142.    Denied.

143.    Denied.

144.    Denied.

## Fifth Cause of Action
### (28 U.S.C. § 2201)

145.    Physicians Group incorporate their responses to all preceding paragraphs as if fully restated herein.

146.    Denied.

147.    Denied.

148.    Denied.

To the extent not otherwise expressly admitted herein, all allegations and characterizations in the Complaint are hereby denied.  Defendants also deny the State Farm is entitled to any of the grounds of relief enumerated in the Complaint or upon any other theory.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

State Farm lacks standing to bring some or all of the claims made.

### THIRD DEFENSE

State Farm's claims are barred by the estoppel doctrine.

### FOURTH DEFENSE

State Farm's claims are barred by the unclean hands doctrine.

### FIFTH DEFENSE

Some or all of State Farm's claims are barred by laches.

## SIXTH DEFENSE

Some or all of State Farm's claims are barred by *res judicata* and/or issue preclusion.

## SEVENTH DEFENSE

Some or all of State Farm's claims are barred by acquiescence or waiver.

## EIGHTH DEFENSE

Some or all of State Farm's claims are barred by ratification.

## NINTH DEFENSE

Some or all of State Farm's claims are barred by the applicable statute of limitations.

## TENTH DEFENSE

Physicians Group and Kompothecras are not personally liable for the actions of other Defendants.

## ELEVENTH DEFENSE

Should State Farm recover damages on its meritless claims, Physicians Group and Kompothecras should have any amount entered against them abated, reduced or eliminated to the extent other third parties' fault caused or contributed to State Farm's purported damages.

## TWELFTH DEFENSE

Should State Farm recover damages on its meritless claims, any amounts paid by Physicians Group should be subject to an offset for payments that State Farm owes to Physicians Group.

## THIRTEENTH DEFENSE

State Farm's claims are barred, in whole or in part, by the fact that Defendants acted in good faith and without fraud, corruption, self-dealing and their decisions are protected by the business judgment rule.

## FOURTEENTH DEFENSE

Any recovery of punitive damages is barred because the imposition of punitive damages for the claims alleged would constitute a denial of due process and is excessive under the U.S. Constitution and the Florida Constitution.

## FIFTEENTH DEFENSE

To the extent State Farm seeks punitive damages for alleged intentional conduct, Defendants' actions with respect to State Farm have in all respects been lawful and do not demonstrate malice or reckless indifference to State Farm's rights.

## SIXTEENTH DEFENSE

State Farm's claims for relief are barred, in whole or in part, by State Farm's unclean hands and inequitable conduct, including but not limited to State Farm's promise to "leave Physicians Group alone" if Physicians Group would stop recommending surgery for accident victims, as such diagnoses increased State Farm's potential payments to accident victims, notwithstanding that the medical diagnosis properly included potential future surgery.

## SEVENTEENTH DEFENSE

State Farms' Third Cause of Action is barred by *Fla. Stat.* § 501.212.

## EIGHTEENTH DEFENSE

Plaintiffs' claims against these answering Defendants are barred due to Defendants' compliance with 42 U.S.C. Sec. 1320a-7b(b)(3)(E) and 42 C.F.R. Sec. 1001.952(f) in the operation of ASK GARY's Medical Referral service.

## NINETEENTH DEFENSE

The Court lacks jurisdiction to adjudicate and determine the applicability or alleged violations of the Rules of any professional licensing board under the Florida Administrative Code.

16

## TWENTIETH DEFENSE

Plaintiffs' claims against these answering Defendants are barred in whole or in part by Plaintiffs' failure to mitigate its damages.

## COUNTERCLAIM FOR INJUNCTIVE RELIEF AND DAMAGES

Counter-Plaintiff, Physicians Group, LLC, ("Physicians Group"), hereby files this Counter-claim for Injunctive Relief and Damages against State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (collectively "State Farm") and in support thereof alleges as follows:

## NATURE OF THE ACTION

1.      Throughout the United States, State Farm spends over $800 million a year flooding television, radio and print media with advertisements attempting to dupe the American public into believing they are the "Good Neighbor." As shown below, however, the truth could not be further from State Farm's well financed public image.  Indeed, State Farm does everything in its power to leverage its policyholder's health care providers to protect the **billions of dollars** in profits the insurance giant makes in any given year.  State Farm's own records show that its illicit claim practices swelled its coffers a staggering $2.5 **billion** in just one year alone; turning $800 million in net income during 2011 into a $3.2 **billion** profit in 2012.  There are few if any legitimate businesses that can generate these type of earnings, let alone increase already astronomical profits four times over in just a year's time.  State Farm is no exception as it has proudly watched its dishonest business practices increase the monetary value of the company and lead to its net worth soaring over the past years to an incredible $65 **billion**.

