UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE & CASUALTY COMPANY,

Plaintiffs

v.

PHYSICIANS GROUP OF SARASOTA,
L.L.C., PHYSICIANS GROUP, L.L.C.,
GARY KOMPOTHECRAS, DAVID
BALOT, DB MEDICAL CONSULTING,
INC., W.S. MEDIA, INC., W.S.
MARKETING, INC. and WILLIAM
SIGELAKIS,

Case No:  8:13-cv-01932-EAK-TGW

Defendants.  /

## STATE FARM'S RESPONSE IN OPPOSITION TO PHYSICIANS GROUP'S MOTION TO QUASH

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   PROCEDURAL BACKGROUND.............................................................3

    A.    State Farm's Complaint Alleges A Fraud Scheme That Includes Unlawful Kickbacks, Patient Brokering, And The Creation Of False Shell Companies To Hide The True Ownership And Control Of The Hotline. ..............3

    B.    State Farm's Complaint Also Alleges That Defendants' Fraud Scheme Relies On *Quid Pro Quo* Relationships With Personal Injury Attorneys...............4

    C.    The Court Denies Defendants' Motions To Dismiss................................4

    D.    State Farm Issues Subpoenas That Narrowly Target The Critically Relevant Issues Regarding The Financial Relationships Among The Defendants And The *Quid Pro Quo* Relationships With The PI Attorneys. ...........5

    A.    Physicians Group Fails To Confer With State Farm In Good Faith Regarding The Scope Of The Bank And Law Firm Subpoenas.............................6

III.  ARGUMENT ........................................................................................7

    A.    Standard Of Review..............................................................................7

    B.    The Bank Subpoena Properly Seeks Discoverable Financial Documents That Are Critically Important To This Case............................................8

        a)    Fla. Stat. § 655.059 Does Not Prohibit This Discovery........................8

        b)    State Farm's Bank Subpoena Is Narrowly Tailored To The Claims And Defenses In This Case........................................................................10

    C.    The Law Firm Subpoenas Properly Seek Discoverable Information Relating To *Quid Pro Quo* Arrangements With The Defendants.........................14

        a)    Physicians Group Lacks Standing To Challenge These Subpoenas..........15

        b)    The Law Firm Subpoenas Are Narrowly Tailored To The Claims And Defenses In This Case........................................................................15

        a)    Physicians Group's Attempt to Challenge the Law Firm Subpoenas on HIPAA and Medical Privacy Grounds Fails.......................................16

        b)    Physicians Group's "Commercial Information" Argument Fails..............18

D.      Physicians Group's Demand That State Farm Offer "Additional Evidence"
        To Warrant Discovery Is Contrary To Fundamental Discovery Rights ...............19

IV.    CONCLUSION...............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airmont Homes Inc. v. Nalitt,*
  1995 WL 313147 (E.D.N.Y. May 12, 1995) .......................................................................12

*Allen v. Woodford,*
  2007 WL 309485 (E.D. Cal. Jan. 30, 2007) ......................................................................17

*Allstate Ins. Co. v. Vizcay,* 8:11–cv–804–T–17EAJ .......................................................................15

*alsoTropical Mktg. & Consulting, LLC. v. Glock, Inc.,*
  6:12-CV-1388-ORL-36, 2012 WL 5431002 (M.D. Fla. Nov. 7, 2012) ..................................15

*Alterra Healthcare Corp. v. Estate of Shelley,*
  827 So. 2d 936 (Fla. 2002)......................................................................................18

*Anglin v. Maxim Healthcare Servs., Inc.,*
  2009 WL 928305 (M.D. Fla. Apr. 3, 2009).................................................................7, 15, 18

*Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.,*
  231 F.R.D. 426 (M.D. Fla. 2005)...............................................................................15

*Barrington v. Mortage IT, Inc.,*
  07-61304-CIV, 2007 WL 4370647 (S.D. Fla. 2007)............................................................19

*Benavides v. Velocity IQ, Inc.,*
  2006 WL 680656 (M.D. Fla. Mar. 15, 2006) ...................................................................7

*Berlinger v. Wells Fargo, N.A.,*
  No. 11-459, 2012 WL 640708 (M.D. Fla. Feb. 28, 2012).......................................................10

*Bozeman v. Chartis Cas. Co.,*
  2010 WL 4386826 (M.D. Fla. Oct. 29, 2010) ...................................................................7

*Clayton Brokerage Co., Inc. v. Clement,*
  87 F.R.D. 569 (D.Md.1980).......................................................................................15

*Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,*
  01-0392-CIV-GOLD, 2001 WL 34079319 (S.D. Fla. Nov. 1, 2001)...................................16

*Fla. Ass'n of Prof'l Lobbyists, Inc. v. Div. of Leg. Servs.,*
  2006 WL 3826985 (N.D. Fla. Dec. 28, 2006) ...................................................................18

*Friedman v. Heart Inst. of Port St. Lucie, Inc.,*
  863 So. 2d 189 (Fla. 2003).........................................................................................8

*Gonzalez v. ETourandTravel, Inc.*,
  6:13-CV-827-ORL-36, 2014 WL 1250034 (M.D. Fla. Mar. 26, 2014) ...................................13

*Graham v. Fleissner Law Firm*,
  2008 WL 2169512 (E.D. Tenn. May 22, 2008)......................................................................17

*Indep. Mktg. Grp., Inc. v. Keen*,
  3:11-CV-447-J-25MCR, 2012 WL 512948 (M.D. Fla. Feb. 16, 2012).....................................17

*Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*,
  8:05-CV-119-T-23TBM, 2006 WL 905517 (M.D. Fla. 2006)..................................................20

*Kugler*,
  No. 11-80051, Discovery Order (Sept. 11, 2012) DE 994 (*See* Exhibit 12.) .........................13

*Madeline L.L.C. v. Street*,
  2009 WL 1563526 (S.D. Fla. June 3, 2009) ......................................................................7, 23

*Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*,
  2010 WL 3419420 (S.D. Fla. Aug. 27, 2010)......................................................................7, 18

*McLeod, Alexander, Powel & Apffel v. Quarles*,
  894 F.2d 1482 (5th Cir. 1990) ...........................................................................................12

*MedCity v. State Farm*,
  2013 WL 1898374 (May 7, 2013) .......................................................................................11

*Nathai v. Florida Detroit Diesel-Allison, Inc.*,
  3:09-CV-1-J-20HTS, 2009 WL 2424570 (M.D. Fla. 2009)....................................................15

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)...........................................................................................................13

*Regions Bank v. Lynch*,
  2009 WL 395780 (M.D. Fla. Feb. 17, 2009) ....................................................................9, 10

