# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE & CASUALTY COMPANY,

      Plaintiffs,

vs.

PHYSICIANS GROUP OF SARASOTA,
L.L.C., PHYSICIANS GROUP, L.L.C.,
GARY KOMPOTHECRAS, DAVID
BALOT, DB MEDICAL CONSULTING,
INC., W.S. MEDIA, INC., W.S.
MARKETING, INC. and WILLIAM
SIGELAKIS,

      Defendants.

_____ /

Case No: 8:13-cv-01932-CEH-TGW

## PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (collectively "State Farm"), pursuant to Fed. R. Civ. P. 26(c) and M.D. Fla. L.R. 3.01 and 3.04, hereby move the court for entry of a Protective Order, in the form attached hereto as Exhibit A. In support thereof, State Farm states as follows:

## I.    INTRODUCTION

Dissatisfied with the Court's denial of their Motion to Dismiss, Defendants have proceeded to obstruct State Farm's discovery efforts, including State Farm's repeated attempts to reach a mutually agreeable protective order. Shortly after discovery began, State Farm sent Defendants a proposed protective order which would facilitate discovery, while also providing broad protections for the types of confidential information likely to be produced in this litigation,

specifically patients' protected health information.  For nearly one month, Defendants ignored State Farm's proposed protective order.  While  ignoring State Farm's repeated attempts to negotiate a protective order, Defendants simultaneously moved to quash State Farm's targeted third-party subpoenas, arguing that the subpoenas were improper because they sought confidential documents not covered by a protective order.  Tellingly, Defendants' motions failed to mention State Farm had already attempted to resolve concerns over the production of confidential documents by attempting to negotiate a proposed protective order with  Defendants. Finally, after continuing to ignore State Farm's emails for weeks, Defendants responded by doggedly refusing to agree to any protective order that did not include an onerous "Attorney's Eyes Only" (AEO) provision.  This provision would allow Defendants, at their unilateral discretion, to broadly designate unspecified documents as "attorneys' eyes only," and prevent State Farm from accessing these documents, creating a purposeful unnecessary impediment to State Farm's ability to conduct discovery.  This is Defendants' true intent here.

While protective orders are widely utilized in complex commercial litigation, AEO provisions, which prohibit a party from accessing documents produced in its own case, are rarely permitted and are reserved only for extraordinary circumstances, such as to prevent the sharing of high-level trade secrets in litigation between business competitors.  Here, no such extraordinary circumstances exist.  State Farm is not a medical clinic nor a medical or legal referral service, and thus there are no competitive business justifications to allow the extraordinary AEO provisions sought by Defendants.  Rather, the inclusion of an AEO provision would simply interfere with State Farm's ability to litigate this case without any countervailing benefit.

By contrast, State Farm's proposed protective order properly balances the parties' ability to preserve the confidentiality of sensitive documents with their ability to meaningfully participate in this litigation and communicate with counsel.  For the reasons that follow, State Farm respectfully requests that the Court enter a protective order in the form attached hereto as **Exhibit A ("Protective Order"),** which would facilitate the production of outstanding discovery and resolve the various discovery objections asserted by Defendants.

## II.   PROCEDURAL HISTORY AND BACKGROUND

### A.    State Farm's Narrowly-Tailored Party And Third-Party Discovery Requests

State Farm commenced this action on July 26, 2013, seeking to recover millions of dollars in damages it has incurred as a result of the fraudulent scheme orchestrated by Defendant Gary Kompothecras and carried out by the other Defendants.  As set forth more fully in the Complaint, State Farm alleges that as part and parcel of their systematic fraudulent insurance scheme, Defendants lured unwitting auto accident victims to call the 1-800-ASK-GARY Hotline ("Hotline"), which funnels callers to receive services at Physicians Group clinics, in violation of several important criminal, civil and administrative laws, including the Patient Brokering Act, (Fla. Stat. § 817.505), the Patient Self-Referral Act (Fla. Stat. § 456.053), the Anti-Kickback Statute (Fla. Stat. § 456.054), and the Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq.*).  (E.C.F. No. 1 at ¶ 1).  Through this scheme, Defendants obtained benefits under Florida's No-Fault Statute for services that were not lawfully rendered and therefore not compensable.

