**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE & CASUALTY COMPANY,

    Plaintiffs,

v.                                                CASE NO: 8:13-cv-01932-CEH-TGW

PHYSICIANS GROUP OF SARASOTA, L.L.C.,
PHYSICIANS GROUP, L.L.C., a foreign Delaware
Corporation, GARY KOMPOTHECRAS, DAVID
BALOT, DB MEDICAL CONSULTING, INC.,
W.S. MEDIA, INC., a foreign Delaware corporation,
W.S. MARKETING, INC., and WILLIAM SIGELAKIS,

    Defendants.

PHYSICIANS GROUP, L.L.C., a foreign Delaware
Corporation,

    Counterclaim Plaintiff

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE & CASUALTY COMPANY,

    Counterclaim Defendants
                                              /

**PHYSICIANS GROUP AND DR. GARY KOMPOTHECRAS'
RESPONSE IN OPPOSITION TO STATE FARM'S MOTIONS TO COMPEL**

On November 20, 2014, State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (collectively, "State Farm"), filed a Motion to Compel Physicians Group, L.L.C., to Produce Documents Responsive to State Farm's First Set of Document Requests. (Dkt. 123). On November 24, 2014, State Farm filed a Motion to Compel Physicians Group of

Sarasota, L.L.C., to Produce Documents Responsive to State Farm's First Set of Document Requests, (Dkt. 126), as well as a Motion to Compel Dr. Gary Kompothecras to Produce Documents Response to State Farm's First Set of Document Requests, (Dkt. 127). All three Motions will be collectively referred to herein as the "Motions to Compel" or, alternatively, "Motions." The Motions ask this Court to compel the production of similar materials and State Farm relies upon similar arguments in each of the Motions to support the requested production. Accordingly, Physicians Group, L.L.C., Physicians Group of Sarasota, L.L.C. (collectively, "Physicians Group"), and Dr. Gary Kompothecras ("Dr. Kompothecras") hereby file their Response in Opposition to State Farm's Motions to Compel. Based on the reasons set forth below, this Court should deny the Motions.

## I. INTRODUCTION

At its core, this matter involves State Farm's refusal to pay over $10 million owed to Physicians Group for treatments that Physicians Group provided to its insureds. State Farm has made it a practice to short change Physicians Group through a software program that automatically limits its payments to Florida personal injury protection ("PIP") medical providers to 200 percent of the allowable amount under the participating physicians' schedule of Medicare Part B. Under Florida's PIP state, an insurer *must* pay a medical provider for "reasonable expenses . . . for medically necessary . . . services," § 627.736(1)(a), *Fla. Stat.*, but *may* use a fee schedule to limit reimbursements, § 627.736(5)(a)2., *Fla. Stat.* In spite of this clear statutory language, State Farm took the position that it may use the Medicare fee schedule to limit reimbursements without including language in its policies that would give its insureds notice of its intent to do so.

On July 3, 2013, the Florida Supreme Court explicitly rejected State Farm's position in deciding *Geico General Insurance Company v. Virtual Imaging Services, Inc.*, in which the Court

held that "a PIP insurer cannot take advantage of the Medicare fee schedules to limit reimbursements without notifying its insureds by electing those fee schedules in its policy." 141 So. 3d 147, 160 (Fla. 2013). State Farm made no such election in the policies involved in this matter and in other disputes between State Farm and Physicians Group. Instead, State Farm's policies expressly elect to pay claims pursuant to section 627.736(1)(a), Florida Statutes, which obligates it to pay 80 percent of all "reasonable charges" billed by the medical provider. Thus, State Farm is obligated to pay Physicians Group's reasonable expenses in accordance with the terms in its own policies. This matter involves State Farm's attempts to avoid that obligation.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Recognizing *Virtual Imaging* as the writing on the wall for its Florida PIP cases, State Farm attempted to preempt Physicians Group's efforts to collect the millions State Farm owed Physicians Group and filed its Complaint against Physicians Group, Dr. Kompothecras, and the other Defendants in this case on July 24, 2013, just twenty-one days after the date of the *Virtual Imaging* decision. (Dkt. 1). In its Complaint, State Farm asserts that it is not obligated to pay Physicians Group. Further, State Farm argues that Physicians Group and the other Defendants are liable to State Farm for damages, on the basis that the "services and treatments" provided by the Defendants "were not lawful when they were rendered" because Physicians Group and the other Defendants "intentionally violated important criminal, civil, and administrative laws to lure unwitting motor vehicle accident victims to receive services and treatments at Physicians Group clinics." (Dkt. 1, ¶1). State Farm has repeated this same assertion almost verbatim at every turn in this litigation. (Dkt. 14, pgs. 2-3; Dkt. 50, pg. 3; Dkt. 57, pg. 3; Dkt. 64, pg. 3; Dkt. 72, pg. 2; Dkt. 73, pg. 4; Dkt. 75, pg. 3; Dkt. 83, pg. 1; Dkt. 84, pg. 1; Dkt. 85, pg. 1; Dkt. 86, pg. 1; Dkt. 101, pg. 4; Dkt. 128, pgs. 2-3; Dkt. 129, pg. 2).