2.      The perverse profits and disproportionate net worth State Farm has reported is not due to superior services or any factor that could be considered neighborly.  To the contrary, this insurance

17

behemoth has put into place a calculated, methodical and purposeful strategy to cheat medical providers and willfully ignore the clear and unambiguous language of state personal injury protection ("PIP") statutes that are meant to streamline payments.

3.      State Farm effectuates its scheme through a series of practices in it claims adjustment process that violate the law, including improperly manipulating claims software to circumvent input by licensed adjusters and unlawfully allowing non-licensed individuals to make final decisions on submitted claims.  At minimum, the effect of these secretive acts are to deliberately underpay and/or slow pay providers (which only increases State Farm's profits) and force these institutions and individuals into costly litigation simply to get the money rightfully earned, but withheld, for the treatment of State Farm's insureds.  Not even the threat of paying providers' litigation costs and fees has deterred State Farm from this cold cash management scheme which has allowed State Farm to become a profit machine – not from the business of insurance, but rather from its investment strategies.

4.      Not content with squeezing providers' payments to manage its own cash flow, however, State Farm also has a notorious litigious strategy toward any provider, like Physicians Group, that has a history of providing quality service to policy holders, which in turns drives up the costs of settling automobile accidents and cuts into profits as insurance companies like State Farm  end up paying more in settlement to dispose of meritorious suits or ultimately in adverse judgments, which often lead to bad faith suits against State Farm as its own insureds are forced to sue their "Good Neighbor" because State Farm has refused to settle meritorious cases when it had the chance.

5.      In this case, State Farm has not deviated from its well-worn playbook having refused to pay Physicians Group on over $10 million of prescribed treatments and then taking the offense by denying that such amounts are even owed due to contrived claims of insurance fraud.  State Farm

should finally be held fully accountable for its wrongful conduct and forced by this Court to abandon its illegal claims practices, which adversely affects not only Physicians Group but tens of thousands of other medical providers throughout Florida and the United States, as well as State Farm's insureds all of which is a far cry from being a "Good Neighbor."

## JURISIDICTION AND VENUE

6.      This is an action for injunctive relief and damages that exceed Seventy Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees and costs, and for injunctive relief.

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as it is arises from the same facts and transactions related to the allegations of State Farm's Complaint and therefore the claims set forth below are properly before the Court as a pleaded Counter-claim.

8.      Separate and apart from this fact, the Court would have jurisdiction over the claims set forth below pursuant to 28 U.S.C. § 1332(a)(1) as the matter in controversy exceeds the sum or value of $75,000, exclusive of attorneys' fees, interest and costs and is between citizens of different states.

9.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because a substantial part of the events or omission giving rise to the claims occurred within the Middle District of Florida.

## THE PARTIES

10.     State Farm Mutual Automobile Insurance Company is a corporation organized under the laws of Illinois, with its principal place of business in Illinois, and issues automobile insurance policies in Florida.

11.     State Farm Fire & Casualty Company is a corporation organized under the laws of Illinois, with its principal place of business in Illinois, and issues automobile insurance policies in Florida.

12.     Plaintiff Physicians Group, LLC is Delaware Limited Liability Company with its principle place of business in Sarasota, Florida.  The former Physicians Group of Sarasota, LLC has been merged into Physicians Group, LLC.

13.     All conditions precedent to maintaining this suit have been met or otherwise waived.

14.     Physicians Group has retained the undersigned attorneys and is responsible for the reasonable fees associated with the legal services rendered in this action.

## FACTUAL BACKGROUND

15.     Physicians Group is a multidisciplinary healthcare practice that operates clinics servicing the health care needs of victims of automobile accidents.

16.     Physicians Group is also Joint Commission accredited.

17.     The Joint Commission states that it is "an independent, not-for-profit organization," which "accredits and certifies more than 20,000 health care organizations and programs in the United States." Accreditation by Joint Commission "certification is recognized nationwide as a symbol of quality that reflects an organization's commitment to meeting certain performance standards." This accreditation means that Physicians Group has undergone rigorous reviews of its practices and clinics to achieve "National Quality Approval," which is widely considered the "Gold Seal" in the healthcare industry.

18.     State Farm is one of the insurance companies insuring patients seen by Physicians Group and has long taken issue with Physicians Group's outstanding service to its clients, including the use of Magnetic Resonance Imaging ("MRIs") as a diagnostic tool to diagnose soft tissue injuries.  State Farm, like other insurance carriers looking out for its bottom line instead of the welfare of its insureds, believes Physicians Group's cutting edge diagnostic tools and effective

treatments increase the cost of its settlements in accident cases, which in turn affects State Farm's insatiable appetite to maximize corporate profits.

19.     As a result, State Farm has made it a practice to short change Physicians Group on rightfully earned payments for medically necessary treatments, thereby forcing Physicians Group to incur staggering legal fees while bringing suit to collect monies owed for services provided to thousands of individual patients.