*Resolution Trust Corp. v. Greif*,
  906 F. Supp. 1446 (D. Kan. 1995).......................................................................................12

*S.E.C. v. Wall St. Capital Funding, LLC*,
  11-20413-CIV, 2011 WL 2295561 (S.D. Fla. June 10, 2011)................................................16

*Spitznagel v. R & D Italia, LLC*,
  2:09-CV-824-FTM, 2011 WL 940052 (M.D. Fla. Mar. 17, 2011)........................................19

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs.*,
  375 F. Supp. 2d 141 (E.D.N.Y. 2005) .................................................................................11

*State Farm Mut. Auto. Ins. Co. v. Kugler*,
    840 F. Supp. 2d 1323 (S.D. Fla. 2011) ...................................................................17

*State Farm Mut. Auto. Ins. Co. v. McGee*,
    No. 1:10-cv-03848-ILGRML, slip op. (E.D.N.Y. Feb. 21, 2012) (*See* Exhibit
    11-C) ...................................................................................................................11

*State Farm Mut. Auto Ins. Co. v. Physiomatrix, Inc., et al.*,
    No. 12-cv-11500 at * 6 (E.D. Mich. Aug. 13, 2013)..............................11, 12, 13

*State Farm Mut. Auto. Ins. Co. v. Policherla*,
    2009 WL 2170183 (E.D. Mich. July 20, 2009) ..............................................11, 12

*State Farm v. Kugler*,
    No. 11-80051, Discovery Order (Sept. 11, 2012)...................................................11

*U & I Corp. v. Advanced Med. Design, Inc.*,
    806CV2041T17EAJ, 2007 WL 4181900 (M.D. Fla. 2007) ....................................18

*United Healthcare Services v. Sanctuary Surgical Center*,
    No. 10-81589, Discovery Order (March 30, 2014) ...............................................11

**Statutes**

15 U.S.C. § 6802....................................................................................................9, 10

15 U.S.C. § 6802(e)(8)..................................................................................................9

Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq.*) ...............3, 4, 5

Fla. Stat. 456.057........................................................................................................14

Fla. Stat. § 456.054........................................................................................................3

*Fla. Stat.* § 456.057...................................................................................................18

Fla. Stat. § 655.059..............................................................................................8, 9, 10

Fla. Stat. § 655.059(2)..................................................................................................10

Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42
    U.S.C. §§ 300gg *et seq*...................................................................................14

Patient Brokering Act (Fla. Stat. § 817.505) ................................................................3

Patient Self-Referral Act (Fla. Stat. § 456.053)............................................................3

**Other Authorities**

45 C.F.R. 160.103 ...................................................................................................17

45 C.F.R. §§ 160.102, 160.103 .............................................................................17

45 C.F.R. § 164.512(e)(1)(v) ..................................................................................17

45 CFR §160.103(3) ...............................................................................................17

45 CFR § 164.512(e) ..............................................................................................14

E.C.F. No. 56 at 15 .................................................................................................14

Fed.R.Civ.P. 26(b)(1)................................................................................................7

Fed.R.Civ.P. 45(c)(3)(A) & (B)..............................................................................18

Florida Constitution ..........................................................................................8, 18

Article I § 23 of the Florida Constitution..............................................................18

Local Rule 3.01(g) ..................................................................................................16

Req. 1-6, 30-31 .........................................................................................................6

Req. 12-16, 27-28 .....................................................................................................6

Req. 17-20 .................................................................................................................6

Req. 21-25, 29 ...........................................................................................................6

Req. 32-38 .................................................................................................................6

Req. 7-10 ...................................................................................................................6

Rule 26 ......................................................................................................................7

Rule 26(b) ...............................................................................................................13

Rule 45 ..................................................................................................................6, 7

Rule 45(d)(3)(B)(i)..................................................................................................14

## I.      INTRODUCTION

After this Court upheld each count of its well-pleaded Complaint, State Farm served several targeted subpoenas, including subpoenas on Bank of America ("Bank Subpoena") and four law firms on the 1-800-ASK-GARY Hotline (the "Hotline") referral panel ("Law Firm Subpoenas"), that directly relate to central issues in this case.  These subpoenas seek information that will be highly probative of the claims and defenses in this case because they will establish the truth regarding the existence, nature, and scope of the relationships among the defendants, which ultimately will be extremely important to either support or refute the respective claims and defenses of all parties in this case.  Nevertheless, Defendants Gary Kompothecras and Physicians Group (collectively, "Physicians Group") have now filed a motion to quash these subpoenas entirely, contending, without support, that *none* of this discovery is permissible or relevant to this case.  (E.C.F. 56 ("Motion"))  They also argue that the subpoenas are improper because they seek confidential financial, medical, and commercial information, which they contend is not discoverable under federal or Florida law.

Their arguments are without merit.  First, the Bank Subpoena seeks critically relevant financial documents regarding State Farm's claims and the Defendants' defenses in this case, such as documents that will confirm (or, potentially, refute) the true financial relationships among the Defendants, including but not limited to any payments or transfers of funds or assets among the Defendants, shell companies, personal injury attorneys, or others involved in the fraud scheme.  As discussed below, State Farm's Complaint alleges that Defendants have engaged in an elaborate fraud scheme in which they have purposely disguised Kompothecras' true ownership and control of the Hotline through the creation of shell companies and nominee owners.  The fraud scheme includes unlawful kickbacks and patient brokering to induce improper self-referrals from the Hotline to Kompothecras' own Physicians Group clinics.  Thus,

1

the financial relationships among the Defendants and perhaps others is highly relevant to establishing the true ownership and control of the Hotline, as well as the respective motives of the Defendants to engage in the activities alleged by State Farm.  Contrary to Physicians Group's arguments, none of these financial documents are protected under the statute cited by it, which expressly allows the production of financial document pursuant to a subpoena.

Second, the Law Firm Subpoenas also seek highly relevant documents relating to Defendants' fraudulent concealment of the unlawful *quid pro quo* arrangements that at least some personal injury attorneys have engaged in to secure referrals from the Hotline.  As with the financial documents, none of the statutes Physicians Group cites preclude the production of these documents in discovery.  Moreover, contrary to Physicians Group's baseless accusations of State Farm's purported "shotgun" discovery approach, State Farm in fact served subpoenas on only four law firms, out of over 100 possible law firms and attorneys who participate on the Hotline panel.  Specifically, for one of the law firms subpoenaed, Winters & Yonker, State Farm's Complaint contains a sworn affidavit from Personal Injury ("PI") Attorney Anthony Gadlage confirming the existence of a *quid pro quo* arrangement with the Hotline.  To illustrate the scope of the relationship between Physicians Group and Winters & Yonker, Defendant David Balot testified in April 2012 that, as of that date, Winters & Yonker represented 1,636 active patients of Physicians Group.  (*See* **Exhibit 1**, David Balot 4/23/12 Deposition).  For the other three law firms, State Farm first established that each firm had represented more than 100 State Farm insureds who treated at Physicians Group, indicating a substantial referral relationship.