Following the denial of Defendants' Motions to Dismiss (E.C.F. No. 42), State Farm served both party and third-party discovery requests seeking information relevant to the claims and defenses in this case which will establish the existence, nature, and scope of the relationships among defendants.   These discovery requests also target relevant information relating to

Defendants' fraudulent concealment of the unlawful *quid pro quo* arrangements in which at least some personal injury attorneys have entered to secure referrals from the Hotline.  State Farm's party discovery generally requests ten categories of materials: (1) referrals from the Hotline to Physicians Group or other clinics; (2) communications between Defendants, the Hotline, and/or personal injury attorneys regarding referrals from the Hotline; (3) the financial arrangements between Defendants, the Hotline, and/or personal injury attorneys; (4) agreements between Defendants, the Hotline, and/or the personal injury attorneys for the referral of clients/patients; (5) measures taken to track patient referrals; (6) prior investigations by or formal complaint with the Florida Bar or other agencies into the referral arrangements between Defendants, the Hotline, and/or personal injury attorneys; (7) financial documents, including bank statements, tax returns, and loan submissions; (8) documents reflecting the formation, structure, and ownership of the corporate defendants, as well as information regarding their employees and lease arrangements; (9) documents relating to the patients treated at the Physicians Group clinics; and (10) documents relating to the affirmative defenses asserted, or likely to be asserted, by Defendants.  (*See* Exs. B-I)

On July 10, 2014, several Defendants served responses to State Farm's party discovery requests.  Although Defendants generally refused to produce any documents or responses to the vast majority of the discovery requests, in the few instances in which they agreed to produce some documents or response to interrogatories, they cited the lack of an agreed protective order as a basis to withhold this information.  *See* Gary Kompothecras Response To State Farm's First Set Of Document Requests (*See* Ex. J at requests 8, 9, 19, 20, 29, 30, 36); Physicians Group LLC Response To State Farm's First Set Of Document Requests (*See* Ex. K at requests 3, 4, 7, 9-14, 16, 17, 22, 24-26, 37-39, 41, 45); Physicians Group of Sarasota Response To State Farm's First

Set Of Document Requests (*See* Ex. L at requests 3, 4, 7, 9-14, 16, 17, 22, 24-26, 37-39, 41, 45 (incorporating the responses of Physicians Group LLC.))

State Farm has also served targeted subpoenas to Bank of America (the "Bank Subpoena") and four law firms (the "Law Firm Subpoenas").   The Bank Subpoena seeks critically relevant financial documents regarding State Farm's claims and Defendants' defenses in this case, such as documents that will confirm (or, potentially, refute) the financial relationships among Defendants, including but not limited to any payments or transfers of funds or assets among Defendants, shell companies, personal injury attorneys, or others involved in the fraud scheme.   The Law Firm Subpoenas also seek highly relevant documents relating to Defendants' fraudulent concealment of the unlawful *quid pro quo* arrangements that at least some personal injury attorneys have engaged in to secure referrals from the Hotline.   As discussed below, Defendants Gary Kompothecras and Physicians Group have filed a motion to quash these subpoenas based, in part, on confidentiality concerns which would have been alleviated had they negotiated in good faith on the proposed protective order.

### B.   State Farm Proposes A Protective Order With Substantial Confidentiality Provisions, Which Defendants Ignore.

In an effort to preemptively address and resolve potential confidentiality concerns, and thereby facilitate discovery in this complex litigation, State Farm reached out to opposing counsel to discuss the entry of a mutually agreeable protective order.   State Farm prepared a proposed protective order, materially identical to the type of protective order that has been entered in various cases like these across numerous districts, and on May 27, 2014, State Farm's undersigned attorneys distributed the draft protective order to Defendants' counsel for review and comment.   (*See* Ex. M)   State Farm's counsel explicitly requested that counsel respond

5

promptly to avoid delays in discovery, stating "we would like to get the Order entered ASAP" because "discovery has already commenced" and requested counsel's redline edits and feedback.