Specifically, State Farm alleges a fraud scheme that "depends on referrals to Physicians Group from a purportedly independent and legitimate medical and legal referral service, the 1-800-ASK-GARY hotline." (Dkt. 1, ¶3). State Farm asserts:

> [c]ontrary to its advertising, ASK GARY is not independent and legitimate medical and legal referral service. In fact, it is secretly owned and controlled by Kompothecras and exists to unlawfully steer all unwitting callers to Kompothecras' own clinics, the Physicians Group clinics, and to PI [personal injury] Attorneys who pay fees to ASK GARY to obtain client referrals and, at least in some instances, secretly agree to refer their clients to the Physicians Group clinics.

(Dkt. 1, ¶4).

State Farm further asserts that Defendants have attempted to conceal their fraud through the creation of "shell companies and nominee owners to purportedly own and operate ASK GARY," (Dkt. 1, ¶5), with the purpose of "steering all unwitting callers to treat at Physicians Group clinics and for representation by PI Attorneys who have paid fees to ASK GARY for referrals and, at least in some instances, secretly agreed to refer their clients to Physicians Group clinics," (Dkt. 1, ¶6). Recognizing these claims for what they are—a tactical gambit designed to get State Farm out of paying what it rightfully owes to Physicians Group—Physicians Group, L.L.C., filed a Counterclaim against State Farm for the millions State Farm still owed to Physicians Group for services rendered by Physicians Group to State Farm Insureds. (Dkt. 45; Dkt. 54).

State Farm's Complaint is replete with contradictory and confusing allegations, leaving the Defendants with little understanding as to the actionable misconduct upon which State Farm relies in its demand for relief. The single largest recurring issue is attempting to ascertain which of the insurance claims State Farm is arguing it should either not have to pay, or that it was forced to pay for which it now seeks reimbursement. Still today, State Farm disguises whether it is seeking relief based on the insurance claims in which State Farm's insureds were referred to Physicians Group via a hotline, or is it seeking relief as to all claims for payment presented by Physicians

4

Group to State Farm, regardless of whether or not the subject insureds were referred through a hotline.

State Farm argues that it has paid $19 million in total No-Fault Benefits to Physicians Group since 2005, but it also attaches as Exhibit 3 to its Complaint a list of claims which purport to evidence "more than 100 claims in which State Farm paid more than $480,000 . . . for services and treatments that were not lawfully rendered to State Farm insureds because the patients were unlawfully obtained and referred by ASK GARY to Physicians Group clinics." (Dkt. 1, ¶10). In the Complaint, State Farm sets the amount owed at a minimum of $480,000, yet simultaneously arguing that its damages are "more than $480,000." (Dkt. 1, ¶¶133, 138, 142). Although State Farm believes it to be entitled to more than $480,000 in damages, it has failed to articulate or present any clear allegation of the actual amount of damages it seeks in this action.

State Farm has done little to clarify the confusion created by its Complaint during the course of this litigation. As set forth above, State Farm filed its Complaint on July 24, 2013, yet the following exchange occurred over a year later during a hearing on November 20, 2014 on State Farm's Motion to Stay Briefing on Physicians Group's Motion for Summary Judgment on the Amended Counterclaim. *See* **Exhibit A**, the relevant excerpts from the transcript of the November 20, 2014 hearing. During the hearing, counsel for Physicians Group argued as follows:

> THE COURT: You just said that you thought that, with regard to the individuals that were treated by Physicians Group, that the counterclaim is compulsory. My recollection from my review is that there are some 79 people that were not referred to Physicians Group via the hotline. Do you believe that those counterclaims are compulsory?
>
> MR. JOHNSON: I don't know because I don't know what they're pleading, Your Honor. If they're pleading the $480,000 on Exhibit 3 and that's it, then they probably are not compulsory; but if they're going to say that these other 79 claims are nonetheless illegal because they were procured through a quid pro quo relationship with the lawyers who were representing those clients, then yes, I would submit that they could be considered to be compulsory counterclaims.