20.     The result of State Farm's purposeful unlawful payment practice has been to willfully circumvent the requirements of the Florida PIP statute in an effort to deprive Physicians Group (and other providers) of millions of dollars in an effort to force the closure of facilities costing State Farm too much profit due to the use of MRIs and commitment to quality care.

## REQUIREMENTS UNDER THE FLORIDA PIP STAUTE

21.     Effective January 1, 2008, *Florida Statute* §§ 627.736 (5)(a)1 and (a)2 of the PIP statute requires State Farm to choose between two different methods for calculating the amount of PIP benefits payable.

22.     The first option, under § 627.736(5)(a)1, establishes a reasonable amount methodology. The second option, subsections (5)(a)2-5, establishes a fee schedule method that allows an insurer to limit its payments to Florida PIP medical providers to 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B.

23.     In pertinent part, *Florida Statute* § 627.736 states:

> **(5)  CHARGES FOR TREATMENT OF INJURED PERSONS.--**
>
> **(a)1**.  Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only **a reasonable amount** pursuant to this section for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such

person or institution lawfully rendering such treatment, if the insured receiving such treatment or his or her guardian has countersigned the properly completed invoice, bill, or claim form approved by the office upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian. In no event, however, may such a charge be in excess of the amount the person or institution customarily charges for like services or supplies. With respect to a determination of whether a charge for a particular service, treatment, or otherwise is **reasonable**, consideration may be given to evidence of **usual and customary charges** and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the **reasonableness** of the reimbursement for the service, treatment, or supply.

**2   The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:**

f.   **For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B**. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

§627.736(5) (emphasis added).

24.   Unless a clear and unambiguous election was made in its policies limiting payments using fee schedules, State Farm is required to pay all reasonable charges submitted by Physicians Group.

25.   In this case, the policies implicated, on information and belief, state that State Farm shall pay "80% of all reasonable expenses . . ."   Thus, since State Farm has not made a clear and

unambiguous election to pay based on a fee schedule approved by Florida statute, it is obligated to pay Physicians Group reasonable charges submitted under the policy of insurance.

26.     The key inquiry is not whether State Farm paid a reasonable amount, but rather whether the amounts charged by the Physicians Group were reasonable.

27.     *Florida Statute* § 627.736(5)(a)2f sets the floor with respect to minimum reimbursement for reasonable charges by stating that such an amount "may not be less than [200% of] the allowable amount under the participating physicians schedule of Medicare Part B for 2007. . ."

28.     Notwithstanding the clear statutory language discussed above, State Farm improperly chose to reimburse Physicians Group for billed charges under §627.736(5)(a)(2), at 200% of the Medicare Part B Fee Schedule, even though it failed to make a clear and unambiguous election to do so within the relevant policies at issue from approximately January 1, 2008 through at least through June 2012.

29.     State Farm's untenable position was specifically rejected by Florida Supreme Court in *GEICO Gen. Ins. Co. v. Virtual Imaging Serv., Inc*., 2013 WL 3332385 (July 3, 2013), which held that an insurer was:

> "permitted to reimburse Plaintiff at 200% of the Medicare Part B
> Fee Schedule for the CPT codes at issue only if Defendant makes a
> clear and unambiguous election within its policy to use that payment
> scheme (i.e. "safe harbor").

30.     Having lost at every level of the Florida judicial system, including the Florida Supreme Court, State Farm has now turned to its trusted and repeatedly used allegation that a provider it owes millions of dollars to has purportedly committed fraud.   Indeed, State Farm filed its Complaint in this action just *twenty-one (21) days* after the decision in *Virtual Imaging* confirmed that it owed Physicians Group millions of dollars in unpaid claims.  Such a tactical gambit is just part of State Farm's usual playbook and is done to simply create subterfuge in an effort to avoid

paying Physicians Group millions of dollars rightfully owed but denied under State Farm's illegal claims practices.

## STATE FARM'S MISUSE OF CLAIMS SOFTWARE TO AVOID PROPER PAYMENT

31.     State Farm utilizes "Decision Point©" software, created by Mitchell International, Inc. ("Mitchell"), for use in its claims adjusting.  While the "Decision Point" software is widely used in the industry, State Farm has willfully misused its functionality as part of its scheme to unlawfully depress reimbursements for medical treatment(s) provided to State Farm insureds.

32.     Specifically, State Farm has unlawfully incorporated the Medicare Fee Schedule and, under certain circumstances, the Florida Worker's Compensation Statute, Outpatient Prospective Payment System (OPPS) fee schedule and even the Medicare National Correct Coding Initiative ("NCCI") edits; none of which provide an appropriate basis for claims adjustments under the Florida PIP statute and/or the State Farm policies at issue.