Accordingly, Physicians Group's Motion should be denied in its entirety.

## II.   PROCEDURAL BACKGROUND

### A.   State Farm's Complaint Alleges A Fraud Scheme That Includes Unlawful Kickbacks, Patient Brokering, And The Creation Of False Shell Companies To Hide The True Ownership And Control Of The Hotline.

State Farm's Complaint alleges a fraud scheme orchestrated by Gary Kompothecras and the other defendants in this action to obtain benefits under Florida's No-Fault Statute for services that were not lawfully rendered because Defendants intentionally violated important criminal, civil and administrative laws to lure unwitting auto accident victims to receive services at Physicians Group clinics, including the Patient Brokering Act, (Fla. Stat. § 817.505), the Patient Self-Referral Act (Fla. Stat. § 456.053), the Anti-Kickback Statute (Fla. Stat. § 456.054), and the Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq.*).   (ECF No. 1 at ¶ 1). Because the services were not lawfully rendered, State Farm did not owe Physicians Group for them.   (*Id*. at ¶ 2).   State Farm alleges that the Defendants lure unwitting accident victims to call the Hotline by promoting it as an independent and legitimate medical and legal referral service. (*Id*. at ¶ 3.)   In fact, the Hotline is not independent or legitimate.   It is secretly owned and controlled by Kompothecras, and used to unlawfully steer callers to his own clinics, the Physicians Group clinics, and to personal injury attorneys who pay the Hotline for referrals and, at least in some instances, secretly and unlawfully agree to refer their clients to the Physicians Group clinics.   (*Id*. at ¶ 4.)   To conceal the unlawful nature of their activities, Defendants created a series of shell companies with nominee owners to purportedly own and operate the Hotline, but they are all working for, or at the direction of, Kompothecras.   (*Id*. at ¶ 5.)   For example, in 2007 and 2011, the Defendants formed WS Marketing and WS Media, respectively, which are nothing more than shell companies created to provide the illusion that these purportedly independent entities, not Kompothecras, "owned" and operated the Hotline.   (*Id.* at ¶¶ 4-5, 22-24, 35-38, 53-68, 71-101.)   Kompothecras installed Defendant Sigelakis, his cousin, as the nominee "owner" of

these shell companies, even though Sigelakis' real role is driver and delivery person for Kompothecras and Physicians Group. (*Id.* at ¶ 24.)

**B.     State Farm's Complaint Also Alleges That Defendants' Fraud Scheme Relies On *Quid Pro Quo* Relationships With Personal Injury Attorneys.**

Defendants also perpetrated their fraud by maintaining *quid pro quo* relationships with personal injury attorneys ("PI Attorneys"). (E.C.F. No. 1 at ¶¶ 6, 80, 102.) The Defendants forged a symbiotic relationship with at least some PI Attorneys to assure that callers to the Hotline would seek treatment at Physicians Group clinics in exchange for client referrals from the Hotline. (*Id.* at ¶¶ 4, 26, 43, 53, 62, 66-67, 72.) PI Attorney Anthony Gadlage has provided a sworn affidavit in which he confirms that Physicians Group had these unlawful *quid pro quo* cross-referral arrangements with PI Attorneys. (*Id.* at Ex.1). Specifically, Attorney Gadlage, who worked for the Kentucky office of a Florida-based personal injury law firm, Winters & Yonker, confirms that Kompothecras required PI Attorneys who received referrals from the Hotline to refer their clients to his clinics for treatment, and appeared to track the cross-referrals from the Hotline to PI attorneys. (*Id.*) Attorney Gadladge also confirms in his affidavit that all referrals between Winters & Yonker and ASK GARY were coordinated through the Hotline's personnel and an attorney in Winters & Yonker's Tampa, Florida office. *Id.* Similarly, State Farm's Complaint describes the experiences of two patients, that further corroborate Attorney Gadlage's affidavit, in which they confirm that their attorneys unduly pressured them into receiving unnecessary treatment at Kompothecras-owned clinics. (Id. at ¶¶ 80-87).

**C.     The Court Denies Defendants' Motions To Dismiss.**

On March 25, 2014, the Court upheld the allegations of the Complaint against Defendants' Motions To Dismiss, rejecting all of the Defendants' arguments. (E.C.F. No. 42)

The Court noted that the concealment of the relationships among the Defendants relating to the unlawful referrals via the Hotline was one of the key issues in this case:

> State Farm has alleged facts sufficiently particular at the pleading stage to establish the plausibility of violations of the Patient Brokering Act, Patient Self–Referral Act, Anti–Kickback Act, and FDUTPA, namely, the relationships between co-defendants and the roles played by each to conceal the nature of those relationships in order to ensure a continued supply of referrals to Physicians Group clinics. *Id.* at 12.

**D.   State Farm Issues Subpoenas That Narrowly Target The Critically Relevant Issues Regarding The Financial Relationships Among The Defendants And The *Quid Pro Quo* Relationships With The PI Attorneys.**

The Bank and the Law Firm Subpoenas target critically relevant issues in this case that go to the very heart of the claims and defenses in this case.  (*See* **Exhibits 2-6**).  The Bank Subpoena, which was issued to Bank of America based upon the account into which State Farm transferred funds for payments on claims billed by Physicians Group, seeks bank records and financial documents from the Defendants' bank accounts, which, as described below, will either support or refute the respective parties' claims and defenses in this case by: (1) confirming or refuting the true ownership and control of the Hotline; (2) confirming or refuting the true relationships among the Defendants in this case; (3) identifying payments among the Defendants and the businesses they control (or purport to control); (4) identifying payments made to and received from PI Attorneys.  Bank of America has not objected to this subpoena.