The proposed protective order distributed to Defendants, which is attached as Exhibit M, provides extensive safeguards regarding confidential information.  First, it allows all of the parties to designate documents and information produced during discovery as "Confidential."  In particular, the proposed order states:

> *Any information produced in this action that is reasonably believed, in good faith, by the producing party's counsel, to be proprietary or confidential may be designated as "Confidential Information."*

(*See* Ex. M at 2)

Second, the Protective Order substantially restricts the disclosure of "Confidential" materials by limiting the persons with whom those documents may be shared.  Specifically the Proposed Order instructs that items designated as "Confidential" can only be disclosed to the following persons:

> *(a)      The attorneys of record in this proceeding, each party's in-house counsel, and any attorneys retained by the parties in this action to consult on the action, and their respective associates, clerks, legal assistants, stenographic and support personnel;*
>
> *(b)      Organizations retained by the attorneys identified in paragraph 3(a) to provide support services in this action and the employees of said organizations;*
>
> *(c)      Independent experts and consultants retained in this proceeding and the employees of such experts and consultants who are assisting them who execute the undertaking attached hereto as **Exhibit "A"**;*
>
> *(d)      Deponents who have been advised of this Protective Order and their obligations thereunder;*
>
> *(e)      Persons who were the authors or original recipients of such documents;*
>
> *(f)      Witnesses and/or potential witnesses to the extent reasonably necessary to testify, prepare to testify, or determine the witness's or potential witness's knowledge as it pertains to this case;  and*

6

> (g)      *Such other persons as hereafter may be designated by written agreement of all parties in this action or by order of the Court, obtained by motion, permitting such disclosure.*"

(*See* Ex. M at 4-5)

Lastly, the proposed protective order substantially limits the circumstances under which materials marked "Confidential" may be used, namely only for the purpose of preparing for and conducting trial in this lawsuit.

Defendants chose to ignore State Farm's email and proposed protective order.  After they failed to respond to the May 27, 2014 email, State Farm sent a follow-up email to Defendants' counsel on May 30, 2014.  (*See* Ex. N)  State Farm again asked for Defendants' counsel to review and comment at their "earliest convenience," and even suggested a conference call to discuss any concerns regarding the proposed protective order that would help move the process forward in a timely manner.  *Id*.  Defendants again ignored this email and failed to respond to the proposed protective order for the next three weeks.

### C.      Defendants' Intervening Motion to Quash State Farm's Subpoenas

During the time Defendants failed to respond to State Farm's requests to discuss a protective order, which would have safeguarded confidential information, Defendants Gary Kompothecras and Physicians Group proceeded to file a Motion to Quash several of State Farm's third-party subpoenas largely ***on the basis of confidentiality concerns***.  (E.C.F. No. 56). For example, they challenged the Bank Subpoena because it sought purportedly "confidential financial documents."  (*Id*. at 9-14).  Similarly, they challenged all of the Law Firm Subpoenas because they encompassed purportedly "confidential medical documents."  (*Id*. at 14-22) According to Defendants, these documents include health information that is protected by HIPAA and therefore not subject to discovery.  Tellingly, in raising their confidentiality

7

concerns, Defendants failed to notify the Court that State Farm had already attempted to negotiate a mutually agreeable protective order, which would have addressed these concerns and safeguarded confidential information.

### D.     Defendants' Insistence On A Broad And Unnecessary "Attorney's Eyes Only Provision" In The Protective Order Is Part Of Their Strong-Arm Tactics In Attempting To Prevent State Farm From Conducting Discovery.

When Defendants finally responded to State Farm's overtures on June 17, 2014 – nearly one month after State Farm's email – Defendants proposed numerous changes to State Farm's proposed protective order, including several suggested edits to which State Farm willingly consented.  However, Defendants also insisted on adding an AEO provision, whereby they would have full discretion to add an AEO designation to any document produced in this litigation, thereby withholding the document from all State Farm personnel.  (*See* Ex. O)  Furthermore, the proposed AEO provisions instruct that "documents stamped 'CONFIDENTIAL, ATTORNEYS' EYES ONLY' must remain in the custody and control of the attorney(s) to whom they are produced.  Only counsel of record to this action may review documents stamped 'CONFIDENTIAL, ATTORNEYS' EYES ONLY.'"  (*Id.*)  Significantly, Defendants' proposed AEO language includes no standard for determining which documents the AEO designation is intended to encompass, other than a broad description of "confidential, proprietary and/or trade secret information."  Thus, the designation of AEO documents is entirely Defendants' choice.