5

> Ant this has been a very carefully pled complaint. I mean, it's wanting to have your cake and eat it, too. . . . But it's pretty clear that they've stake out a position on Exhibit 3 that, 'Yeah, we really want to litigate those'; but then when you look at Paragraph 1 of the complaint and you look at Count 5 of the complaint, it's as if they're saying, 'We want you to have free rein to do what we want to; and just because a claim arises from a patient who was not referred through Ask-Gary, they're not saying that they're not suing 'em now. That's not what their complaint says. It's kind of what their counsel said, but it's not what their complaint says.
>
> So, we -- we certainly believe that those 79 claims are within the ambit of 1367 and supplemental jurisdiction. They may be compulsory counterclaims based upon how State Farm actually decides they want to present this case.

*See* **Exhibit A**, pgs. 40-42.

Thereafter, counsel for State Farm made the following statement on the record as to its claims for damages:

> [Mr. Spector]: First of all, the last thing I just heard about he doesn't -- Mr. Johnson doesn't know what we're suing him about, let me make it very clear, because Judge Kovachevich seemed to understand it. ***We are suing Physicians Group over the callers that went through the hotline, period.*** There's no question in our complaint that we make that explicitly clear.

*See* **Exhibit A**, pg. 42 (emphasis added).

These statements from State Farm's counsel indicate that its claim is limited to the list of insureds in Exhibit 3 to its Complaint, as this is the only evidence State Farm has thus far produced or presented of the alleged insureds referred to Physicians Group through the hotline. State Farm's claim for relief should therefore be limited to this subset of insurance claims, based on the prior assertions of its counsel to this Court, and based on the evidence produced to date.

The second issue with State Farm's Complaint and the allegations set forth therein is the lack of clarity as to the relevant time period at issue in this litigation. State Farm broadly asserts that the "Defendants' scheme began in at least 2005," (Dkt. 1, ¶11), and that it is Dr. Kompothecras' secret control of the hotline which creates a "fraudulent scheme." Subsequently,

in the same Complaint, State Farm alleges that Dr. Kompothecras' secret control over the hotline did not develop until "2007 and 2011 . . . [when] Defendants created shell companies with nominee owners and took other actions to foster the illusion that ASK GARY was a legitimate medical and legal referral service that was independent from Kompothecras and Physicians Group." (Dkt. 1, ¶9). To further confuse the issue, the only documentation State Farm has produced evidencing Physicians Group's alleged unlawful treatment of State Farm insureds is the list contained in Exhibit 3 of the Complaint, which shows no claims arising earlier than 2009. (Dkt. 1, Ex. 3). As set forth above, State Farm asserted during the November 20, 2014 hearing that it is only seeking relief as to callers referred through the hotline, and the earliest claim relating to a referral through the hotline as identified in State Farm's Complaint, Exhibit 3, is dated in 2009. Thus, the year 2009 is the earliest claim for which State Farm seeks damages in this action.

State Farm's lack of clarity has made it difficult for Physicians Group and Dr. Kompothecras to know how to respond to State Farm's discovery requests. State Farm propounded its first set of document requests to Physicians Group and Dr. Kompothecras on May 15, 2014. (Dkt. 123, Ex. 2; Dkt. 126, Ex. 2; Dkt. 127, Ex. 1). Physicians Group and Dr. Kompothecras have committed to a rolling discovery process. Nevertheless, many of the requests propounded by State Farm are overbroad in their temporal and factual scope, and Physicians Group objected accordingly.

For example, some of the requests at issue seek information on the corporate structure and ownership of Physicians Group. Physicians Group's structure is irrelevant to this action, contrasted with the organization and control of the hotline. Physicians Group has objected to requests that seek confidential financial information, completely unrelated to the alleged fraudulent acts set forth in the Complaint. Further, most of the requests propounded by State Farm lack any temporal

7

limitation, and for the few that did contain such a limitation, State Farm utilized the irrelevant date of 2005, not 2009. Accordingly, Physicians Group objected to these requests.