33.     State Farm's intentional misinterpretation of its insurance policies, its fraudulent application of *Florida Statute* § 627.736(5)(a)(2)(f) and the illegitimate use of what it calls "business rules" (referred to as "Sentry Rules" by Mitchell), provides an abusive and illegal situation in its claims handling.

34.     In this fashion, State Farm has used Mitchell's Decision Point software to systematically defraud nearly all Florida medical providers that treat patients injured in automobile accidents, including Physicians Group, from reasonable reimbursements and has forced Physicians Group (and countless other providers) into costly and drawn out PIP litigation merely to avoid properly paying statutorily required amounts for no other reason than rank profit.  The financial benefit to State Farm's delay strategy is simple: in this period of low interest rates, State Farm realizes that it can invest the millions that it withholds from health care providers at a much higher return than

the interest and attorneys' fees it eventually may be required to pay doctors for providing care to the injured, including State Farm policy holders.  In the past few years, this strategy has created billions of dollars in additional wealth for State Farm, making its litigation and advertising expenses nominal by comparison.  State Farm's use of the Decision Point software to improperly apply the Medicare Fee Schedule Part B (and/or other inapplicable standards set forth in Paragraph 32 above) is in contravention of State Farm's standard automobile insurance contract and Florida law.

35.     The Decision Point software has different functions that an insurance carrier can activate to reimburse claims under different pre-selected parameters.

36.     Representatives from Mitchell have testified that in early 2008, State Farm "activated" the 200 percent of Medicare Part B function in Decision Point.  As a result of State Farm activating this function, Florida PIP claims are automatically re-priced to reimburse at 200 percent of Medicare Part B without any actual adjustment by a licensed insurance adjuster in violation of Florida law.

37.     On information and belief, from 2008 until 2013, State Farm used 200 percent of Medicare Part B in determining the reimbursement rates for Florida claims (including those claims presented by Physicians Group) without properly amending its insurance policies to clearly and unambiguously elect to limit its payments to Florida PIP medical providers as required under *Florida Statute* § 627.736(5)(a)(2).

38.     In wanton disregard for Florida law, State Farm forced Florida medical providers, including Physicians Group, to file thousands of PIP suits when reimbursement should have been being made at a reasonable rate under *Florida Statute* § 627.736(5)(a)(1).

39.     State Farm's pattern and practice of unlawful claims handling is in violation of state law and its own policy language.

40.     Indeed, State Farm's policy of insurance states in relevant part:

**What We Pay**

We will pay in accordance with the No-Fault Act for bodily injury to an insured, caused by an accident resulting from the ownership, maintenance or use of a motor vehicle.

***"80% of all reasonable expenses incurred for:***

a.      Medically necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services. . . . .

b.      Necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing, in accordance with his or her religious beliefs. To determine whether a charge is reasonable we may consider usual and customary charges and payments accepted by the provider, reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment or supply.

We will not pay any charge that the No-Fault Act does not require us to pay, or the amount that exceeds the amount the No-Fault Act allows to be charged.

41.     The above quoted policy language is an unequivocal election to pay submitted invoices pursuant to the mandates of *Florida Statute* § 627.736(5)(a)1, which requires State Farm to pay 80 percent of all "reasonable charges" billed by its insured's medical providers.

42.     Notwithstanding, instead of engaging in this analysis and making that determination when the claim was processed, State Farm set its reimbursements according to the provisions of *Florida Statute* § 627.736(5)(a)2f.  State Farm systematically reimbursed medical expenses at 200 percent

of Medicare Part B but made no determination as to whether the charge billed was reasonable or without any consideration of the charge(s) submitted.

43.     State Farm has reduced and "re-priced" these billed medical services to automatically reimburse at 200% of Medicare Part B in violation of well settled law.

44.     Sworn testimony in other cases has established that in 2008 State Farm instructed Mitchell to re-price all medical expenses pursuant to 200% of Medicare Part B.

45.     One of State Farm's own Claims Section Manager confirmed in sworn testimony that the insurance company made the unilateral decision to pay PIP invoices submitted by medical providers, like Physicians Group, pursuant to the Medicare Fee Schedule instead upon the required reasonable methodology set forth under Florida law.

46.     Tellingly, State Farm's applied this aberrant methodology no matter what provider submitted the invoices sought to be reimbursed under PIP and without first ever conducting any investigation into the reasonableness of Physicians Group's (or any other's providers) charges.

47.     Thus, State Farm implemented a process whereby Mitchell would "re-price" any of the insurer's Florida PIP claims to be reimbursed at 200 percent of Medicare Part B without any consideration of the "reasonableness" of any charge(s), in violation of State Farm's own policy language and in violation of Florida Statute 627.736(5)(a)1.