State Farm has also served subpoenas on four PI law firms, specifically Winters & Yonker, Morgan & Morgan, Farah & Farah, and the Law Offices of Burnetti.  Although there are over 100 law firms and attorneys presently identified as being on the "panel" of attorneys to whom the Hotline can provide referrals, State Farm limited its subpoenas to just 4 law firms. Specifically, State Farm served Winters & Yonker, a firm for which Attorney Gadlage has provided a sworn affidavit confirming a *quid pro quo* arrangement with the Hotline, and David Balot testified that it represented 1,636 active patients treating at Physicians Group as of April

2012.  State Farm served three additional law firms based on information showing that they each represented at least 100 State Farm insureds who treated at Physicians Group, indicating a substantial relationship.  The Law Firm subpoenas generally request six categories of documents: (1) communications between the Law Firms, the Hotline, and/or the Defendants regarding referrals from the Hotline and to Physicians Group (*See* **Exhibits 2-5** at Doc. Req. 12-16, 27-28); (2) the financial arrangements between the Law Firms, the Hotline, and/or the Defendants (Id. at Doc. Req. 1-6, 30-31); (3) agreements between the Law Firms, the Hotline, and/or the Defendants for the referral of clients/patients (Id. at. Doc. Req. 7-10); (4) measures taken to track the number of patient referrals made between the Law Firms, the Hotline, and/or the Defendants (Id. at. Doc. Req. 17-20); (5) prior investigations by or formal complaint with the Florida Bar or other agencies into the referral arrangements between the Law Firms, the Hotline, and/or the Defendants (Id. at Doc. Req. 21-25, 29); and (6) communications with the Defendants and the Hotline medical and legal referral services, health care clinics, or law offices in states other than Florida.  (Id. at Doc. Req. 32-38).[1]

### A.    Physicians Group Fails To Confer With State Farm In Good Faith Regarding The Scope Of The Bank And Law Firm Subpoenas.

After State Farm served its Rule 45 Notice to Serve Subpoenas, counsel for Physicians Group contacted State Farm's attorneys and requested that State Farm voluntarily withdraw the Subpoenas and asserted that they violated HIPAA and other constitutional rights.  To address Physicians Group's concerns, counsel for State Farm responded on June 4, 2014 with an extensive analysis of why the Subpoenas were not overly broad, were not protected under

---

[1]  The law firms that received subpoenas have served objections to State Farm that substantially overlap with the arguments in this Motion.  (*See* **Exhibits 7-9**.)  The Court stayed production of documents pursuant to these subpoenas pending resolution of the present Motion (E.C.F. No. 60).  State Farm will seek leave to file a motion to compel the law firms to respond to these subpoenas so that the Court can address all objections to these subpoenas at one time.

HIPAA, and did not violate constitutional rights. (*See* **Exhibit 10**.)  On, June 4, 2014, the parties held a Meet-and-Confer, during which Physicians Group maintained its position that **none** of the requests or categories of information sought by the Subpoenas were discoverable or relevant to this case.  Moreover, Physicians Group refused to propose any potential narrowing of the Subpoenas that could address their objections, and, as discussed below, they proposed no such narrowing – other than entirely quashing the Subpoenas in totality – in their Motion.

## III.   ARGUMENT

### A.   Standard Of Review

It is well-settled that the scope of non-party discovery under Rule 45 is equally as broad as the scope of party discovery under Rule 26.  *See Madeline L.L.C. v. Street,* 2009 WL 1563526, at *1 (S.D. Fla. June 3, 2009).  As a result, "a party may use a Rule 45 subpoena to 'obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.'" *Id.* (citing Fed.R.Civ.P. 26(b)(1)).  Such "[i]nformation can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence." *Anglin v. Maxim Healthcare Servs., Inc.*, 2009 WL 928305, at *1 (M.D. Fla. Apr. 3, 2009) (denying motion to quash based on unfounded HIPAA objections).  This broad scope of non-party discovery is among the reasons that "a Rule 45 subpoena should be enforced unless it is clear 'that the evidence sought can have ***no possible bearing*** on the issues." *Benavides v. Velocity IQ, Inc.*, 2006 WL 680656, at *2 (M.D. Fla. Mar. 15, 2006) (emphasis added).  The party seeking to quash a subpoena bears the burden of establishing that its request should be granted.  *See Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 2010 WL 3419420, at *3 (S.D. Fla. Aug. 27, 2010); *Bozeman v. Chartis Cas. Co.*, 2010 WL 4386826, at *3 (M.D. Fla. Oct. 29, 2010).

**B.      The Bank Subpoena Properly Seeks Discoverable Financial Documents That Are Critically Important To This Case.**

Physicians Group challenges State Farm's Bank Subpoena principally on two grounds, none of which have merit.  First, they ask the Court to quash the Bank Subpoena entirely because it seeks financial documents, which Defendants contend are *per se*  privileged under Fla. Stat. § 655.059 and therefore are not discoverable.[2]  (E.C.F. No. 56 at ¶ 9.)  Second, Physicians Group asks this Court to enter a protective order prohibiting any discovery sought by the Bank Subpoena, because "the bank records sought . . . have no relevance to the case at issue."  (*Id.* at 12.)

**a)      Fla. Stat. § 655.059 Does Not Prohibit This Discovery.**

According to Physicians Group, without the consent of the account holder, financial records are deemed confidential under Fla. Stat. § 655.059 and can only be produced pursuant to a court order or a legislative subpoena.  (E.C.F. No. 56 at ¶¶ 9-10).  Specifically, they claim that Section 655.059(1)(e) "require[es] production in a civil matter only '*as compelled by a court* of competent jurisdiction.'"  *Id.*  This badly mischaracterizes the statute.  In fact, Section 655.059(1)(e) reads that "books and records of a financial institution are confidential and shall be made available for inspection and examination only:

> As compelled by a court of competent jurisdiction, pursuant to a subpoena issued pursuant to the Florida Rules of Civil Procedure, the Florida Rules of Criminal Procedure, or the Federal Rules of Civil Procedure, or pursuant to a subpoena issued in accordance with state or federal law."

---

[2]   Physicians Group states in a single-sentence that Florida's Constitution "protects an individual's expectation of privacy in financial records." (E.C.F. No. 56 at ¶ 9.)  The Florida Supreme Court has rejected any argument that this provides a blanket protection against discovery.  *See Friedman v. Heart Inst. of Port St. Lucie, Inc.,* 863 So. 2d 189, 194 (Fla. 2003) (although the Florida Constitution protects financial records to a degree, "[a] party's finances, if relevant to the disputed issues of the underlying action, *are not excepted* from discovery.).

Physicians Group selectively extracts solely the phrase "as compelled by a court of competent jurisdiction," ignoring that this is but one statutory allowance for this discovery.  The same provision specifies other options for discovery of financial records from a bank, including "pursuant to a subpoena issued pursuant to . . . . the Federal Rules of Civil Procedure" – precisely the situation here.  Incredibly, Physicians Group further argues that "this Court should not be persuaded by any argument that provisions of Fla. Stat. § 655.059 exempt such requests made through a subpoena . . . [because] the statute clearly makes a distinction between court orders and compelling such documents through use of a subpoena, which is specifically reserved only for a 'legislative' subpoena."  (E.C.F. No. 56 at ¶ 10.)  This, again, contradicts the plain language of the statute.  While Subsection (1)(f) clearly allows the production of financial records pursuant to a "legislative subpoena," it is equally clear that Subsection (1)(e) also expressly allows the production of financial records pursuant to a subpoena issued pursuant to "the Federal Rules of Civil Procedure."[3]  Thus, Physicians Group's argument is predicated on a misreading of the plain terms of the statute.