State Farm's counsel responded to Defendants' proposal on June 23, 2014, informing them that State Farm's disagreed with the inclusion of any AEO provision, particularly because there is no need for one in this lawsuit.  (*See* Ex. P)  In a good-faith effort to resolve the issue, State Farm asked Defendants to explain the need for the AEO designation so that, if warranted, the parties "could move closer toward a resolution regarding the Protective Order."  *Id*.

Defendants' counsel responded by merely stating that "the discovery sought may warrant such [a] designation," and vaguely alluding to "sworn testimony from insurance defense counsel in another case that all major auto insurers writing policies in Florida are actively data mining and sharing my clients' information, which makes multiple layers of confidential designations even more appropriate."  (*See* Ex. Q)   After reaching this impasse, Defendants' counsel proposed that State Farm file the instant Motion.  *Id*

Although Defendants included a statement in their proposed protective order that the AEO "designation shall be minimally used and that it will make every effort to limit its use to information which is the producing party's confidential, proprietary and/or trade secret information," their conduct in discovery to-date shows that they do not intend to use purported protections of "confidential, proprietary and/or trade secret information" sparingly.  For instance, at the outset of this case, Physicians Group filed a preemptive motion for protective order to prevent State Farm from contacting any of its former employees, purportedly because "all" employees had signed confidentiality agreements and had confidential information that they were purportedly precluded from disclosing.  (E.C.F. No. 8.)  Although Physicians Group refused to provide a comprehensive set of these purported confidentiality agreements, its position is still that any confidentiality agreements trump the discovery provisions of the Federal Rules of Civil Procedure.[1]  (See 6/2/14 email from William Cassidy (*See* Ex. R)

In their discovery responses to-date (in which they largely refuse to provide any documents or information), Defendants repeatedly invoke the purported protections of "confidential, proprietary, or trade secret information."   For instance, in response to interrogatories asking Defendants to identify how the Hotline kept track of referrals or to identify

---

[1] Physicians Group's protective order also sought to prevent State Farm from asking Physicians Group, pursuant to provisions under the Florida PIP Statute, whether any State Farm insureds were referred from the Hotline.

any health care provider other than Physicians Group to whom the Hotline has referred patients, Defendant Physicians Group refused to provide this information, invoking an objection pertaining to "confidential information and/or trade secrets."   (*See* Ex. S at Response 4, Physicians Group LLC Response To State Farm's First Set Of Interrogatories.)   Similarly, Kompothecras objected to 18 out of 22 interrogatories on the basis that they encompassed confidential information.   (*See* Ex. T Kompothecras Response To State Farm's First Set Of Interrogatories.)   For example, Kompothecras contends that an interrogatory which asks him to "Identify each individual who worked for You relating to the Hotline, Physicians Group, WS Media, WS Marketing, or DB Consulting, and for each state the nature of their work, the time period of their work, and the reason(s) he or she stopped working for You" encompasses confidential information.   (*Id.* at Response to Interrogatory 12.)   Similarly, Kompothecras contends that an interrogatory that asks him to

> Identify any office space, administrative staff or services, or any other goods or
> services, tangible or intangible, that You have provided to any Defendant or
> lawyer who has been on the Hotline panel, or any Defendant or lawyer who has
> been on the Hotline panel has provided to You, and identify what was provided to
> or received by each person, the relevant time period, and any documents setting
> forth the terms under which such office space, administrative staff or services, or
> any other goods or services were provided or received.

also seeks confidential information.  (*Id.* at Response to Interrogatory 17.)

Defendants' misuse of "trade secret" and similar purported privileges is not limited to this litigation.   For instance, in depositions in state court cases, Defendants have invoked blatantly inappropriate instructions not to answer questions about the Hotline based on improper "trade secret" objections.  For instance, in a May 2012 deposition, when Defendant David Balot was asked about which entities the Hotline purportedly referred patients to *other than* Gary

Kompothecras' own Physicians Group medical clinics, the attorney for Physicians Group instructed Balot not to answer the question based on "trade secret information."

Q:  Okay.  Does 1-800-ASK-GARY refer patients to any physicians that aren't owned in whole or in part by Dr. Gary?

A:  Yes.

Q:  Which ones?

Mr. Zitani (Physicians Group attorney):  I am going to interpose an objection.  That would be trade secret information.  Unlike the referral service side, it's not a public record.