Apparently frustrated with Physician Group's unwillingness to compile and produce documents that have nothing to do with the claims in this case, and that go well beyond the relevant time period at issue in this matter, as framed by State Farm, State Farm filed the Motions to Compel against Physicians Group, L.L.C., on November 20, 2014, (Dkt. 123), and against Physicians Group of Sarasota, L.L.C., and Dr. Kompothecras on November 24, 2014.[1] (Dkt. 126; Dkt. 127). Based on the arguments set forth below, the Motions to Compel should be denied in their entirety.

## III. ANALYSIS

Physicians Group and Dr. Kompothecras consented to a rolling production, which remains ongoing (as does State Farm's production), and the Defendants have produced in good faith any non-objectionable documents responsive to State Farm's requests, to the extent the Defendants did not assert an objection. State Farm's Motions to Compel involve eight disputed requests in total, consisting of five identical requests to both of the Physicians Group entities, (Dkt. 123, pgs. 9-25; Dkt. 126, pgs. 9-25), and three to Dr. Kompothecras, (Dkt. 127, pgs. 9-24). Several of the requests at issue seek the production of similar information, implicating the same issues and objections. For ease of review, Physicians Group and Dr. Kompothecras have grouped these requests and their objections together for purposes of the analysis set forth herein.

### A. *Legal Standard*

Federal Rule of Civil Procedure 26(b) governs the scope of discovery and notes, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of

---

[1] State Farm points out that Physicians Group and Dr. Kompothecras had not yet produced any documents at the time they served the motion to compel. State Farm omitted the fact that it also did not produce any documents until the entry of a protective order governing confidential documents.

8

the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." Fed. R. Civ. P. 26(b)(1). Despite State Farm's assertion that the responding party has the burden of establishing valid objections to relevant discovery requests, "[t]he party seeking discovery has the threshold burden of showing that the requested discovery is relevant." *Yomak v. Yomak*, No. 2:14-cv-33-FtM-29CM, 2014 WL 6883109, at *2 (M.D. Fla. Dec. 5, 2014) (citing *Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11-cv-69-Orl-19GJK, 2011 WL 6936485, at *2 (M.D. Fla. Dec. 7, 2011)).

A district court may deny a motion to compel if the court concludes that the questions are irrelevant. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). Production requests that have no temporal limitation are overbroad. *Reist v. Source Interlink Companies, Inc.*, No. 2:10-cv-269-FtM-36SPC, 2010 WL 4940096, at *3 (M.D. Fla. Nov. 29, 2010). Similarly, production requests that have temporal limitations that extend beyond the relevant timeframe of the matter are overbroad. *See Pepperwood of Naples Condominium Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 2:10-cv-753-Ftm-36SPC, 2011 WL 4596060, at *9 (M.D. Fla. Oct. 3, 2011).

### B. *Physicians Group Partially Responded to Request Nos. 1 and 40 Seeking the Production of Financial Information to the Extent the Requests were Designed to Seek Relevant Information.*

In request Nos. 1 and 40 in State Farm's First Set of Document Requests to Physicians Group, State Farm seeks "[a]ll of Your federal income tax returns, W-2s, 1099s, K1s, and general ledgers," and "[a]ll documents reflecting any payments or other things of value provided to You or received by You from the Hotline or any Defendants," respectively. (Dkt. 123, Ex. 2, pgs. 5, 9; Dkt. 126, Ex. 2, pgs. 5, 9). Physicians Group initially objected to these requests on the grounds that they were overly broad in subject matter and temporal scope, sought information irrelevant to any claims or defenses of the parties, and sought confidential information. (Dkt. 123, Ex. 6, pgs.

9

4, 16-17; Dkt. 126, Ex. 7, pgs. 4, 14). In a good faith effort to resolve these objections, Physicians Group subsequently agreed to produce, and has since produced, certain documents responsive to these requests pursuant to a confidentiality agreement.

In order to identify documents that reflected any payments among the Defendants, Physicians Group searched its records and secured documents identifying payments paid to or received from the other Defendants. As a result, Physicians Group has produced the following documents to State Farm, some of which were marked as confidential:

- In response to Request No. 40, as well as Request Nos. 10, 11, and 19, Physicians Group produced:

    o Transaction inquiry reports (payables) from Physicians Group to Defendant W.S. Marketing, Inc. ("WS Marketing"), Defendant W.S. Media, Inc. ("WS Media"), and Super Media from March 2010 to December 2014 (*marked as confidential*);

    o Trademark information regarding:
      - ASK GARY, filed March 25, 2005
      - 1-800-ASK-GARY, filed March 9, 2005
      - ASKGARY, filed July 23, 2010;

    o Fictitious name information regarding ASK GARY, dated July 26, 2007 and April 19, 2011;
    o Letter from Dr. Kompothecras to Defendant William Sigelakis ("Sigelakis") revoking use of fictitious name (1-800-ASK-GARY), dated November 15, 2014; and

    o Cancellation of Fictitious Name Registration regarding ASK GARY dated April 19, 2011.