48.     State Farm's system was so rote and absolute that it implemented a claims handling process appropriately named "auto pay" that re-prices received bills and pays at 80% of 200% of relevant fee schedules under Medicare Part B without the involvement of any human being, let alone a licensed adjuster.

49.     This practice has placed all of State Farm's adjusters who handle these claims in the untenable position of violating their Adjuster Code of Ethics by precluding adjuster investigation

into claims through the use of the "autopay" feature, which is based on its unlawful application of illegitimate business rules that contravene both its own insurance policies and Florida law

50.     State Farm's illegal claims practices and payment processes have harmed medical providers throughout Florida (and the United States) and has specifically caused damage to Physicians Group.

## STATE FARM'S IMPROPER PAYMENT OF CONSULTATION SERVICES

51.     Not only does State Farm improperly circumvent the use of licensed adjusters by preordaining the amounts that will be paid regardless of reasonableness standard prescribed by Florida law, but it also applies wholly inapplicable fee schedules to PIP billing.

52.     This is illustrated by State Farm's refusal to properly reimburse Physicians Group for consultation services at the customary 80% of 200% of the amount allowable under the participating physicians' fee schedule for Medicare Part B as required by *Florida Statute* § 627.736(5)(a)(2)(f).

53.     Effective January 1, 2010, the Current Procedural Terminology (CPT) consultation codes (ranges 99241-99245 and 99251-99255) were no longer recognized for Medicare Part B payment.

54.     Although the U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Services, have eliminated the use of the CPT consultation codes for payment of evaluation and management services furnished to Medicare fee-for-service patients, the billed evaluation and management services themselves continue to be covered services under the PIP statute, if they are medically reasonable and necessary.

55.     Rather than paying Physicians Group (and other providers) for consultation services at the appropriate 80% of 200% of the amount allowable under the participating physicians' fee schedule

for Medicare Part B, State Farm improperly reduced these payments to 80% of the amount allowed for such codes under the workers' compensation fee schedule in violation of Florida law.

56.    State Farm's illegal claims practices and payment processes in failing to pay consultation code charges in accordance with Florida law have harmed medical providers throughout Florida and has specifically caused damage to Physicians Group.

## STATE FARM'S IMPROPER USE OF OPPS FEE SCHEDULE AND NCCI EDITS

57.    State Farm has also engaged in an illegal and concerted practice to reduce payments to Florida PIP medical providers, including Physicians Group, by improperly substituting the federal OPPS fee schedule and NCCI Edits for the clear mandates of Florida's PIP statute.

58.    In unilaterally reducing the costs paid for MRI's charged by Physicians Group, State Farm has taken the erroneous position that it is entitled to pay for nonemergency, nonhospital MRI services provided to PIP insureds based on the reduced rate set forth in the Medicare's Hospital Outpatient Prospective Payment System ("OPPS") fee schedule.

59.    Notwithstanding State Farm's unsupportable practice, *Florida Statutes* §§ 627.736(5)(a)(2)(f), (5)(a)(3), and (5)(a)(4) do not authorize a PIP insurer to utilize any restrictions or limitations applicable to the Medicare program when determining the amounts due for MRI services.

60.    Conversely, *Florida Statutes* §§ 627.736 (5)(a)(2)(f) and (5)(a)(3) unambiguously refer to the participating physicians schedule of Medicare Part B as the schedule upon which to rely.

61.    The fee schedule amount payable by Medicare under OPPS is a distinct and separate component of Medicare Part B and was wrongfully applied by State Farm to reduce providers' charges, including those submitted by Physicians Group.

62.     Likewise, State Farm has improperly reduced providers' submitted charges, including those submissions by Physicians Group, by inappropriately superimposing the requirements of NCCI Edits onto the Florida PIP statute.

63.     The National Correct Coding Initiative (NCCI) is a program developed by the Centers for Medicare and Medicaid Services (CMS) to promote national correct coding methodologies and to control improper coding that leads to inappropriate payment of *Medicare Part B claims*. This program developed what is known as the NCCI Comprehensive Edits Database ("NCCI Edits")

64.     However, the NCCI Edits do not apply to bills submitted under PIP coverage, which is instead governed by the mandates of *Florida Statute* Chapter 627.

65.     Nevertheless, State Farm has an established course of conduct to refuse payment and/or reduce payment for multiple services performed in the same day that under the NCCI edits are not allowed to be billed on the same day.

66.     In this regard, State Farm has essentially incorporated the NCCI edits into the Florida PIP statute by unilateral corporate fiat.

67.     However, the claims at issue under *Florida Statute* § 627.736 are not Medicare claims part of a government run program but are instead a result of private insurance. Therefore, the administering of Medicare and its handling of claims may not be superimposed on Florida's No-Fault law (PIP) and State Farm has wrongly withheld full appropriate payment from medical providers throughout the state, including Physicians Group.