Tellingly, Physicians Group does not provide any authority holding that the subsection allowing production pursuant to a legislative subpoena somehow nullifies a separate subsection allowing for production pursuant to a subpoena issued in a civil proceeding.  To the contrary, this Court has already rejected this same argument.  Specifically, in *Regions* defendants argued that 15 U.S.C. § 6802 and Fla. Stat. § 655.059 precluded discovery of their financial documents, but the Court rejected this argument, concluding that these statutes have "specific exclusions for *subpoenas* and appropriate court orders."  *Regions Bank v. Lynch*, 2009 WL 395780, at *2 (M.D.

---

[3] In fact, this Florida Statute was specifically amended in 2004 to include the "pursuant to a subpoena issued pursuant to . . . . the Federal Rules of Civil Procedure" language to expressly allow for these types of subpoenas.

Fla. Feb. 17, 2009) (emphasis added).  Physicians Group seeks to evade this holding by arguing that the Court in *Regions* was only referring to 15 U.S.C. § 6802(e)(8) (the Gramm-Leach-Bliley Act) when it stated the "statutes" have exclusions for subpoenas.  Physicians Group's arguments fail for several reasons.  First, it provides no basis for this mischaracterization of *Regions*, which, if accepted, would contravene the plain text of the statute.  And in any event, Fla. Stat. § 655.059 cross-references 15 U.S.C. § 6802, stating that a financial institution may disclose financial information "as permitted" by 15 U.S.C. § 6802.  *See* Fla. Stat. § 655.059(2).  In other words, if discovery is permitted pursuant to 15 U.S.C. § 6802, it is also permitted pursuant to Fla. Stat. § 655.059.  Physicians Group's also attempts to distinguish *Regions* by highlighting that it involved first-party subpoenas.  But this is a distinction without a difference because nothing in the language of Fla. Stat. § 655.059 or *Regions* distinguishes between first-party and third-party subpoenas.  If, as Defendants contend, Fla. Stat. § 655.059 only provided discovery pursuant to a court order or legislative subpoenas, then the first party subpoena in *Regions* would also have been improper.[4]  There is no support in the neither the plain text of the statute nor the case law that prohibits the discovery sought in the Bank Subpoena.

> **b)** **State Farm's Bank Subpoena Is Narrowly Tailored To The Claims And Defenses In This Case.**

Physicians Group next seeks a protective order "prohibiting, or at a minimum severely limiting, the financial items requested from Bank of America."  (E.C.F. No. 56 at ¶ 12.)  Physicians Group acknowledges that it bears the burden of showing that the documents sought by the Bank Subpoena are either irrelevant or "of such marginal relevance that the potential harm

---

[4] Physicians Group also cites *Berlinger v. Wells Fargo, N.A.*, No. 11-459, 2012 WL 640708 (M.D. Fla. Feb. 28, 2012), but it refutes their position.  The *Berlinger* defendants claimed that discovery of financial documents were protected under Fla. Stat. § 655.059.  *Id*.  The Court rejected this argument and ordered defendants to produce the documents in less than two weeks.

occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."

(*Id.*)  But they apparently dispute that "banking records are needed and regularly granted in fraud

cases" and contend that the financial records sought "have no relevance to the case at issue." (*Id.*

at 13.)   They are wrong on all counts.   First, Physicians Group provides no support for its

conclusory statement that financial documents are not relevant in fraud cases.   To the contrary,

federal courts throughout the country routinely permit broad discovery of financial information

in cases where an insurer alleged similar fraud schemes.   For instance, these courts have

concluded that financial information contained in the banks' business records is relevant and

discoverable for numerous reasons, including to: (1) "assess the financial relationship among the

defendants,"  (2) "measure the scope and extent of the defendant's fraud," (3) "prove motive,"

(4) "identify other witnesses who may have participated in, or have knowledge concerning the

purported scheme," and (5) prove damages." *MedCity v. State Farm,* 2013 WL 1898374 at \*6

(May 7, 2013).[5]

Physicians Group's similarly conclusory argument that financial documents are irrelevant

to this case is also meritless.   The Complaint details a fraud scheme that involves unlawful

---

[5] *See also United Healthcare Services v. Sanctuary Surgical Center,* No. 10-81589, Discovery
Order (March 30, 2014) (granting insurer's motion to compel and ordering the production of
defendants "Bank records for years 2006 to [2014], including account statements, cancelled checks,
deposit and withdrawal items, deposit and withdrawal slips, signature cards, and account opening and
closing documents");   *State Farm v. Kugler*, No. 11-80051, Discovery Order (Sept. 11, 2012)
(denying motion to quash bank subpoena and ordering bank to produce "all documents" relating
to any account held or owned by the defendant provider); *State Farm Mut. Auto Ins. Co. v.
Physiomatrix, Inc., et al.*, No. 12-cv-11500 at \* 6 (E.D. Mich. Aug. 13, 2013) (same); *State Farm
Mut. Auto. Ins. Co. v. Policherla,* 2009 WL 2170183, at \*6 (E.D. Mich. July 20, 2009) (same);
*State Farm Mut. Auto. Ins. Co. v. McGee*, No. 1:10-cv-03848-ILGRML, slip op. at 3-9
(E.D.N.Y. Feb. 21, 2012) (*See* **Composite Exhibit 11**) (compelling physician to produce bank
records, tax returns, and general ledgers because such documents are relevant to motive, profits
from scheme, financial relationships among defendants, and credibility of defendants); *State
Farm Mut. Auto. Ins. Co. v. CPT Med. Servs.*, 375 F. Supp. 2d 141, 156 (E.D.N.Y. 2005)
(ordering production of defendants' tax returns, general ledgers and bank records in insurance
fraud action).