Mr. Hutchens (plaintiff attorney):  All right.  I'm going to certify that question.

(*See* Ex. U)

Thus, it appears that Defendants will attempt to invoke purported "trade secret" or "proprietary" protections to even basic – but essential – information about the Hotline in this case, such as to which medical clinics the Hotline refers patients.

## II.   ARGUMENT

### A.      Governing Standard

Rule 26(c) permits a court, upon motion of a party and for good cause, to make a protective order requiring that confidential documents "'be revealed only in a designated way.'" *Chicago Tribune Co. v. Bridgestone/Firestone Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001); *see also* Fed. R. Civ. P. 26(c).  "[T]he agreement of all parties is not required so long as certain conditions are met," namely, "some threshold showing of good cause to believe that discovery will involve confidential or protected information" which "may be done on a generalized as opposed to a document-by-document basis."  *Van v. Wal-Mart Stores, Inc.*, 2011 WL 62499, at *2 (N.D. Cal. Jan. 7, 2011) (citation omitted).  At the same time, in considering a motion for

protective order, courts must balance the party's interest in obtaining access against the other party's interest in keeping the information confidential.  *See Farnsworth v. Procter & Gamble, Co.,* 758 F.2d 1545, 1547 (11th Cir. 1985) (citations omitted).  Based on these principles, courts reserve AEO provisions – which bar parties from accessing information about their own cases – only for extraordinary circumstances, such as when trade secrets otherwise would be provided to a competitor.  *U.S. ex rel. Daugherty v. Bostwick Labs.,* 2013 WL 3270355, at *3 (S.D. Ohio June 26, 2013.)

### B.     State Farm's Proposed Protective Order Adequately Protects Confidential Information And Addresses The Privacy Concerns Raised By Defendants.

State Farm and Defendants all agree that the entry of a protective order is necessary to safeguard the disclosure of confidential information produced in discovery.  Such a protective order would facilitate discovery by allowing the parties to freely exchange documents without waiving a confidentiality protection that may be warranted.  The parties anticipate that some confidential information, including but not limited to, numerous patient health records and financial documents, will be exchanged during discovery.

State Farm's proposed protective order more than adequately protects the parties' interests in safeguarding confidential documents, while at the same time balancing the parties' interest, and need, in obtaining information and participating in litigation.  Its protections would also address all of the privacy concerns Defendants raised in their Motions to Quash, which object to the Law Firm and Bank Subpoenas because they seek confidential (1) financial documents, (2) medical documents, and (3) trade secrets/proprietary commercial information. (*see* E.C.F. No. 56 at ¶¶ 16, 20, 22).  Among other things, the Protective Order allows the parties to designate documents produced in discovery – such as financial records, medical records, and

trade secrets – as "Confidential."[2]   (*See* Ex. A)   Once such materials are designated as "Confidential," they are protected from disclosure to anyone other than persons and entities involved in the instant action, as defined in the Protective Order.   (*Id.* at 4)   Moreover, documents that are designated as "Confidential" can be used only in this litigation.  (*Id.* at 5-6)

The Protective Order is also specifically tailored to comply with HIPAA, which allows the production of documents containing health information without the consent of the patient, as long as a qualified protective order is in place.  The Protective Order tracks the requirements set forth in HIPAA for a qualified protective order.  *See* 45 C.F.R. § 164.512(e)(1)(v) (setting forth the requirements for a qualified protective order); *Allen v. Woodford,* 2007 WL 309485, at *5 (E.D. Cal. Jan. 30, 2007) (holding protective order "adequate under HIPAA to protect third party medical records" where protective order followed mandates of Section 164.512(e)(v)).  Indeed, pursuant to the Protective Order, documents containing protected health information, as the term is defined under HIPAA, are automatically deemed and designated confidential.  (*See* Ex. A at 3.)