- In response to Request No. 40, as well as Request Nos. 16, 24, and 39 (*all marked as confidential*), Physicians Group produced:

    o Physician Group check requests for checks payable to Defendant DB Medical Consulting, Inc. ("DB Medical") from 2010 to 2013;

    o Physicians Group check register showing payments made to DB Medical;

    o Invoices between Physicians Group and DB Medical from December

2009 to January 2014; and

- o Physicians Group check stubs for checks payable to DB Medical.

- In response to Request No. 40, as well as Request Nos. 24 and 39 (*all marked confidential*), Physicians Group produced:

    - o Transaction history reports (payables), and related invoices relating to advertising costs, regarding payments from Physicians Group to WS Media from 2009 to 2011.

- In response to Request No. 40, as well as Request Nos. 24 and 39 (*all marked confidential*), Physicians Group produced:

    - o Transaction history reports (payables), and related invoices relating to advertising costs, regarding payments from Physicians Group to WS Media from 2011 to 2014;

    - o Transaction history reports (payables), with related invoices, check requests, and check stubs, regarding payments from Physicians Group to DB Medical from 2009 to 2014; and

    - o Transaction history reports (payables), with related invoices, regarding payment from Physicians Group to William Sigelakis from 2009.

The documents produced are also responsive to request No. 1 in which State Farm seeks Physicians Group's general ledgers. .

To the extent State Farm asserts that Request Nos. 1 and 40 entitle them to any additional documents not previously produced, including documents evidencing additional financial transactions for Physicians Group or payments made to and received by Dr. Kompothecras, the request is overbroad in temporal scope and seeks the production of private financial information that is not reasonably designed to lead to the discovery of relevant information. The responsive documents reflect all payments made between or among Physicians Group and the other Defendants, with the exclusion of Dr. Kompothecras.

Further, Physicians Group produced the documents set forth above in a good-faith effort to resolve the discovery dispute. Though the requests contained no time limitation, Physicians

Group produced responsive documents from January 1, 2009 through present, or the date on which State Farm's own counsel asserted its causes of action commenced. Documents predating 2009 are irrelevant, as the earliest insurance payment State Farm identified in the Complaint as a result of the alleged fraudulent scheme occurred in 2009.

Despite Physicians Group's and Dr. Kompothecras' substantial production to date, State Farm argues that additional documents should be produced. Specifically, State Farm seeks the production of additional payment records from Physicians Group to Dr. Kompothecras. Though State Farm alleges that Dr. Kompothecras owns and controls Physicians Group, and that the relationship among Defendants is unlawful because Dr. Kompothecras exercises secret control of the companies that make up the ASK GARY referral network and operate the hotline, additional financial records reflecting payments Physicians Group made and received are irrelevant.

The Fifth Circuit Court of Appeals previously addressed this very issue, and stated:

> Information about the financial status of a putative defendant would be interesting to any person or agency concerning a civil suit for damages. Under most circumstances, however, a private plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered. . . . [the Defendant's] financial status, like the financial status of most putative defendants, is not relevant to any issue that will be raised in the contemplated lawsuit.

*F.T.C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) (internal citations omitted). While the financial records of Physicians Group would likely be just as interesting to State Farm in this case as the records in the *Turner* case in the Fifth Circuit, State Farm has not and cannot meet its burden of demonstrating the relevance of these records.

Other courts within this District have acknowledged the persuasive nature of opinions from Florida state courts on the specific issue of tax returns:

> Although federal district courts are split as to whether as to whether tax returns are privileged and entitled to enhanced protection from discovery, the Eleventh Circuit has acknowledged that a court is substantially justified in relying on out-of-circuit

caselaw that recognizes a general public policy against disclosure of tax returns, but has not adopted a heightened showing beyond relevance.