68.     State Farm's illegal claims practices and payment processes in wrongfully applying NCCI edits and the OPPS fee schedule have harmed medical providers throughout Florida and has specifically caused damage to Physicians Group.

## COUNT I
**Fraud**

69.     Physicians Group realleges the allegations of paragraphs 1 through 68 as if set forth fully herein.

70.     In each of the claims set forth in Exhibit A and Exhibit B attached hereto and incorporated herein, State Farm intentionally and knowingly made false representation and/or fraudulent omissions of material fact to Physicians Group by indicating that payments for services rendered under the Florida PIP statute would be paid pursuant to the mandates of Chapter 627, when in fact, State Farm had an undisclosed illicit business practice to systematically underpay such submissions by medical providers.

71.     At the time the representations were made to or omissions withheld from Physicians Group, State Farm knew that they were false and fraudulent.

72.     State Farm made the above-described representations to induce Physicians Group to rely on such representations in the treatment of State Farm's policy holders.  Moreover, State Farm has misled Florida insurance consumers into a false sense that State Farm would legally pay for its insureds health care costs arising from auto accidents.  State Farm has engaged in a methodical, relentless campaign to create an image much different from the Good Neighbor with health care providers, whom State Farm bullies, threatens and tries to litigate out of business if they persist in providing quality medical care that State Farm fears will dilute its profits.

73.     Physicians Group, not realizing State Farm's ultimate goal, reasonably relied on State Farm's representations/omissions that claims submitted would be paid in accordance with the mandates under the Florida PIP statute, when in fact they were not and State Farm was engaging in a systematic but unknown fraud.

74.     As a direct and proximate result of the above-described misrepresentations, Physicians Group has been damaged in an amount well in excess of $75,000, exclusive of interests and costs.

**WHEREFORE**, Physicians Group demands judgment for compensatory damages and punitive damages, together with interest and costs and any other relief the Court deems just and appropriate.

<u>**COUNT II**</u>
**Breach of Contract**

75.     Physicians Group realleges the allegations of paragraphs 1 through 68 as if set forth fully herein.

76.     In its Complaint, State Farm seeks reimbursement for amounts paid on 106 claims, which are set forth in Exhibit A to State Farm's Complaint.

77.     In true classic State Farm fashion, the insurance giant has attempted to shift the issues of its violation of Florida law concerning its own underpayment on these 106 claims to manufactured allegations of fraud allegedly committed by Physicians Group.[2]

78.     Not only has Physicians Group not committed any fraud, but State Farm has always underpaid the amounts owed on these 106 cases, the policies and payments for which are set forth in Exhibit A attached hereto.

79.     State Farm's underpayment is strictly in-line with its standard illicit business practices set forth above in Paragraphs 31-69 above and was a premeditated attempt to short Physicians Group.

---

[2] State Farm has improperly included on its list of 106 disputed claims, some which are already in suit in state court.  Physicians Group contends that no action can be taken on such claims and that all issues concerning the same must be litigated in the pending state court litigation. Accordingly, none of the counts set forth in this counterclaim seek relief regarding any claim set forth in Exhibit A, which is already in suit filed in Florida state court.

80.     State Farm issued insurance contracts covering each of the claims set forth in Exhibit A, which provided Personal Injury Protection Benefits, medical and extended medical expense coverage to the named insureds.

81.     State Farm was required by law to comply with Sections 627.730 – 627.7405, *Florida Statutes* with respect to payments of the claims at issue.

82.     Physicians Group does not have a copy of the policies to attach, but State Farm wrote the policies at issue, is in possession of the original policy, is intimately familiar with the terms, conditions, and language of the policies, and is not prejudiced in any way by Physicians Group not having attached the policies to this counterclaim.

83.     Each of the claims set forth in Exhibit A involve State Farm policy holders who sustained bodily injuries arising out of an accident involving the operation, maintenance or use of a motor vehicle in the State of Florida.

84.     The subject policies of insurance were in full force during all relevant times and State Farm had a duty to pay for personal injury protection benefits as a result of the subject motor vehicle accident arising out of the claims set forth in Exhibit A.

85.     As a result of injuries sustained in the covered accidents, State Farm policy holders incurred reasonable expenses for medically necessary medical, rehabilitative, nursing, and remedial care and related services and supplies in the amount of set forth in Exhibit A, which were provided by Physicians Group.

86.     Each of the policy holders on the claims set forth in Exhibit A actually or equitably assigned PIP benefits to Physicians Group by written document or by asking Physicians Group to render necessary care and to bill State Farm directly and to agree to be paid directly by State Farm, which

amounts to Physicians Group holding the unqualified and irrevocable right to the no-fault benefits at issue.