payments to induce patient referrals from the Hotline, as well as the creation of shell companies to conceal and disguise the true ownership and control of the Hotline by Kompothecras, the true relationships among the defendants, and the *quid pro quo* arrangements among Physicians Group, the Hotline, and PI Attorneys.  Thus, these bank records are relevant to show or refute (1) the true ownership and control of the Hotline, (2) the nature and scope of the financial relationships among the Defendants, the Hotline, and PI Attorneys, including the manner in which funds were distributed among them, (3) the identify of others who may have profited from this scheme, and (4) the extent to which Defendants stood to gain from participating in this scheme, which would explain their motives.  *See Resolution Trust Corp. v. Greif*, 906 F. Supp. 1446, 1452 (D. Kan. 1995) (bank records relevant because they "might reveal secret payments . . . [and] financial relationships"); *see also Policherla*, 2009 WL 2170183, at \*2;. *Physiomatrix, Inc., et al.*, No. 12-cv-11500 at \* 6 (E.D. Mich. Aug. 13, 2013) (holding that banking records were "clearly relevant to State Farm's claims"); *Airmont Homes Inc. v. Nalitt*, 1995 WL 313147, at \*2 (E.D.N.Y. May 12, 1995) (compelling production of financial information in fraud case to understand "transfers of money [among] defendants" and provide "financial history of Defendants' affairs").   For example, incoming and outgoing payments in Defendants' bank records are highly relevant because they will assist in establishing or refuting that the individual defendants and the entities they control coordinated with each other and worked symbiotically to further the fraud scheme.   Furthermore, bank records will help establish or refute that Kompothecras exercised control over the Hotline's bank accounts and payments, directed and paid for advertising, and received distributions, and is thus the true owner and controller of the Hotline.  They may also show or refute transfers from the Defendants to other third-party entities that are also owned or controlled by Kompothecras and function to conceal the fraud scheme.

*See McLeod, Alexander, Powel & Apffel v. Quarles*, 894 F.2d 1482, 1484-85 (5th Cir. 1990) (upholding district court's determination that requested financial documents were relevant to show how closely defendant's financial affairs were intertwined with a third party).

Physicians Group's contention that the loan documents sought in the Bank Subpoena "have nothing whatsoever to do" with State Farm's Complaint is equally meritless.  The loan documents are highly relevant because they will show Defendants' own representations regarding their assets (*e.g.*, which companies they own, as well as the nature and extent of their interest), their sources and the amount of their income from each source, their liabilities (*e.g.,* to or on behalf of each other, individually or regarding their respective businesses), and the extent to which any defendant or any other person—whether he or she purports to own any defendant entity or not—attempted to or did obtain a loan or line of credit to finance the operation of more than 30 high volume clinics in Florida, the Hotline, and the multi-million dollar marketing campaign for the Hotline that was so critical to the success of the scheme.  These representations (and lack thereof) are extremely relevant to determine the Defendants' relationships with the entities at the heart of this case.

Accordingly, the financial information sought by the Bank Subpoena is squarely within the scope of permissible discovery. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case."); *Gonzalez v. ETourandTravel, Inc.,* 6:13-CV-827-ORL-36, 2014 WL 1250034, at *2 (M.D. Fla. Mar. 26, 2014) (explaining that "the scope of discovery under Rule 26(b) is broad").[6]

---

[6]  Physicians Group also insinuates that State Farm purposely targeted a non-related "personal" bank account that Kompothecras shares with his wife.  Their accusation is baseless: the bank account identified in the subpoena was the account to which State Farm issued payments *to*

**C.      The Law Firm Subpoenas Properly Seek Discoverable Information Relating To *Quid Pro Quo* Arrangements With The Defendants.**

Physicians Group seeks an Order quashing State Farm's subpoenas to four law firms that receive referrals from the Hotline and refer clients to Physicians Group.  Contrary to Physicians Group's unsupported (and irrelevant) accusations of purported "litigation playbook" of abusive discovery to drive Physicians Group "out of business," out of more than 100 law firms and attorneys presently on the Hotline panel, State Farm served only four law firms that have a long-standing relationship with the Hotline and a significant relationship with Physicians Group.  For instance, Attorney Gadlage provided a sworn statement attesting to a *quid pro quo* arrangement among Winters & Yonker, Physicians Group, and the Hotline.  (E.C.F. No. 1 at ¶¶ 6, 80, 102-114.)  Defendant David Balot's testimony establishing that, as of April 2012, this same law firm represented a staggering 1,636 active patients of Physicians Group is consistent with this. **(*See* Exhibit 1)**.  Physicians Group provides three arguments in furtherance of its position, each of which is equally unavailing.  First, it argues that the subpoenas are overbroad because they do not provide a reasonable time limitation and are not limited to State Farm policyholders. [E.C.F. No. 56 at ¶ 15].  Second, Physicians Group argues that the subpoenas should be quashed because they seek Protected Healthcare Information ("PHI"), in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 300gg *et seq*., 45 CFR § 164.512(e) and Florida privacy laws (namely Florida's constitution and Fla. Stat. 456.057).  (*Id.* at 14, 16-17.)  Finally, Physicians Group argues the Law Firm Subpoenas should be quashed

---

*Physicians Group* based upon PIP claims it submitted to State Farm.  It is unclear why Kompothecras' wife is purportedly a co-owner on this account, but, in any event, it has no effect on State Farm's ability to obtain this discoverable information.  In fact, Florida courts have rejected the argument that a defendant can shield discovery on bank records simply because the account is co-owned by the defendant and his wife.  *See Kugler*, No. 11-80051, Discovery Order (Sept. 11, 2012) DE 994 (*See* **Exhibit 12**.); *see also Physiomatrix, Inc., et al.*, No. 12-cv-11500 at * 6 (E.D. Mich. Aug. 13, 2013) requiring discovery of joint-held bank accounts **(*See* Exhibit 11-B)**.

pursuant to Rule 45(d)(3)(B)(i), contending the subpoenas seek a "wide range of commercial information that is not otherwise known to the general public, competitors and/or that is not relevant to this action." (*Id.* at 17-18.)

a)     <strong>Physicians Group Lacks Standing To Challenge These Subpoenas.</strong>

It is well established that a party has no standing to quash a subpoena served upon a third party, absent a specific showing of a privilege or privacy interest. *See, e.g., Anglin v. Maxim Healthcare Services, Inc.*, 6:08-CV-689-ORL-22DA, 2009 WL 928305 (M.D. Fla. 2009).[7] Physicians Group provides no argument that it has any cognizable privilege or expectation of privacy here, and therefore fails to establish a "personal right" regarding the requested documents and does not have standing to quash the Law Firm Subpoenas.[8]

b)     <strong>The Law Firm Subpoenas Are Narrowly Tailored To The Claims And Defenses In This Case.</strong>

Physicians Group raises only two arguments.  First, it argues that the subpoenas are overbroad because they have "no reasonable time limitation."  This position is baseless.  Each subpoena limits the temporal scope of the requested documents to the period identified in State Farm's Complaint, which describes Defendants' fraud scheme from "2005 to the present." *See, e.g.,* E.C.F. No. 56-2 at ¶ 4; E.C.F. No. 1 at ¶ 6; *see also* *Tropical Mktg. & Consulting, LLC. v. Glock, Inc.*, 6:12-CV-1388-ORL-36, 2012 WL 5431002 (M.D. Fla. Nov. 7, 2012).  It next argues that subpoenas are overbroad because they seek documents "which would also encompass non-