Finally, the Protective Order would address Defendants' only articulated basis for needing an AEO provision, namely their concern that information produced in discovery would purportedly be shared with other insurers for unspecified "data mining."   In particular, when asked to articulate a need for an AEO provision, Defendants' only response was a vague reference to "sworn testimony from insurance defense counsel in another case that all major auto insurers writing policies in Florida are actively data mining and sharing my clients' information,

---

[2] At the same time, the Protective Order provides a mechanism for the parties to challenge the "confidential" designation.  (*See* Ex. A at 7); *see also In re Denture Cream Prods. Liab. Litig.*, 2013 WL 214672, at *4 (S.D. Fla. Jan. 18, 2013) (stating that "the mere fact that a party designates a document as either 'confidential,' for 'attorney's eyes only' or as containing 'trade secrets' pursuant to a confidentiality agreement does not, in and of itself, mean that those documents are, in fact, confidential") (quoting *In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1362 (N.D. Ga. 2002) (stating that "calling a document confidential does not make it so in the eyes of the court; these consensual protective orders merely delay the inevitable moment when the court will be called upon to determine whether Rule 26(c) protection is deserved")).

which makes multiple layers of confidential designations even more appropriate." (*See* Ex. Q) But the Protective Order already limits the entities with whom documents can be shared, prohibiting State Farm from sharing documents designated as Confidential from any entity or person not involved in this litigation.[3]   Thus, Defendants' "concerns" about State Farm purportedly sharing documents or information produced in this case with other insurers is pretextual. (*See* Ex. A at 4.)

> **C.   Defendants' Insistence On A Broad "Attorneys' Eyes Only" Provision Is Pretextual And Intended Solely To Impede Discovery Because This Case Does Not Invoke The Extraordinary Circumstances That Could Warrant Such An Intrusive Protective Order.**

Defendants' insistence on over-inclusive and limiting AEO designation language runs afoul of discovery's basic purpose to allow ***parties*** to obtain information, gather facts, and participate in litigation.   In determining whether good cause exists for an AEO designation, courts must balance the difficulties imposed upon the party against the need to protect information from abuse by business competitors seeking some competitive advantage from discovery information.   *Arvco*, 2009 WL 311125, at *6.   Courts utilize AEO provisions in protective orders only in extraordinary circumstances, such as to prevent the production of trade secrets in litigation between competitors.   *Bostwick Labs.*, 2013 WL 3270355, at *2 (quoting *Westbrook*, 2008 WL 839745, at *4).   Indeed, courts in many circumstances have found that only a specific showing of competitive harm justified a restriction of confidential or trade secret information to 'attorneys' eyes only."   *Arvco Container Corp v. Wyerhaueser Co.*, 2009 WL 311125, at *5 (W.D. Mich. Feb. 9, 2009); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 468 *aff'd*, 254 F.R.D. 470 (M.D. Fla. 2008) (stating that a party wishing to designate

---

[3] Moreover, to the extent that Defendants believe that particular documents produced in discovery are trade-secrets warranting additional protection, under Rule 26, they may seek a Court order as to those particular, identified documents that would further restrict the disclosure of such documents.

information as AEO "bears the burden of supporting that designation with good cause as required by Rule 26(b)(5)" and that a confidentiality agreement is not indicative of good cause). Notably, courts have also specifically held that protective orders without an AEO designation adequately protect confidential health information under HIPPA. *See Bostwick Labs.,* 2013 WL 3270355, at *3 (S.D. Ohio June 26, 2013) (stating "that confidential health information, *i.e.* patient health records which are protected under HIPPA, would be sufficiently protected by a protective order and would not be subject to an AEO designation"). The party moving for the AEO designation must detail the alleged harm it is likely to suffer absent the requested protection "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Bostwick Labs.*, 2013 WL 3270355, at *2 (quoting *Nemir v. Mitsubishi Motors, Corp.* 381 F.3d 540, 550 (6th Cir. 2004)).

Here, Defendants cannot meet their burden of showing any alleged harm they would suffer if an AEO designation is not included in the Protective Order. This case does not involve a controversy between direct (or even indirect) competitors because State Farm and Defendants compete in entirely separate markets. State Farm provides automobile insurance (as well as other insurance policies) and Physicians Group is a medical clinic that provides medical services. The other Defendants' connection to this litigation is either via Physicians Group or relating to the Hotline, a purported legal and medical referral service. The discovery in this case targets information pertaining to the true ownership and control of the Hotline, the nature of the referrals from the Hotline, and whether Defendants have *quid pro quo* relationships with personal injury attorneys via the Hotline. State Farm neither provides nor markets medical services nor does it advertise for or provide legal or medical referrals to anyone. Although Defendants may argue that State Farm, as an insurance company that reviews or pays their bills, is a party with adverse