*Yormak v. Yormak*, No. 2:14-cv-33-FtM-29CM, 2014 WL 4626559, at *3 (M.D. Fla. Sept. 16, 2014) (citing *Maddow v. Proctor & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997)); *see also Berlinger v. Wells Fargo, N.A.*, No. 2:11-cv-459-FtM-29CM, 2014 WL 6686276, at *3 (M.D. Fla. Nov. 26, 2014) (applying Florida law in determining that Plaintiffs failed to demonstrate the relevance of a party's personal financial information, and therefore not requiring its production). Florida courts have consistently applied the general rule that personal financial information may only be discovered in aid of execution after judgment has been entered, unless it is relevant to the claims. *See, e.g.*, *Friedman v. Heart Institute of Port St. Lucie, Inc.*, 863 So. 2d 189, 194 (Fla. 2003). As State Farm has not proved the relevance of Physician Group's financial information to its claims, beyond that already produced by Physicians Group in this action, State Farm's Motions requesting the production of such information should be denied.

While State Farm cites a litany of cases, they are all inapposite to this case and State Farm's Complaint. There is no allegation that Dr. Kompothecras was not the real owner of Physicians Group. There is no allegation in this case that Dr. Kompothecras was a hidden owner of Physicians Group. Absent some allegation concerning fraudulent concealment of Dr. Kompothecras' ownership of Physicians Group, or that his disclosed ownership is a fraud, there is no basis other than data mining for State Farm to seek this financial information.

Physicians Group produced documents responsive to request Nos. 1 and 40, as part of its agreement to produce documents on a rolling basis. The documents produced by Physicians Group reflect payments among the Defendants within the relevant time period of this matter and are therefore relevant to the claims at issue in this litigation. As set forth by State Farm in its Complaint, the issues involve payments between Physicians Group and the other Defendant

companies as part of the alleged fraudulent scheme in which Dr. Kompothecras exerted secret control over the ASK GARY referral network companies. The payments between Physicians Group and Dr. Kompothecras are not at issue, and any financial records relating to that relationship are irrelevant. Further, as set forth above, State Farm has maintained in this Court that the earliest claim at issue was submitted in 2009; therefore, any documents predating 2009 are outside the relevant time period of this matter. State Farm's Motion to Compel should be denied as to request Nos. 1 and 40.

   **C.**  ***Physicians Group Responded to Request Nos. 47, 22, and 37 to the Extent these Requests Sought the Production of Relevant and Non-Privileged Communications.***

State Farm's requests Nos. 47, 22, and 37 in State Farm's First Set of Document Requests to Physicians Group seek "[a]ll documents relating to communications with Jonathan Knehans, including but not limited to any communications relating to 'ASK GARY' advertisements' compliance with Florida Chiropractors Advertising rules and regulations"; "[a]ll documents reflecting communications with Gary Kompothecras regarding the Hotline"; and "[a]ll documents reflecting any communications between You and any of the Defendants about the Hotline," (Dkt. 123, Ex. 2, pgs. 8-10; Dkt. 126, Ex. 2, pgs. 8-10). Physicians Group initially objected to all three requests on the grounds that they were overly broad in subject matter and temporal scope, sought information irrelevant to any claims or defenses of the parties, and sought confidential information. (Dkt. 123, Ex. 6, pgs. 11, 15, 19; Dkt. 126, Ex. 7, pgs. 10, 13, 16). Physicians Group additionally asserted that it would undertake a reasonable search for responsive documents, even though it did not believe that it had any documents responsive to request No. 22, (Dkt. 123, Ex. 6, pg. 11; Dkt. 126, Ex. 7, pg. 10), that it would produce non-objectionable responsive documents to request No. 37, (Dkt. 123, Ex. 6, pg. 16; Dkt. 126, Ex. 7, pg. 13), and that the information sought in request

14

No. 47 was further protected by the attorney-client privilege, (Dkt. 123, Ex. 6, pg. 19; Dkt. 126, Ex. 7, pg. 16).

Physicians Group has agreed to produce non-privileged communications with Jonathan Knehans as part of an agreement with State Farm to narrow the scope of the request (i.e. "relating to") as part of its rolling production.

With respect to request No. 22 that seeks all communications between Dr. Kompothecras and Physicians Group regarding the hotline, the framing of the request makes it difficult, if not impossible, for Physicians Group to form a cogent response and/or to produce responsive documentation. Nevertheless, Dr. Kompothecras' production in response to request No. 8 in the First Set of Document Requests State Farm issued to him address the same documents sought in request No. 22. As part of the rolling production, Defendants have agreed to further attempt to run electronic searches of several terms to determine if there is a way to narrow down this request. This process is underway.