87.     The policy holders at issue and Physicians Group have performed all conditions precedent necessary to entitle Physicians Group as assignee, of the policy holders, to recover benefits as provided by the insurance contracts at issue in Exhibit A, including but not limited to, notifying State Farm in writing of a covered loss and of the amount of that covered loss, and filing a written notice of intent to initiate litigation pursuant to *Florida Statute* §627.736.

88.     State Farm breached the subject insurance contracts in that it wrongfully denied, failed to fully pay or failed to timely pay for all Personal Injury Protection Benefits and Medical Expense Benefits as promised by State Farm in the insurance contracts at issue and as required by the law that was in effect at the time the subject insurance policies were executed.

89.     State Farm breached the subject insurance contracts in that it failed to fully pay and make timely payment of Personal Injury Protection Benefits and Medical Expense Benefits to Physicians Group for care and treatment rendered on the claims set forth in Exhibit A.

90.     Physicians Group submitted Health Insurance Claim Forms along with all medical records to State Farm, which failed to make total payment to Physicians Group for Personal Injury Protection Benefits and Medical Expense Benefits.

91.     State Farm failed to provide a truthful explanation of benefits to Physicians Group specifying each item that State Farm had reduced, omitted, or declined to pay.

92.     State Farm failed to obtain a valid report from a physician or physicians licensed under Florida law as the physician or physicians providing the treatment described above stating that: the treated injuries were not related to the accident at issue; or that the medical treatment provided was medically unnecessary; or that Physicians Group charges for said medical treatment were

unreasonable.  Indeed, State Farm fails to make any such allegations in its Complaint and must therefore be deemed to have waived such assertions.

93.     State Farm's breach of contract by failing to make timely payments of the Personal Injury Protection benefits and Medical Expense Benefits and other required payments has caused Physicians Group to sustain damages and required it to retain the undersigned law firm to enforce State Farm's obligations under the insurance contracts at issue set forth in Exhibit A.

94.     Physicians Group is entitled to an award of reasonable attorneys' fees and costs pursuant to *Florida Statues*, Section 627.428 and common law.

**WHEREFORE**, Physicians Group demands judgment for personal injury protection benefits, extended medical payment benefits, together with pre-judgment interest thereon, all interest on any past benefits not timely paid, costs and attorneys' fees and all other relief the Court deems just and appropriate.

## COUNT III
### Breach of Contract

95.     Physicians Group realleges the allegations of paragraphs 1 through 68 as if set forth fully herein.

96.     Attached hereto as Exhibit B is a list of claims on which pre-suit demand has been made but for which State Farm has wrongfully denied payment.

97.     None of the State Farm policy holders at issue in the claims set forth in Exhibit B was referred to Physicians Group by or through the ASK GARY medical and legal referral service.  As such, State Farm cannot claim that any of the claims set forth in Exhibit B have not been paid based on the allegations made in its underlying Complaint.

98.     State Farm's underpayment and/or nonpayment of the claims set forth in Exhibit B are strictly in-line with its standard illicit business practices set forth above in Paragraphs 31-69 above and were a premeditated attempt to short Physicians Group.

99.     State Farm issued insurance contracts covering each of the claims set forth in Exhibit B, which provided Personal Injury Protection Benefits, medical and extended medical expense coverage to the named insureds.

100.    State Farm was required by law to comply with Sections 627.730 – 627.7405, *Florida Statutes* with respect to payments of the claims at issue.

101.    Physicians Group does not have a copy of the policies to attach, but State Farm wrote the policies at issue, is in possession of the original policy, is intimately familiar with the terms, conditions, and language of the policies, and is not prejudiced in any way by Physicians Group not having attached the policies to this counterclaim.

102.    Each of the claims set forth in Exhibit B involve State Farm policy holders who sustained bodily injuries arising out of an accident involving the operation, maintenance or use of a motor vehicle in the State of Florida.

103.    The subject policies of insurance were in full force during all relevant times and State Farm had a duty to pay for personal injury protection benefits as a result of the subject motor vehicle accident arising out of the claims set forth in Exhibit B.

104.    As a result of injuries sustained in the covered accidents, State Farm policy holders incurred reasonable expenses for medically necessary medical, rehabilitative, nursing, and remedial care and related services and supplies in the amount of set forth in Exhibit A, which were provided by Physicians Group.

105.    Each of the policy holders on the claims set forth in Exhibit B actually or equitably assigned PIP benefits to Physicians Group by written document or by asking Physicians Group to render necessary care and to bill State Farm directly and to agree to be paid directly by State Farm, which amounts to Physicians Group holding the unqualified and irrevocable right to the no-fault benefits at issue.

106.    The policy holders at issue and Physicians Group have performed all conditions precedent necessary to entitle Physicians Group as assignee, of the policy holders, to recover benefits as provided by the insurance contracts at issue in Exhibit B, including but not limited to, notifying State Farm in writing of a covered loss and of the amount of that covered loss, and filing a written notice of intent to initiate litigation pursuant to *Florida Statute* §627.736.