---

[7] *See also Allstate Ins. Co. v. Vizcay,* 8:11–cv–804–T–17EAJ Order on Emergency Motion for Protective Order Regarding Records Subpoenaed by Defendants to be Produced April 30, 2013 (E.C.F. No. 359) (M.D. Fla. 2011) (*See* **Exhibit 13.**)

[8] *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) citing *Clayton Brokerage Co., Inc. v. Clement,* 87 F.R.D. 569, 571 (D.Md.1980); *see also Nathai v. Florida Detroit Diesel-Allison, Inc.,* 3:09-CV-1-J-20HTS, 2009 WL 2424570 (M.D. Fla. 2009) (holding that the Defendant failed to articulate the existence of any personal right or privilege seeking records from a non-party and therefore did not have standing to quash the subpoena).

State Farm policy holders."  The fraud scheme alleged, however, is not limited solely to State Farm policy holders, and the full extent of the relationship between these four law firms, the Hotline, and Physicians Group is highly relevant to establishing or refuting whether a *quid pro quo* relationship existed.  *See Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 01-0392-CIV-GOLD, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001) ("Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the subject matter of the action.")  As alleged in the Complaint, the scheme here is intended to defraud No-Fault insurers generally, and applies to all callers to the Hotline – not just State Farm insureds. Nor are there any allegations that the Hotline and the Defendants' fraud scheme operated differently for State Farm insureds versus other insureds.  Accordingly, State Farm is entitled to obtain discovery to show the full scope of the scheme, and, importantly, establishing that the vast majority of the callers to the Hotline who were referred to PI Attorneys were in turn to referred to Physicians Group for treatment is highly probative of these illicit *quid pro quo* arrangements.  *S.E.C. v. Wall St. Capital Funding, LLC*, 11-20413-CIV, 2011 WL 2295561 (S.D. Fla. June 10, 2011) (holding that a subpoena request concerning the defendants' activities with companies beyond those described in the complaint is within the broad scope of discovery because the complaint pinpointed activities concerning four stock companies for illustrative purposes and alleged that the defendant existed for ten years and was believed to have unlawfully disseminated information relating to hundreds of stocks).

> **a)** **Physicians Group's Attempt to Challenge the Law Firm Subpoenas on HIPAA and Medical Privacy Grounds Fails.**

Physicians Group also argues that the Law Firm Subpoenas should be quashed because they request "protected information without first seeking to comply with the requirements of HIPAA or Florida law." (*See* E.C.F. No. 56 at ¶ 16.)  As an initial matter, as Physicians Group is

16

well aware, these subpoenas are not intended to and do not seek protected medical information. On June 4, 2014, pursuant to Local Rule 3.01(g) and in an effort limit the scope of the issues this Court would need to decide, counsel for State Farm informed Physicians Group's attorneys that:

> [We] do not believe the production sought runs afoul of HIPAA or any other state or federal law regarding protected healthcare information. Saying that, **we are amenable to agreement that allows the law firms to withhold from production to State Farm any medical records it obtained from treating medical professionals.**

See **Exhibit 10** (emphasis added). Physicians Group fails to mention these communications, which confirm that the Law Firm subpoenas do not seek protected health information.

In any event, Physicians Group's HIPAA and privacy based objections do not provide a basis to quash the subpoenas. First, HIPAA only applies to "covered entities" and law firms do not qualify as such.[9]  *See* 45 C.F.R. §§ 160.102, 160.103. Even if HIPAA applied, Physicians Group does not identify *which* documents purportedly invoke the type of health information protected by HIPAA. *See* 45 C.F.R. 160.103. Thus, it does not meet its burden to specifically identify the discovery it seeks to quash. *Indep. Mktg. Grp., Inc. v. Keen*, 3:11-CV-447-J-25MCR, 2012 WL 512948 (M.D. Fla. Feb. 16, 2012) (denying motion to quash because moving party failed to "describe the nature of the withheld documents, communications, or tangible things in a manner that . . . would enable the parties to assess the claim").

---

[9] HIPAA applies only to "covered entities," which are health plans, health care clearinghouses, healthcare providers who transmit health information electronically, and business associates of covered entities who perform functions on behalf of these entities. *See* 45 C.F.R. §§ 160.102, 160.103. Under HIPAA, a "[c]overed entity means (a) a health plan, (b) a health care clearinghouse, [or] (c) a health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." *See* 45 CFR §160.103(3). . *See State Farm Mut. Auto. Ins. Co. v. Kugler*, 840 F. Supp. 2d 1323, 1328 (S.D. Fla. 2011) (citations omitted). *See Graham v. Fleissner Law Firm*, 2008 WL 2169512, at *3 (E.D. Tenn. May 22, 2008) ("Defendants, a law firm and individual attorney, are not Covered Entities as defined by HIPAA.").

Further, HIPAA expressly allows covered entities to produce information in response to a lawful subpoena pursuant to a protective order. *See* 45 C.F.R. § 164.512(e)(1)(v); *Allen v. Woodford,* 2007 WL 309485, at *5 (E.D. Cal. Jan. 30, 2007) (holding protective order "adequate under HIPAA to protect third party medical records" where protective order followed mandates of Section 164.512(e)(v)).   Thus far, Physicians Group has skillfully avoided entering into a protective order with State Farm.  Specifically, on May 27, 2014, State Farm sent the Defendants a proposed Protective Order in an attempt to address this, and many other issues, anticipated with the discovery process.  Defendants did not respond to the proposed Protective Order until June 18, 2014 – one week after filing their motion to quash – which would address any concerns here.[10]   Accordingly, Physicians Group's argument that the Law Firm Subpoenas should be quashed based on HIPAA privacy rights are unfounded.[11]

      **b)**      **Physicians Group's "Commercial Information" Argument Fails.**

Physicians Group argues, again without support, that the Law Firm Subpoenas impermissibly request "commercial information," but, other than merely providing a "representative sampling" of the subpoena's requests, it does not identify *any* specific information it claims is protected "commercial information."  *See* Fed.R.Civ.P. 45(c)(3)(A) & (B) *U & I Corp. v. Advanced Med. Design, Inc.,* 806CV2041T17EAJ, 2007 WL 4181900 (M.D. Fla. 2007) citing *Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, 8:05-CV-119-T-23TBM, 2006 WL 905517 (M.D. Fla. 2006) (providing that the scope of discovery through

---

[10] Plaintiffs' corresponded with Defendants regarding Physicians Group's responses on June 23.