interests akin to a business competitor, such a broad-based argument would require all discovery between medical providers and insurance companies to be conducted under unwieldy attorney's eyes only provisions.[4]  There is no support in law or fact for this.  Simply put, State Farm is not remotely a business competitor of Physicians Group (or any Defendants), and thus there is no basis to here to invoke the extraordinary provision of designating documents as attorney's eyes only.  *See Arvco Container Corp,* 2009 WL 311125, at *5; *Key Components, Inc. v. Edge Electronics, Inc.,* 3:07-CV-224, 2008 WL 4937560. At *5 (E.D. Tenn. Nov. 17, 2008). Moreover, given that Physicians Group routinely provides medical documents to State Farm, and other insurers, in the normal course of its business, it is difficult to discern how disclosure of such documents, in this litigation, would present the threat of commercial harm to any Defendant.  Similarly, there is no reason to conclude that any of the documents sought by State Farm (such as Defendants' bank statements or document revealing unlawful referral arrangements with personal injury attorneys) would give it a competitive advantage *vis a vis* Defendants.

In contrast, including a burdensome AEO designation in this case would substantially impair State Farm's ability to litigate this case.  AEO designations accomplish one purpose – they prevent the *parties* in a lawsuit from reviewing documents and information produced in discovery. The *parties*, not the lawyers, are the individuals or entities with the pertinent information required to prosecute or defend a case, and often possess unique information to evaluate documents and information produced in discovery.  As the Court noted in *Arvco*, "the

---

[4]  Nor does the fact that Physicians Group has sued State Farm in numerous state court actions alter the analysis. Although Physicians Group may claim that documents or information here could provide some unknown tactical advantage to State Farm in these underlying cases, the issues State Farm is litigating here are far different from the individual, single-claim pricing disputes that are the subject matter of the state court lawsuits.  Indeed, this Court recognized this in rejecting Physicians Group's abstention arguments raised in its motion to dismiss. .  (E.C.F. No. 42.)  Moreover, to the extent there is any overlap in issues being litigated between the state court cases and this case, Defendants have willingly introduced them into their litigation in their Counterclaims.  (E.C.F. No. 54.)

indiscriminate use of [AEO] protective orders does pose a significant handicap on the restricted litigant." *Arvco*, 2009 WL 311125, at *6.  Discovery, trial preparation, and trial would be made more difficult and expensive if State Farm's attorneys cannot disclose material facts or consult with potential witnesses on important issues.  *Id.*  For example, under normal circumstances, State Farm personnel who might be witnesses in this case could be involved in evaluating the accuracy and significance of the materials produced during discovery, but would be unable to do so if such documents were designated under the AEO provision.  Similarly, an AEO provision would obstruct the possibility of settlement because it is impossible for an "attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client."  *Id.*; *see also DeFazio v. Hollister, Inc.*, 2007 WL 2580633, at *2 (E.D. Cal. Sept. 5, 2007); *In re Michael Wilson & Partners*, 2007 WL 3268475, at *3 (D. Colo. Oct. 30, 2007) (finding that a standard protective order was sufficient because parties were not direct competitors); *Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, 2008 WL 839745, at *4 (W.D. Tenn. Mar. 27, 2008).  In short, State Farm would be "kept in the dark about important facts of the case" if an AEO designation is in place.

Moreover, Defendants' true purpose here is to make discovery difficult, if not impossible, for State Farm.  The immediate flood of motions to quash, motions for protective orders, and the evasive non-responses provided by Defendants to State Farm's initial discovery efforts make this apparent.  First, the Defendants filed a preemptive protective order just weeks into this case to prevent State Farm from contacting any former Physicians Group employees, based on purported "confidentiality agreements," and also sought to prevent State Farm from asking Physicians Group (or the State Farm insured patient) whether any State Farm insureds were referred from the Hotline, which State Farm was entitled to do under Florida's PIP Statute.  (E.C.F. No. 8;

17

E.C.F. No. 13.)  As this Court knows, Defendants have filed motions for protective orders or to quash virtually every third-party subpoena served by State Farm.  As subsequent motions to compel to be filed by State Farm will show, they have also refused to provide any meaningful discovery in response to State Farm's document requests and interrogatories, including invoking frivolous objections of "trade secret, proprietary, or confidential information."  Indeed, they appear to treat *any* information about the Hotline's referrals or operations as filing under the protections of "confidential, proprietary, or trade secret information" – even going so far as to instruct witnesses not to answer deposition questions regarding the Hotline's referrals on this basis.