As to request No. 37 that seeks all communications between Physicians Group and any other Defendant regarding the hotline, Request No. 37 is overbroad on its face because it has no temporal limitation, *Reist*, 2010 WL 4940096, at *3, and because the limitation to communications concerning the hotline is insufficient to narrow the scope of the production request. Instead, utilizing 2009 as the relevant time period of production, and limiting the scope of production to communications only relating to Dr. Kompothecras' alleged "secret" control of the hotline, Physicians Group has no documents responsive to this request.

Physicians Group asserts that it has not failed to meet its good faith obligation to produce non-objectionable documents responsive to requests Nos. 47, 22, and 37. Documents previously produced by Dr. Kompothecras relating to the hotline are responsive to request 22, and Physicians

Group will produce non-privileged communications responsive to request No. 47. Although request No. 37 is overbroad on its face, Physicians Group believes that it possesses and controls no documents that are responsive to the request when it is properly limited in its contextual and temporal scope.

> **D. Dr. Kompothecras Produced Non-Privileged, Responsive Documents in Response to Request Nos. 8 and 9 Seeking Communications and Documents Discussing the Hotline.**

With respect to request Nos. 8 and 9 in State Farm's First Set of Document Requests to Dr. Kompothecras, State Farm seeks "[a]ll documents reflecting communications regarding the Hotline and/or the 'Ask Gary' or '1-800-ASK GARY' trademarks or fictitious names," and "[a]ll documents reflecting the ownership, registration, or lease of the 'Ask Gary' or '1-800-ASK GARY' trademarks for [sic] fictitious names," respectively. (Dkt. 127, Ex. 1, pg. 6). Dr. Kompothecras initially objected to these requests on the grounds that they were overly broad in subject matter and temporal scope, sought the production of information that was otherwise publically available, and sought the production of confidential information. (Dkt. 127, Ex. 2, pgs. 6-7). Nevertheless, Dr. Kompothecras agreed to produce responsive, non-objectionable documents, (Dkt. 127, Ex. 2, pgs. 6-7). Pursuant to this agreement, Dr. Kompothecras has produced non-privileged documents responsive to this request pursuant to a confidentiality agreement.

Dr. Kompothecras has produced to State Farm the following documents he believes are responsive to request Nos. 8 and 9, as well as request No. 27:

- License Agreement of Fictitious Name between WS Media and Dr. Kompothecras, dated July 26, 2007;

- Lease agreement between WS Media and Dr. Kompothecras, dated November 15, 2010;

16

- Trademark information regarding:

  o ASK GARY, filed March 25, 2005;
  o 1-800-ASK-GARY, filed March 9, 2005; and
  o ASKGARY, filed July 23, 2010

- Fictitious name registration regarding ASK GARY, dated July 26, 2007 and April 19, 2011;

- Letter from Dr. Kompothecras to Sigelakis revoking use of fictitious name (1-800-ASK-GARY), dated November 15, 2010;

- Cancellation of Fictitious Name Registration re: ASK GARY, dated April 19, 2011; and

- Communications between Dr. Kompothecras and Jeffrey Lauffer.

Thus, Dr. Kompothecras has produced all documents responsive to the requests identified above. These documents constitute all communications in Dr. Kompothecras' possession, custody, or control that are contracts and licenses for the trademark. To the extent that State Farm asserts additional documents should be produced pursuant to these requests, this position is unfounded. First, these requests have no temporal limitation for the production, which makes them overly broad. *Reist*, 2010 WL 4940096, at *3. Second, the relevant time period of this matter, for the purposes of discovery, commences in 2009, which is the year in which State Farm received the earliest insurance claim that it asserts was part of Defendants' unlawful fraudulent scheme. Dr. Kompothecras has fully complied with request Nos. 8 and 9; therefore, State Farm's Motions should be denied.

### E. Dr. Kompothecras' Personal Financial Information, Sought by Request No. 1, is Irrelevant to this Matter and Should be Protected from Compelled Production.

In Request No. 1 in State Farm's First Set of Document Requests to Dr. Kompothecras, State Farm seeks "[a]ll of Your federal income tax returns, W-2s, 1099s, K1s, and general ledgers." (Dkt. 127, Ex. 1, pg. 5). Dr. Kompothecras objected to this request on the grounds that it was

overly broad in subject matter and temporal scope, sought information irrelevant to any claims or defenses of the parties, and sought confidential information. (Dkt. 127, Ex. 2, pg. 4).