107.    State Farm breached the subject insurance contracts in that it wrongfully denied, failed to fully pay or failed to timely pay for all Personal Injury Protection Benefits and Medical Expense Benefits as promised by State Farm in the insurance contracts at issue and as required by the law that was in effect at the time the subject insurance policies were executed.

108.    State Farm breached the subject insurance contracts in that it failed to fully pay and make timely payment of Personal Injury Protection Benefits and Medical Expense Benefits to Physicians Group for care and treatment rendered on the claims set forth in Exhibit B.

109.    Physicians Group submitted Health Insurance Claim Forms along with all medical records to State Farm, which failed to make total payment to Physicians Group for Personal Injury Protection Benefits and Medical Expense Benefits.

110.    State Farm failed to provide a truthful explanation of benefits to Physicians Group specifying each item that State Farm had reduced, omitted, or declined to pay.

111.     State Farm failed to obtain a valid report from a physician or physicians licensed under Florida law as the physician or physicians providing the treatment described above stating that: the treated injuries were not related to the accident at issue; or that the medical treatment provided was medically unnecessary; or that Physicians Group charges for said medical treatment were unreasonable.  Indeed, State Farm fails to make any such allegations in its Complaint and must therefore be deemed to have waived such assertions.

112.     State Farm's breach of contract by failing to make timely payments of the Personal Injury Protection benefits and Medical Expense Benefits and other required payments has caused Physicians Group to sustain damages and required it to retain the undersigned law firm to enforce State Farm's obligations under the insurance contracts at issue set forth in Exhibit B.

113.     Physicians Group is entitled to an award of reasonable attorneys' fees and costs pursuant to *Florida Statues*, Section 627.428 and common law.

**WHEREFORE**, Physicians Group demands judgment for personal injury protection benefits, extended medical payment benefits, together with pre-judgment interest thereon, all interest on any past benefits not timely paid, costs and attorneys' fees and all other relief the Court deems just and appropriate.

**<u>COUNT IV</u>**
**Declaratory Judgment Under 28 U.S.C § 2201**

114.     Physicians Group realleges the allegations of paragraphs 1 through 68 as if set forth fully herein.

115.     This is a cause of action under the Federal Declaratory Judgment Act.

116.     There is an actual case and controversy between Physicians Group and State Farm, as to all claims and charges submitted by Physicians Group to  State Farm for  No-Fault Benefits for

which State Farm has wrongfully underpaid and/or refused payment based on the illicit claims practices set forth in Paragraphs 31-69 above.

117.    There is a bona fide, present, and practical need for a declaration as to whether State Farm's claims practices and payment policies are in violation of *Florida Statutes* Chapter 626 and/or Chapter 627.

118.    Accordingly, Physicians Group seeks a judgment declaring that State Farm's claims practices and payment policies are in violation of *Florida Statutes* §§ 627.736, 626.878, 626.9541 and/or the Florida Administrative Code 69B-220.201.

119.    Physicians Group also requests that this honorable Court issue an injunction prohibiting State Farm from further illicit use of the claims practices and payment policies set forth herein, which are in violation of *Florida Statutes* §§ 627.736, 626.878, 626.9541 and/or the Florida Administrative Code 69B-220.201.

## <u>NOTICE OF INTENT TO SEEK ATTORNEYS' FEES</u>

Physicians Group hereby give notice of their intent to seek attorneys' fees under all applicable statutory provisions.

## <u>JURY DEMAND</u>

Physicians Group hereby make demand for a trial by jury on all claims so triable.

**[signatures appear on next page]**

Respectfully submitted,

*/s/ William P. Cassidy, Jr.*
JOHN E. JOHNSON
Florida Bar No.  593000
Primary:  jjohnson@jclaw.com
Secondary:  swalker@jclaw.com; mpatel@jclaw.com
WILLIAM P. CASSIDY, JR.
Florida Bar No.  332630
Primary:  wcassidy@jclaw.com
Secondary: bwalker@jclaw.com; leller@jclaw.com
NICOLE DEESE NEWLON
Florida Bar No.  0832391
Primary:  nnewlon@jclaw.com
Secondary:  swalker@jclaw.com; mpatel@jclaw.com
**JOHNSON & CASSIDY, P.A.**
324 S. Hyde Park Avenue, Suite 325
Tampa, Florida  33606
Telephone:        (813) 699-4859
Facsimile:        (813) 235-0462
*Attorneys for Defendants, Physicians Group of*
*Sarasota, LLC, Physicians Group, LLC, and Gary*
*Kompothecras*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of April, 2014, this document was electronically

filed with the Clerk of this Court by using the CM/ECF system, which will serve a copy on all

counsel of record.

*/s/ William P. Cassidy, Jr.*
Attorney