[11] Physicians Group also appears to argue that the Florida Constitution and *Fla. Stat*. § 456.057 support quashing the subpoena, but provide no authority.  Corporate defendants have no such right to privacy nor standing to object pursuant to Article I § 23 of the Florida Constitution.  *See Alterra Healthcare Corp. v. Estate of Shelley*, 827 So. 2d 936, 941 (Fla. 2002); *Fla. Ass'n of Prof'l Lobbyists, Inc. v. Div. of Leg. Servs.*, 2006 WL 3826985, at *4 (N.D. Fla. Dec. 28, 2006). Physicians Group has no right to assert a patient's right to privacy under *Fla. Stat*. § 456.057.

subpoena is broad and the nonparty must show that the sought after information is confidential commercial information).  Accordingly, this is nothing more than a boilerplate objection which should be rejected.  *See Anglin*, 2009 WL 928305, at *1; *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.,* 09-60351-CIV, 2010 WL 3419420 (S.D. Fla. 2010) at *3 (denying motion to quash based on conclusory confidentiality objections); *see also Spitznagel v. R & D Italia, LLC*, 2:09-CV-824-FTM, 2011 WL 940052 (M.D. Fla. Mar. 17, 2011).

Physicians Group also seems to claim that requests regarding the formation of Aggressive Law Group are not relevant. However, due to the close referral relationship between Physicians Group and Winters and Yonker and its convoluted progeny (Aggressive Law Group, Yonker Law Group and related entities),[12] coupled with the testimony from Attorney Gadlage regarding the *quid pro quo* arrangement between these law firms and Physicians Group, this is directly relevant to the alleged fraud referral scheme.  Moreover, "it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery.  Confidentiality concerns in many cases may be addressed with an appropriate protective order."  *Barrington v. Mortage IT, Inc.*, 07-61304-CIV, 2007 WL 4370647 (S.D. Fla. 2007)  Again, a protective order, would alleviate any concerns here.

**D.    Physicians Group's Demand That State Farm Offer "Additional Evidence"
        To Warrant Discovery Is Contrary To Fundamental Discovery Rights**

Throughout the subject Motion, Physicians Group repeatedly makes unsupported claims that "State Farm has never presented even a scintilla of evidence suggesting wrongdoing between

---

[12] Winters and Yonker, P.A. was formed November 8, 2001. On September 12, 2012, The Aggressive Law Group, P.A. was formed by Marc Yonker as President. Then, on November 30, 2012, Winters & Yonker, P.A. changed its name to "Yonker Law Group, P.A." listing Marc Yonker as the President, Secretary and Director. Then, on October 17, 2013, The Aggressive Law Group, P.A. changed its name to "Winters & Yonker, P.A."  Accordingly, "The Aggressive Law Group, P.A." is really a fictitious name for the "new" Winters & Yonker, P.A.

the subpoenaed firms and Defendants" and "State Farm must come forward with something more than naked assertions in an attempt to open the door to oppressive and maliciously targeted discovery," (*see* E.C.F. No. 56 at ¶¶ 20, 22).  In so doing, Physicians Group suggests that State Farm, at this early stage in the litigation, is required to offer additional proof, beyond the well-pled allegations and sworn affidavit in the Complaint upheld by this Court, to obtain the information sought by the law firm subpoenas.  This is frivolous. A party to litigation is entitled to a broad scope in discovery in issuing non-party subpoenas and Physicians Group's reliance on a single deposition of a Florida Bar employee is misplaced.  *Kona Spring Water Distrib., Ltd. v. World Triathlon Corp*., 8:05-CV-119-T-23TBM, 2006 WL 905517 (M.D. Fla. 2006)  The mere fact that none of the attorneys interviewed by a Florida Bar employee confessed to an unlawful *quid quo pro* relationship with Defendants does not trump State Farm's right to relevant discovery. *Id.*

## IV.   CONCLUSION

For all the foregoing reasons, Physicians Group's Motion To Quash should be rejected.

Dated:  June 23, 2014


By:  _/s/ David I. Spector_____
       DAVID I. SPECTOR
       Fla. Bar No. 086540
       david.spector@akerman.com
       AKERMAN LLP
       222 Lakeview Avenue, Suite 400
       West Palm Beach, Florida 33401
       Telephone:  (561) 653-5000
       Facsimile:   (561) 659-6313

       --and--

       ROSS O. SILVERMAN
       ross.silverman@kattenlaw.com
       (*admitted pro hac vice*)
       ERIC T. GORTNER
       eric.gortner@kattenlaw.com
       (*admitted pro hac vice*)
       KATTEN MUCHIN ROSENMAN LLP
       525 West Monroe Street
       Chicago, IL 60661-3693
       Telephone:  (312) 902-5200
       Facsimile:   (312) 902-1061

       Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

**I hereby certify** that on **June 23, 2014**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record on the below Service List.

*/s/ David I. Spector*
DAVID I. SPECTOR
Fla. Bar No. 086540

## SERVICE LIST

| **Bruce S. Rosenberg** | **Gregory Anthony Zitani** |
|---|---|
| Rosenberg Law, PA | West Coast Law, PLLC |
| 2385 NW Executive Center Drive | 4046 Sawyer Rd |
| Suite 100 | Suite D |
| Boca Raton, FL 33431 | Sarasota, FL 34233 |
| 561.962.2736 (phone) | 941/552-0373 |
| 561.962.2710 (fax) | Fax: 941/377-3886 |
| rosenberg@rosenberglawpa.com | Email: greg.zitani@westcolaw.com |
| rosenberglawyer@aol.com | |
| | *Attorney for Defendants: W.S Media, Inc., W.S.* |
| *Attorneys for Defendants: David Balot and DB* | *Marketing, Inc. and William Sigelakis* |
| *Medical Consulting, Inc.* | |
| | *Service via CM/ECF* |
| *Service via CM/ECF* | |

| | |
|---|---|
| **John E. Johnson**<br>**William P. Cassidy , Jr.**<br>**Nicole Deese Newlon**<br>Johnson & Cassidy, P.A.<br>324 Hyde Park Avenue<br>Suite 325<br>Tampa, FL 33606<br>813/699-4857<br>Fax: 813/235-0462<br>Email: jjohnson@jclaw.com<br>Email: wcassidy@jclaw.com<br>Email: nnewlon@jclaw.com<br><br>*Attorneys for Defendants Physicians Group of Sarasota, L.L.C., Physicians Group, L.L.C. a foreign Delaware corporation, and Gary Kompothecras*<br><br>*Service via CM/ECF* | |

{29049983}