As result, Defendants proposed proclamation in the protective order that the AEO designation will be "minimally used" and limited to "confidential, proprietary and/or trade secret information" is not be trusted based on prior conduct in this and other cases.  Their initial discovery (non)responses reveal that they intend to use this AEO provision across the board pertaining to virtually *any* information regarding the Hotline, which is the heart and soul of this case, thereby invoking another tactic making discovery unnecessarily burdensome.  The proposed protective order fully protects any confidential or trade secret information Defendants claim could be produced here, and the Court should enter it as attached to this Motion.

## CERTIFICATE OF COMPLIANCE

State Farm's undersigned counsel certifies that, pursuant to M.D. Fla. L.R. 3.01(g), he has conferred in good faith with Defendants' counsel concerning the entry of the proposed Protective Order in a good faith effort to resolve the issues addressed herein, and that Defendants' counsel have refused to agree to the entry of the proposed Protective Order attached hereto as Exhibit A.

**WHEREFORE**, for the reasons set forth above, Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company, respectfully request that the Court enter the proposed Protective Order in the form attached hereto as Exhibit A and grant State Farm such further and additional relief as the Court deems necessary and proper.

Dated:  July 25,  2014

By:  */s/ David I. Spector*_____
    DAVID I. SPECTOR
    Fla. Bar No. 086540
    david.spector@akerman.com
    AKERMAN LLP
    222 Lakeview Avenue, Suite 400
    West Palm Beach, Florida 33401
    Telephone:  (561) 653-5000
    Facsimile:  (561) 659-6313

    --and--

    ROSS O. SILVERMAN
    ross.silverman@kattenlaw.com
    (*admitted pro hac vice*)
    ERIC T. GORTNER
    eric.gortner@kattenlaw.com
    (*admitted pro hac vice*)
    KATTEN MUCHIN ROSENMAN LLP
    525 West Monroe Street
    Chicago, IL 60661-3693
    Telephone:  (312) 902-5200
    Facsimile:  (312) 902-1061

    Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

**I hereby certify** that on July 25, 2014, I electronically filed the foregoing with the Clerk

of the Court by using the CM/ECF system, which will send a notice of electronic filing to all

counsel of record on the below Service List.

/s/ David I. Spector
DAVID I. SPECTOR
Fla. Bar No. 086540

**SERVICE LIST**

| | |
|---|---|
| **Bruce S. Rosenberg**<br>Rosenberg Law, PA<br>2385 NW Executive Center Drive<br>Suite 100<br>Boca Raton, FL 33431<br>561.962.2736 (phone)<br>561.962.2710 (fax)<br>rosenberg@rosenberglawpa.com<br>rosenberglawyer@aol.com<br><br>*Attorneys for Defendants: David Balot and DB Medical Consulting, Inc.*<br><br>*Service via CM/ECF* | **Gregory Anthony Zitani**<br>West Coast Law, PLLC<br>4046 Sawyer Rd<br>Suite D<br>Sarasota, FL 34233<br>941/552-0373<br>Fax: 941/377-3886<br>Email: greg.zitani@westcolaw.com<br><br>*Attorney for Defendants: W.S Media, Inc., W.S. Marketing, Inc. and William Sigelakis*<br><br>*Service via CM/ECF* |

**John E. Johnson**
**William P. Cassidy , Jr.**
**Nicole Deese Newlon**
Johnson & Cassidy, P.A.
324 Hyde Park Avenue
Suite 325
Tampa, FL 33606
813/699-4857
Fax: 813/235-0462
Email: jjohnson@jclaw.com
Email: wcassidy@jclaw.com
Email: nnewlon@jclaw.com

*Attorneys for Defendants Physicians Group of*
*Sarasota, L.L.C., Physicians Group, L.L.C. a*
*foreign Delaware corporation, and Gary*
*Kompothecras*

*Service via CM/ECF*

{29274281;4}