As noted above, the crux of State Farm's Complaint is that the alleged fraudulent scheme is unlawful because of Dr. Kompothecras' alleged "secret" control of the companies that comprise the ASK GARY hotline and referral network. State Farm has not alleged any fraudulent or secret control of Physicians Group, and the fact that Dr. Kompothecras owns Physicians Group has never been at issue in this litigation. Dr. Kompothecras receives no payments from and makes no payments to the other Defendants named in this case,[2] and his payments from Physicians Group are irrelevant because his ownership of Physicians Group is unrelated to the matters at issue in this proceeding.

Courts in the Middle District of Florida sitting in diversity jurisdiction cases which are controlled by Florida law have shown great deference to Florida's protection of an individual's personal financial information. At a minimum, courts will not compel disclosure of such information absent a showing of relevance. *See Berlinger*, 2014 WL 6686276, at *3 (applying the Florida Supreme Court's standard for disclosure of personal financial information); *see also Yormak*, 2014 WL 4626559, at *3 (recognizing that the district courts may rely on another jurisdiction's heightened protection against the disclosure of personal tax returns).

In *Berlinger*, the court stated that "[u]nder Florida law, a party's personal financial information is entitled to *heightened protection* in litigation proceedings. '[P]ersonal finances are among those private matters kept secret by most people. . . . It follows that the disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant.'" *Berlinger*, 2014 WL 6686276, at *3 (quoting

---

[2] He responded to an interrogatory on this very issue, disclosing one loan for under $40,000.00 that had been repaid and the purchase of a camera for less than $1,500.00.

18

*Rappaport v. Mercantile Bank*, 17 So. 3d 902, 906 (Fla. 2d DCA 2009)) (internal citations and quotation marks omitted).

State Farm has not demonstrated and is unable to demonstrate any justification for invading Dr. Kompothecras' private financial information. These documents are simply irrelevant to the fraudulent scheme set forth in State Farm's Complaint. State Farm relies on the same litany of cases distinguished from this cause earlier in this Response, and for these same reasons these cases are unpersuasive as to the issues presently before this Court.

## IV. CONCLUSION

Despite the confusion regarding State Farm's Complaint, including the operative time frame and the claims for which it seeks relief, and in considering the overbreadth of the requests at issue, based on the absence of any contextual and temporal scope, Physicians Group has and continues to comply with the discovery requests propounded by State Farm. Physicians Group and Dr. Kompothecras agreed to a rolling production of responsive documents to the extent it did not object to the requests, as set forth above.

Many of the requests propounded by State Farm, such as those seeking information regarding the ownership of Physicians Group or seeking Dr. Kompothecras' personal financial information, are completely irrelevant to the matters at issue in this litigation. The ownership and control of Physicians Group is not at issue, nor is information predating the earliest claim at issue in this cause, 2009. For these reasons, this Court should deny State Farm's Motions.

WHEREFORE, Physicians Group and Dr. Kompothecras respectfully request that this Court deny State Farm's respective Motions to Compel the Production of Documents.

Respectfully submitted,

*s/ John E. Johnson*
JOHN E. JOHNSON
Florida Bar No. 593000
Primary: jjohnson@jclaw.com
Secondary:swalker@jclaw.com;
mpatel@jclaw.com
WILLIAM P. CASSIDY, JR.
Florida Bar No. 332630
Primary: wcassidy@jclaw.com
Secondary: bwalker@jclaw.com;
leller@jclaw.com
NICOLE DEESE NEWLON
Florida Bar No. 0832391
Primary: nnewlon@jclaw.com
Secondary: swalker@jclaw.com;
mpatel@jclaw.com
**JOHNSON & CASSIDY, P.A.**
324 S. Hyde Park Avenue, Suite 325
Tampa, Florida 33606
(813) 699-4856 ~ Telephone
(813) 235-0456 ~ Facsimile
*Attorneys for Defendants, Physicians Group of Sarasota, LLC, Physicians Group, LLC, and Gary Kompothecras*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of December, 2014, this document was electronically filed with the Clerk of this Court by using the CM/ECF system, which will serve a copy on all counsel of record.

*s/ John E. Johnson*
Attorney for Defendants